IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CONSTANCE A. SAWYER,

    Plaintiff,

v.                                                    Case No. _____

USAA INSURANCE COMPANY, BLUE CROSS
BLUE SHIELD ASSOCIATION, BLUE CROSS
BLUE SHIELD OF KANSAS CITY, BLUE CROSS
BLUE SHIELD OF NEW MEXICO and NUETERRA
HEALTHCARE,

    Defendants.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446 and by and through undersigned counsel, Defendant Blue Cross and Blue Shield of Kansas City ("BCBSKC") and Defendant Blue Cross and Blue Shield Association ("BCBSA") give notice of the removal of the above-captioned matter from the Ninth Judicial District Court in the County of Roosevelt, State of New Mexico, to the United States District Court for the District of New Mexico. In support thereof, BCBSKC and BCBSA state that jurisdiction is proper in this Court based on complete ERISA preemption, further explicated as follows:

**I.    PROCEDURAL HISTORY**

    1.    On May 28, 2010, Plaintiff commenced an action in the Ninth Judicial District Court, County of Roosevelt, State of New Mexico, against BCBSKC, BCBSA and others bearing cause number D-0911-CV-0201000101 ("State Court Action"). Plaintiff's "Verified Complaint for Damages for Breach of Contract, Insurance Bad Faith, Violation of the Insurance Code and Breach of Fiduciary Duties" ("Complaint") seeks judgment against BCBSKC and BCBSA for damages that Plaintiff allegedly experienced as a result of BCBSKC's non-payment

of benefits under her former employer's (Nueterra Healthcare's) group health plan. *See* Compl., attached as part of Exhibit. A.[1]

2. BCBSKC is an independent licensee of BCBSA. BCBSKC does not own, nor is it owned by, Blue Cross Blue Shield of New Mexico ("BCBSNM"), a division of Health Care Service Corporation ("HCSC"). HCSC's divisions are also independent licensees of BCBSA, but HCSC and BCBSKC are not vertically or horizontally related to each other by common ownership. *See* Aff. of C. Brent Bertram, attached as Exhibit B.

3. Even though the State Court Action was filed over one year ago, BCBSKC and BCBSA to this day have never been served with process in the State Court Action.

4. Nevertheless, and without prior notice to BCBSKC or BCBSA or an opportunity to be heard, the State District Court entered a "Default Judgment on the Pleadings" dated May 11, 2011 ("Default Judgment") wherein there is a purported award against BCBSKC and BCBSA for over $1 million. Remarkably (and unlawfully), this Default Judgment purports to make liability joint and several and to treble damages under New Mexico's Unfair Practices Act ("UPA") even though such claims are not set forth in the body of the Complaint. The Complaint did include a claim under New Mexico's Unfair Insurance Practices Act, but that Act does not allow for trebling. *See generally* NMSA 1978, §§ 59A-16-1, *et seq.* The Default Judgment also purports to award both treble damages and punitive damages, which is expressly prohibited by New Mexico law. *See McLelland v. United Wisconsin Life Ins. Co.*, 1999-NMCA-55, ¶¶ 10-13, 127 N.M. 303, 980 P.2d 86.

---

[1] 28 U.S.C. § 1446(a) requires that "a copy of all process, pleadings, and orders served upon [BCBSKC and BCBSA]" from the state district court be filed herewith. However, no process, pleadings or orders were served upon BCBSKC or BCBSA. They were instead obtained from other sources such as the clerk for the state district court but are nevertheless attached for ease-of-reference.

5.      After removal, BCBSKC and BCBSA will move this Court to set aside and vacate the Default Judgment. *See Jenkins v. MTGLQ Investors*, 218 F. App'x 719, 724 (10th Cir. 2007) (holding that after timely removal federal district court has power to set aside default judgment entered by state court where service of process was improper and that after removal, the defendant has the right to the opinion of the federal court as to the validity of the service of process in the state court) (citing *Mech. Appliance Co. v. Castleman*, 215 U.S. 437 (1910)); *see also Beighley v. FDIC*, 868 F.2d 776, 780-781 (5th Cir. 1989).

II.    **REMOVAL IS TIMELY.**

   A.    **The Notice of Removal Is Timely Under Section 1446.**

   6.    Under 28 U.S.C. § 1446(b), removal to federal court normally must be made

> within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

In addition, for cases removed on the basis of diversity jurisdiction, removal must occur within "1 year after commencement of the action." *Id.*

   7.    In the present case, removal is timely regardless of the requirement that removals occur within 30-days of service of process. Neither BCBSKC nor BCBSA ever were served with process, and consequently, the 30-day clock in 28 U.S.C. § 1446(b) never started to run. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (holding that only formal, proper service on the defendant triggers the time period for filing a notice of removal); *Jenkins*, 2007 WL 431498, *3 (pursuant to *Murphy Bros.*, defendant's notice of removal was timely despite being filed more than three months after entry of default judgment and more than eight months after filing of the complaint, because the 30-day period for removal never

commenced where the defendant was not properly served with process); *see also Moreno v. Taos Cnty. Bd. Of Commissioners*, 2011 WL 1467943 (D. N.M. April 11, 2011) (recognizing that the modern and weightier view in light of *Murphy Bros.* is to reject the "first served defendant rule" in favor of the "last served defendant rule" whereby each defendant has 30 days after receiving formal, proper service within which to file a notice of removal, regardless of when, or if, previously served defendants filed such notices").

8.  Moreover, the one-year limitation set forth in 28 U.S.C. § 1446(b) is expressly limited to *diversity* removals. There is no such limitation on removals predicated on *federal question* jurisdiction. *See* 16 Moore's Federal Practice § 107.14[2][h].

9.  This proper removal is not an appeal from a decision by the district court of New Mexico, *de facto* or otherwise, but is rather a continuation of those proceedings. *See Jenkins*, 2007 WL 431498 **3-4 (citing cases from the 5th, 6th and 9th federal circuits as endorsing removal after state court's entry of default judgment). In the alternative, the Default Judgment is not a final judgment, because the Complaint sought "costs" but those were not addressed by the Default Judgment, rendering it interlocutory in nature. *See Gengler v. Phelps*, 558 P.2d 62, 65 (N.M. Ct. App. 1976) (holding that default judgment was non-final and therefore interlocutory where it failed to address the issues of punitive damages and costs). Because this removal constitutes a continuation of the state court proceedings and neither BCBSKC nor BCBSA were ever properly served with process, this notice of removal is timely.

**B.    BCBCKC**

10. There was a complete and utter failure of service of process on BCBSKC.

11. BCBSKC is lawfully authorized to transact insurance in Missouri and Kansas. *See* Aff. of Greg Herdlick, Exhibit C. BCBSKC issued a group health plan to Nueterra

Healthcare in Kanas effective January 1, 2007. *Id.* Nueterra Healthcare is headquartered in Leawood, Kansas, and specializes in developing joint venture equity partnerships with health systems, hospitals, and physicians. *See* Aff. of Nikki Johnson, Exhibit D. Plaintiff worked for Nueterra Healthcare in New Mexico and by virtue of her employment was covered through May 31, 2007 by said group health plan. *Id.*

12.     In such circumstances, the New Mexico Insurance Code did not require BCBSKC to have a certificate of authority from the New Mexico Superintendent of Insurance. Instead, BCBSKC was denominated "unauthorized" - - but certainly not "unlawful" - - insurer. *See* NMSA 1978, § 59A-5-11(H) ("A certificate of authority shall not be required of an insurer with respect to any of the following: transactions in this state involving . . . group health . . . where the master policy or contract of such group was lawfully solicited, issued, and delivered pursuant to the laws of a state in which the insurer was authorized to transact such insurance, to a group organized for purposes other than procurement of insurance, and where the policyholder is domiciled or otherwise has a bona fide business situs"). The New Mexico Superintendent of Insurance remains BCBSKC's attorney upon whom may be served all lawful process in any action, suit or proceeding in any court. *Id.*

13.     In order for service of process upon the Superintendent of Insurance to be lawful and sufficient as to BCBSKC, however, Plaintiff must have delivered two copies thereof and the statutory fee (Section 59A-6-1) to the Superintendent, who in turn must have forwarded by certified mail to BCBSKC at its principle place of businesses last known to the Superintendent and who must keep a record of all process so served on him which shall show the day and hour of service. *See* NMSA 1978, § 59A-15-7. Furthermore, service is lawful and sufficient as to BCBSKC only if:

5

> (1) notice of such service and a copy of the court process . . . are sent within ten (10) days thereafter by certified mail (with return receipt requested) by the plaintiff or the plaintiff's attorney in the court proceeding . . . to the defendant in the court proceeding at the last-known principal place of business of the defendant in the court . . . proceeding; and
>
> (2) the defendant's receipt or receipts issued by the post office with which the letter is certified showing the name of the sender of the letter and the name an address of the person or insurer to whom the letter is addressed, and an affidavit of the plaintiff or the plaintiff's attorney in court proceeding showing compliance therewith are filed with the clerk of the court in which such action, suit or proceeding is pending . . . on or before the date the defendant in the court . . . proceeding is required to appear or respond thereto[.]

*Id.* (no default judgment to be entered until 45 days after filing of affidavit of compliance).

14. The cover page for the "Preferred-Care Blue" policy in Plaintiff's possession, provides an address for BCBSKC in Kansas City, Missouri. *See* Email from Plaintiff's attorney, John Collins, Esq. dated May 18, 2011, Exhibit E. A search on the Missouri Secretary of State's website would have revealed to Plaintiff or Plaintiff's attorneys that BCBSKC is a non-profit corporation which was incorporated in Missouri in 1982 and is in good standing with a registered agent, Charles Brent Bertram, located at 2301 Main St., One Pershing Square, Kansas City, MO 64108 (the same physical address as appears on the Preferred-Care Blue policy in Plaintiff's possession). *See* Exhibit F. The statutorily-mandated notice of service could therefore have been readily and easily completed by Plaintiff or Plaintiff's counsel, but was not.

15. After a diligent search, BCBSKC has not found any evidence that it was ever served by New Mexico's superintendent of insurance with a copy of Plaintiff's Complaint or Summons. *See* Aff. of C. Brent Bertram, Exhibit B.

16. After a diligent search, BCBSKC has not found any notice by certified mail, return receipt requested, from Plaintiff or Plaintiff's attorney in this action of the alleged service upon the superintendent of insurance. *Id.*

6

17. Until BCBSKC received a courtesy copy of Plaintiff's Complaint on May 18, 2011, it had never before seen such Complaint. *Id.*

18. It appears that Plaintiff's counsel believed that service on the Superintendent, without more, was all that was required. *See* Transcript of Proceedings on Motion for Default Judgment (May 5, 2011), 3:13 – 4:8; 7:21-22, Exhibit G1. Furthermore, despite reasonable efforts, BCBSKC is aware of neither a receipt from BCBSKC, nor an affidavit of Plaintiff or Plaintiff's attorney showing compliance with Section 59A-15-7, being on file with the Clerk of the Ninth Judicial District Court, State of New Mexico. *See* Aff. of Julia Shrader, Exhibit G2. Therefore, both were lacking at the time BCBSKC was purportedly required to appear per the Summons.

### C. BCBSA

19. Similarly, there was a complete and utter failure of service of process on BCBSA.

20. BCBSA is an incorporated association of independent Blue Cross and Blue Shield Plans which permits BCBSKC to use the Blue Cross and Blue Shield Service Mark in portions of the States of Missouri and Kansas. BCBSA is not an insurer. It was not a contracting party to any health plan issued by BCBSKC to Nueterra Healthcare or others, and BCBSKC was not acting as the agent of BCBSA in that regard. BCBSA does not solicit, induce, negotiate or effect any insurance contract, nor does BCBSA transact matters subsequent to effectuation and arising out of such a contract, maintain in New Mexico an office or personnel performing any function in furtherance of an insurer's business of insurance, or maintain any assets in trust in New Mexico for the benefit, security or protection of policyholders (which it does not have) or creditors. After a diligent search, BCBSA has not found any evidence that it was ever served with a copy of Plaintiff's Complaint or Summons. *See* Aff. of M.K. Dudley, Exhibit H; *see also*

NMSA 1978, § 59A-1-13 (definition of transacting insurance). By this removal, BCBSA does not waive any defense, including but not limited to the lack of personal jurisdiction that the New Mexico State District Court had over BCBSA regarding the default judgment and otherwise.

21. Plaintiff purported to serve BCBSA by allegedly delivering a copy of the Complaint and Summons to the Superintendent of Insurance of New Mexico. However, BCBSA, which is not an insurer, cannot by definition be an "authorized insurer" or an "unauthorized insurer" such that the superintendent of insurance was not and cannot be BCBSA's agent or lawyer for service of process. *See* NMSA 1978, §§ 59A-15-1 (definition of transacting insurance); 59A-5-31 (authorized insurers must appoint superintendent of insurance as agent for service of process); 59A-15-6 (unauthorized insurer appoints superintendent of insurance as lawyer for service of process). Alternatively, purported service upon BCBSA through the superintendent of insurance fails for all of the same reasons set forth above with regard to BCBSKC (*e.g.*, no notice of service, no receipt of service, no affidavit of compliance, *etc.*). *See* Aff. of Julia Shrader, Exhibit G2.

22. In summary, because this removal constitutes a continuation of the state court proceedings and neither BCBSKC nor BCBSA were ever properly served with process, all other and further defenses reserved and not waived, this notice of removal is timely.

**III. CO-DEFENDANTS' CONSENTS TO REMOVAL**

23. Even though the removal statute does not require that all defendants who have been served in a multi-defendant case join in the notice of removal, the Tenth Circuit has held that the general removal rule "require[s] all defendants to join in the removal petition." *Tresco, Inc. v. Continental Casualty Co.*, 727 F. Supp. 2d 1243, 1248 (D. N.M. 2010) (quoting *Akin v.*

*Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998)). This is the so-called "unanimity rule." *Id.*

24.     Exceptions to the unanimity rule include defendants who had not been served with process at the time of removal, defendants who had been served but were dismissed prior to removal, and nominal defendants as to whom or which there is no reasonable basis for predicting they will be held liable. *See, e.g., Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993) (citing 14 A. Wright & Miller, Federal Practice and Procedure § 3721 (1985)); *see also Moreno*, 2011 WL 1467943 *3 (holding that defendants who have not been served with process need not consent to removal, citing *Cohen v. Hoard*, 696 F. Supp. 564, 566 (D. Kan. 1988)).

25.     Accordingly, Blue Cross Blue Shield of New Mexico ("BCBSNM"), an unincorporated division of Health Care Services Corporation ("HCSC"), need not consent to removal for three reasons: (1) it denied service or process; (2) Plaintiff is not, was not, and had never been a member of any division of HCSC, including BCBSNM, such that there was no reasonable basis for predicting liability; and (3) Plaintiff voluntarily dismissed her claims against HCSC before removal. *See* Order Vacating and Setting Aside Default Judgment and Dismissing without prejudice Plaintiff's Claims against Blue Cross Blue Shield of New Mexico, included in Exhibit A.

26.     There is no legal entity known as "USAA Insurance Company." There is no insurance company by that name authorized to transact insurance in New Mexico, nor is there any corporation by that name authorized to do business in New Mexico. Plaintiff's allegation to the contrary (Complaint ¶ 7) is simply incorrect and has no basis. *See* Aff. of William McCartney ¶ 3, Exhibit I.

27.     However, there is a reciprocal interinsurance exchange authorized to transact insurance in New Mexico known as United Services Automobile Association, often referred to as USAA. United Services Automobile Association was not named as a Defendant in either the caption or the body of the Complaint. United Services Automobile Association denies that it was properly named as a Defendant in the Complaint. *Id.*

28.     Even though not named as a Defendant in this action, United Services Automobile Association conducted a diligent search of its records and did not find any evidence that it was ever served by New Mexico's superintendent of insurance with a copy of Plaintiff's Complaint or Summons. *See* Aff. of Linda Allen ¶¶ 4-5, Exhibit J. United Services Automobile Association also did not find any evidence of ever receiving a copy of Plaintiff's Complaint, or Summons naming "USAA Insurance Company" as a Defendant. *Id.*

29.     After a diligent search, United Services Automobile Association has not found any notice by certified mail, return receipt requested, from Plaintiff or Plaintiff's attorney in this action of the alleged service upon the superintendent of insurance. *Id.*

30.     United Services Automobile Association denies that it was formally served with process. *Id.* As a result, United Services Automobile Association need not consent to removal. Nonetheless, United Services Automobile Association consents to removal to this Court. *See* United Services Automobile Association's Consent to Removal, filed separately with the Court.

31.     Nueterra Healthcare denies that it was served with process. *See* Aff. of Nikki Johnson, Exhibit D; *see also* Log of Proceedings dated May 5, 2011, included as part of Exhibit A (plaintiff's counsel acknowledging that CT Corporation denied being Nueterra Healthcare's agent for service of process and state district court denying default judgment against Nueterra

accordingly). In the alternative, Nueterra Healthcare consents to removal. *See* Nueterra Healthcare's Consent to Removal, Exhibit K.

### IV. THIS COURT HAS "ARISING UNDER" JURISDICTION.

32. The Employee Retirement Income Security Act of 1974 ("ERISA") "can be a fruitless and thorny ground for plaintiffs, and many seek to avoid it entirely by bringing their insurance claims under state law. The Supreme Court has increasingly circumscribed such state-law claims, however, finding the pre-emptive sweep of ERISA to be so 'extraordinary' that it bars all claims of close relation." *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1197 (10th Cir. 2006) (citing *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Plaintiff in this case is attempting to avoid ERISA by pleading only state law claims, but she should fare no better in this endeavor than those plaintiffs who have preceded her in such attempts.

33. The well-pleaded complaint rule provides that a "cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro Life Ins. Co.*, 481 U.S. at 63. However, "the preemptive force of [28 U.S.C. § 1132(a)] of ERISA is so extraordinary that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule." *Id.* at 65. The Supreme Court later elucidated the rationale:

> When a federal statute wholly displaces the state-law cause of action through complete preemption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statues.
>
> Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts. The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end,

> ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern.

*Aetna Health Inc. v Davila*, 542 U.S. 200, 207 (2004) (citations and internal quotations omitted); *see also Ruby v. Sandia Corp.*, 699 F. Supp. 2d 1247, 1260 (D. N.M. 2010) ") (citation omitted).

35. ERISA governs any employee benefit plan if it is established or maintained by any employer engaged in commerce. One type of employee benefit plan is an "employee welfare benefit plan," for which there are five elements: "(1) a plan, fund or program (2) established or maintained (3) by an employer (4) for the purpose of providing medical, surgical or hospital care benefits (6) to participants or their beneficiaries. *Lafayette v. Cobb*, 285 F. Supp. 2d 1152, 1156 (D. N.M. 2004) (citation omitted).

36. The group health plan issued by BCBSKC to Plaintiff's former employer, Nueterra Healthcare, meets all of these criteria. "A plan, fund, or program exists if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Id.* (citation omitted). The intended benefits of the group health plan issued to Nueterra Healthcare are readily ascertainable pursuant to Section C "Covered Services." Eligibility for those benefits is described in Section B "Eligibility, Enrollment and Effective Date." Premiums are due and payable by the employer as further described in Section G "Premium Payment, Grace period and Changes." The procedures for receiving benefits are described in Section E "How to File a Claim." *See* Aff. of Brent Bertram, Exhibit B. Accordingly, the group health plan issued by BCBSKC is "a plan, fund or program" pursuant to ERISA. *Cobb*, 285 F. Supp. 2d at 1156.

37. The "established or maintained" requirement is designed to ensure that the plan is part of an employment relationship. Plaintiff's former employer, Nueterra Healthcare, entered into a contract with BCBSKC for coverage under such plan and offered that coverage to its

eligible employees, including Plaintiff whereupon Nueterra and eligible employees electing coverage were obligated to pay premium. Therefore, this element is satisfied. *Id.*

38.     The third requirement is that the entity which established or maintained the group health plan be Plaintiff's employer. *Id.* This was in fact the case. *See* Aff. of Greg Herdlick, Exhibit C.

39.     The final element is that Nueterra have established or maintained the group health plan for providing, in this situation, medical benefits. Again, this in fact was the case. *Id.* The group health plan issued by BCSKC is therefore an "employee welfare benefit plan" governed by ERISA.

40.     This does not, however, end the inquiry. For there to be complete ERISA preemption, Plaintiff's state law claims must (1) "relate to" an ERISA plan within the meaning of ERISA's preemption provision (28 U.S.C. § 1144(a)) and (2) fall within the scope of ERISA's civil enforcement provision (28 U.S.C. § 1132(a)). *Metropolitan Life Ins. Co.*, 481 U.S. at 66.

41.     Plaintiff's purported state law claims all "relate to" an employee benefit plan.

> In both *Metropolitan Life, supra,* and *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), we noted the expansive sweep of the pre-emption clause. In both cases, the phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan. In particular, we have emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans. The common law causes of action raised in [the plaintiff's] complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 1144(a).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987).

42.     As in *Dedeaux*, all of Plaintiff's attempted state law claims against BCBSKC BCBSA and Nueterra Healthcare are based on alleged improper processing of her claim for benefits under the group health plan. She repeatedly alleges that she had coverage under such

13

group health plan for injuries sustained in a motor vehicle accident, as to which BCBSKC allegedly did not properly process and therefore wrongfully refused to pay, clearly meeting the pre-emption criteria under § 1144(a). *See, e.g.,* Compl. ¶¶ 26-27, 34-37, and 43-44, Exhibit A.

43. Similarly, all of Plaintiff's attempted state law claims against BCBSKC, BCBSA, and Nueterra Healthcare also fall within the scope of ERISA's civil enforcement provision at 28 U.S.C § 1132(a).

44. The detailed provisions of Section 1132(a) constitute a comprehensive civil enforcement scheme, the policy choices reflected in which would be undermined if ERISA-plan plan participants could obtain remedies under state law that Congress rejected in ERISA. Thus, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health*, 542 U.S. at 208-209 (quoting and citing *Pilot Life Ins. Co.*, 481 U.S. at 54-56).

45. Plaintiff's attempted state law claims against BCBSKC, BCBSA, and Nueterra Healthcare are for alleged breach of contract, insurance bad faith, violations of the New Mexico Insurance Code, and punitive damages, all of which conflict with ERISA's comprehensive civil enforcement scheme and are therefore completely preempted pursuant to controlling Tenth Circuit precedent.

> Applying *Pilot Life Insurance Co. v. Dedeaux,* the United States Court of Appeals for **the Tenth Circuit has held that ERISA completely pre-empts common-law or state-law statutory claims for breach of contract, bad faith or unfair insurance practices because they conflict with ERISA's remedial scheme**. *See Allison v. UNUM Life Ins. Co.,* 381 F.3d 1015, 1026 (10th Cir.2004) (holding that plaintiff's breach-of-contract claim against her long-term-disability-benefits insurance carrier was pre-empted by ERISA because she sought consequential and **punitive damages, which conflicted with ERISA's remedial scheme**); *Kidneigh v. UNUM Life Ins. Co.,* 345 F.3d 1182, 1184-87 (10th Cir.2003)(holding that state-law claims for bad faith and loss of consortium were preempted); *Kelley*

*v. Sears, Roebuck & Co.,* 882 F.2d 453, 455-56 (10th Cir.1989)(holding that ERISA pre-empted state-law claims brought under Colorado's unfair-insurance-practices statute, which is virtually identical to the New Mexico statute). Accordingly, the United States District Court for the District of New Mexico has held that ERISA pre-empts claims for employee health-insurance benefits brought under the New Mexico Unfair Insurance Practices Act. *See Nechero v. Provident Life & Acc. Ins. Co.,* 795 F. Supp. 374, 380-81 (D.N.M. Apr.21, 1992); *Wexler v. Brokerage Servs., Inc.,* No. 88-1487-JB, 1989 WL 379862 (D.N.M. Oct.18, 1989) (relying on *Kelley v. Sears, Roebuck & Co.* to conclude that ERISA preempts claims for misrepresentation and unfair claims practices pursuant to the equivalent sections of the New Mexico unfair-insurance-practices statute).

*Schoen v. Presbyterian Health Plan, Inc.,* 2009 WL 1299680 *4 (D. N.M.).

46. Plaintiff alleges that Nueterra Healthcare's group health plan from BCBSKC was effected on January 1, 2007 and that she had a "COBRA policy [which] became effective on June 1, 2007[.]" *See* Compl. ¶¶ 12, 13. "COBRA" is an acronym for the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161, *et seq.*

47. COBRA provides for "continuing" or "conversion" coverage following certain qualifying events such as termination of employment. Plaintiff did not allege, however, whether her alleged COBRA policy was a "continuation" of coverage in the group health plan or was a "conversion" of that coverage to a policy issued directly by BCBSKC to Plaintiff.

48. BCBSKC denies it was notified of a COBRA election, if any. However and reserving all rights and defenses, if Plaintiff made any COBRA election relative to Plaintiff's motor vehicle accident, it must have been for a continuation of coverage under the group health plan.

49. According to records, Plaintiff was hired by Nueterra Healthcare in April 2007. The effective date of her coverage under the group health plan was May 1, 2007. Plaintiff's employment with Nueterra Healthcare was terminated on May 24, 2007, and her coverage under

the group plan therefore ended on May 31, 2007. Plaintiff was therefore covered under the group plan for the month of May 2007. *See* Aff. of Greg Herdlick, Exhibit C.

50.     Continuation coverage may be available upon certain qualifying events, one of which is termination of employment (other than for gross misconduct). If duly elected and premium is properly paid, continuation coverage predicated on termination of employment can last for up to 18 months. Such continuation coverage would have been under Nueterra Healthcare's same group health plan as it had been during Ms. Sawyer's employment. *Id.*

51.     In order to be eligible for conversion coverage pursuant to Nueterra's group health plan from BCBSKC, an employee must have been covered as an employee thereunder for a minimum of three months. Plaintiff was, however, covered for only one month. Furthermore, if Ms. Sawyer had been covered under the group health plan as an employee of Nueterra Healthcare for the requisite three months, conversion coverage would have been available, if at all, only upon the expiration of the maximum available period of continuation coverage. *Id.*

52.     Plaintiff alleges that her COBRA policy became effective on June 1, 2007 and that she had a motor vehicle accident six days later on June 7, 2007 in which injuries were sustained and medical treatment therefor was covered under said policy. *See* Compl. ¶¶ 12-14.

53.     If Plaintiff had made a COBRA election applicable to the medical care delivered in connection with injuries sustained in her June 7, 2007 motor vehicle accident, which is denied, it necessarily would have been to continue coverage under the group health plan, not to convert such coverage to a separate plan for at least two reasons: (1) she was ineligible for conversion coverage, having been covered as an employee under the group health plan for less than three months; and (2) the accident occurred six days after the alleged inception of her COBRA

coverage, clearly within the first 18 months following the termination of her employment during which continuation coverage, if anything, would have applied.

54. It is beyond cavil and generally recognized that claims predicated upon "continuation coverage" pursuant to COBRA remain pre-empted by ERISA.

> COBRA continuation coverage is integrally related to an ERISA plan: the statutory right to continuation coverage is predicated upon the existence of an ERISA plan, 29 U.S.C. § 1161(a); the continuation coverage must be identical to that coverage provided under the ERISA plan, *id.* § 1162(1); and modification of the plan coverage must also apply to the continuation coverage, *id.* Indeed, continuation coverage is defined as *"coverage under the plan ...." Id.* § 1162 (emphasis added). Accordingly, any claim that Defendant wrongfully terminated a contract by failing to provide and verify coverage under extended benefits provisions of the continuation group health coverage, and that Defendant breached a contract by failing to promptly pay benefits under that continuation coverage, relates to the ERISA plan and is pre-empted by ERISA.

*Mimbs v. Commercial Life Ins. Co.*, 818 F. Supp. 1556 (S.D. Ga. 1993).

55. The rule in this district is that claims predicated upon "conversion coverage" pursuant to COBRA also remain pre-empted by ERISA. *See Nechero v. Provident Life & Accident Ins. Co.*, 795 F. Supp. 374 (D. N.M. 1992). There could be found, however, no precedent from the Tenth Circuit Court of Appeals on this point. *Cf. Kelso v. American Gen. Life Ins. Co.*, 967 F.2d 388 (10th Cir. 1992) (holding that alleged misrepresentation by insurer as to need to continue coverage pursuant to COBRA was preempted by ERISA). There a split of authority elsewhere. *Cf. Mimbs* (continuation coverage is preempted, but conversion coverage is not) *with Painter v. Golden Rule Ins. Co.*, 121 F.3d 436 (8th Cir. 1997) (holding that right to a conversion policy was part of the original ERISA plan to provide medical benefits and as such was a component of such plan); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341 (11th Cir. 1994) (holding that the conversion policy remained integrally linked with the original ERISA plan, because the ability to achieve conversion derived from such plan).

56. Ultimately, at least in this district, whether Plaintiff's purported COBRA policy was of the continuation or conversion variety, her state law claims remain completely preempted.

57. Alternatively, as is clear from the chronology alleged in the Complaint and the facts set forth in this Notice and its exhibits, if Plaintiff made or attempted to make a COBRA election, as to which BCBSKC had no notice, it would have been for "continuation coverage."

## IV.  THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER REMAINING CLAIMS.

58. Where this Court has original "arising under" jurisdiction pursuant to 28 U.S.C. § 1331, this Court may exercise supplemental or pendent jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. The supplemental jurisdiction statute applies equally in removed actions. *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 167-74 (1997). "By allowing litigants to join related claims and parties in one lawsuit, supplemental jurisdiction avoids the inconvenience, burdens and costs of having to litigate separately in more than one court, and possibly avoiding the need to duplicate evidence in those separate proceedings." 16 Moore's Federal Practice § 106.23.

59. A claim is part of the same case or controversy if it derives from a common nucleus of operative fact, such that the plaintiff would normally be expected to try the claims in one proceeding. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966); *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010) (citation omitted). Here, Plaintiff never named United Services Automobile Association as a Defendant, and thus there never asserted any claims against it. Plaintiff's claims against the non-existent legal entity "USAA Insurance Company" – to the extent they exist at all -- are part of the same "case or controversy" as her

claim against the other Defendants. Plaintiff named both the non-existent legal entity "USAA Insurance Company" and BCBSKC and BCBSA in the same lawsuit, and thus clearly expected to try her claims against all Defendants in the same proceeding. Plaintiff's expectation was well-founded. Her claims derive from the same accident in which Plaintiff was involved in June 2007. Complaint ¶ 14. And she attempted to assert the same legal theories against the non-existent legal entity "USAA Insurance Company" that she alleged against BCBSKC and BCBSA: breach of contract (*id.*, Count I); insurance bad faith (*id.*, Count II); violation of unfair insurance practices act (*id.*, Count III) and punitive damages (*id.*, Count IV). All of these claims were presented in an unquestionably adversary context capable of resolution through the judicial process. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).

60. A district court may decline to exercise supplemental jurisdiction over a claim that forms part of the same case or controversy only if one of the four circumstances set out in Section 1367(c) is present. *See Gudenkauf v. Stauffer Commc'ns, Inc.*, 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated."). Those conditions are: (i) the claim raises a novel or complex issue of state law; (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (iii) the district court has dismissed all claims over which it has original jurisdiction; or (iv) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See* 18 U.S.C. § 1367(c).

61. None of those four conditions are present in this case. None of the claims asserted by Plaintiff involve novel or complex issues of state law; to the contrary, they raise basic questions of contract and statutory interpretation. Nor is there anything to show that the

state law claims Plaintiff purported to assert against the non-existent legal entity "USAA Insurance Company" predominate relative to the ERISA claims against BCBSKC and BCBSA set forth above. The ERISA claims have not been dismissed by this Court, and there is nothing unusual presented in this case that amounts to an "exceptional circumstance" to justify the decline of jurisdiction. *See Itar-Tass Russian News Agency v. Russian Kurier*, 140 F.3d 442, 448 (2nd Cir. 1998) (declining jurisdiction under Section 1367(c) is exception rather than rule and requires compelling reason).

WHEREFORE, BCBSKC and BCBSA respectfully give notice that the State Court Action now pending in the Ninth Judicial District Court, State of New Mexico, bearing cause number D-0911-CV-0201000101 is hereby removed to this Court and ask that this Court make and enter such further orders as may be necessary and proper.

Respectfully submitted,

**MONTGOMERY & ANDREWS, P.A.**

By: _____
Jeff L. Martin
Post Office Box 36210
Albuquerque, New Mexico 87176-6210
Tele: (505) 884-4200 / Fax: (505) 888-8929
jmartin@montand.com

Randy S. Bartell
P.O. Box 2307
Santa Fe, NM 87504
(505) 982-3873
rbartell@montand.com

Attorneys for BCBSKC and BCBSA

The undersigned certifies that on this 14th day of June 2011, this Notice of Removal was emailed on counsel for Plaintiff, Nuetterra Healthcare, and United Services Automobile Association.
_____
Jeff L. Martin