## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CONSTANCE A. SAWYER,

     Plaintiff,

v.                                                                                    No. CIV 11-0523 JB/CG

USAA INSURANCE COMPANY, BLUE
CROSS BLUE SHIELD ASSOCIATION,
BLUE CROSS BLUE SHIELD OF KANSAS
CITY, BLUE CROSS BLUE SHIELD OF
NEW MEXICO, and NUETERRA HEALTHCARE,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United Services Automobile

Association's Motion to Set Aside Default Judgment, filed July 13, 2011 (Doc. 10)("United Services

Motion"); (ii) the Motion to Set Aside Default Judgment Against Defendants Blue Cross and Blue

Shield of Kansas City, filed July 13, 2011 (Doc. 11)("BCBSKC Motion"); (iii) the Motion to Set

Aside Default Judgment Against Defendant Blue Cross and Blue Shield Association, filed July 14,

2011 (Doc. 14)("BCBSA Motion"); and (iv) Plaintiff Constance A. Sawyer's Motion to Remand,

filed August 4, 2011 (Doc. 28)("Sawyer Motion"). The Court held a hearing on February 9, 2012.

The primary issues are: (i) whether the Court should set aside the default judgment entered in the

Ninth Judicial District, Roosevelt County, State of New Mexico against Defendants USAA

Insurance Company, Blue Cross Blue Shield Association ("BCBS Association"), and Blue Cross

Blue Shield of Kansas City ("BCBS Kansas City"), because they never received service of process;

(ii) whether the Court should set aside the default judgment because the Defendants have

meritorious defenses; (iii) whether the Court should set aside the default judgment against USAA

Insurance[1] because the state court lacked personal jurisdiction over United Services Automobile Association ("United Services"); (iv) whether the motions to set aside the default judgment are timely; and (v) whether the Court should remand the case for lack of subject matter jurisdiction. The Court will deny the Sawyer Motion and will grant the: (i) United Services Motion; (ii) BCBSKC Motion; and (iii) BCBSA Motion. The Defendants removed this case while post-judgment motions could still be filed. Accordingly, there is a case or controversy for the Court to resolve, and the Court has subject-matter jurisdiction over the case. Because none of the Defendants were properly served, the default judgment entered against them is void.

## FACTUAL BACKGROUND

On June 7, 2007, Sawyer was in a motor vehicle accident. See Verified Complaint for Damages for Breach of Contract, Insurance Bad Faith, Violation of the Insurance Code, and Breach of Fiduciary Duties ¶ 14, at 4 (dated May 24, 2010), filed June 14, 2011 (Doc. 1-1)("Complaint"). She was severely injured and incurred substantial medical expenses. See Complaint ¶ 14, at 4. Sawyer has a number of outstanding medical bills related to the injuries she suffered in the accident, and full and final settlement against the driver's insurance has been completed "at maximum

---

[1]United Services Automobile Association asserts that there is no legal entity known as "USAA Insurance Company." United Services Motion at 2. United Services states that Sawyer did not name it as a Defendant in either the caption or the body of the Verified Complaint for Damages, Breach of Contract, Insurance Bad Faith, Violation of the Insurance Code, and Breach of Fiduciary Duties (dated May 24, 2010), filed June 14, 2011 (Doc. 1-1)("Complaint"), and denies that Sawyer was properly named it as a Defendant in the state action. United Services Motion at 2. Although United Services argued that the default judgment does not impact it, because USAA Insurance is a non-entity, it is asking the Court to prevent Sawyer from enforcing the judgment against United Services. See Transcript of Hearing at 9:10-17 (February 9, 2012)(Schultz)("Tr."). Sawyer argued that she would attempt to enforce the default judgment against United Services because United Services is referred to as USAA. See Tr. at 30:3-13 (Bartell). Accordingly, United Services argues that the default judgment is void as if United Services was USAA Insurance or as if the default judgment will be enforced against United Services.

liability payments per accident."  Complaint ¶¶ 15-16, at 4.

**PROCEDURAL BACKGROUND**

On May 24, 2010, Sawyer filed her Complaint in state court, <u>Sawyer v. USAA Insurance Co.</u>, D-911-CV-201000101.[2]  <u>See</u> Doc. 1-1.  She alleges that she paid insurance premiums to USAA Insurance and Blue Cross Blue Shield,[3] and that those companies accepted payment.  <u>See</u> Complaint ¶¶ 17, 19, at 4.  She asserts that, when she contacted USAA Insurance, BCBS Association, and BCBS Kansas City, they refused to tender the amounts owed under her policies.  <u>See</u> Complaint ¶¶ 18, 20, at 4.  She contends that the Defendants breached their duty to act in good faith in the performance of the contract.  <u>See</u> Complaint ¶ 21, at 4-5.  The Complaint contains four counts: (i) breach of contact; (ii) insurance bad faith; (iii) violations of the Unfair Insurance Practices Act, N.M.S.A. 1984, § 59A-16-20; and (iv) a request for punitive damages.  <u>See</u> Complaint at 5-9.

On February 24, 2011, the Clerk of the District Court of the Ninth Judicial District of the State of New Mexico certified that "it appears from the return made by Chris Quinn[, the person who served the Complaint], that the process was served on Defendant USAA Insurance Company by mailing the same to USAA Insurance Company, c/o Superintendent of Insurance for the Dept. of Ins. For the State of NM."  <u>Sawyer v. USAA Ins. Co.</u>, Case No. D-0911-CV-0201000101, Certificate as to the State of the Record and Non-Appearance at 11-13 (dated February 24, 2011), filed June 14, 2011 (Doc. 1-1)("State Certificate").  The Clerk certified process as to BCBS Association and BCBS Kansas City as well.  <u>See</u> State Certificate at 1-2.  Sawyer moved for default

---

[2]A summary of the proceedings in the state court can be found at http://www2.nmcourts.gov/caselookup/app.

[3]The Complaint does not specify to which Blue Cross Blue Shield entity Sawyer made payments.

-3-

judgment the same day as the entry of the State Certificate.  See Application for Entry of Default Judgment (dated February 24, 2011), filed June 14, 2011 (Doc. 1-1)("Default Judgment Application").  Sawyer asserted that no "Defendant has filed an Answer to the Complaint, and the time for filing an Answer has expired" and requested that "default be entered against each Defendant."  Default Judgment Application at 2.  She represented that the Defendants had been served "as indicated by the Return of Service."  Default Judgment Application at 1.

On May 5, 2011, the Honorable Drew Douglas Tatum, District Court Judge for the Ninth Judicial District, Roosevelt County, State of New Mexico, held a hearing on the Default Judgment Application.  See Sawyer v. USAA Ins. Co., Case No. D-0911-CV-0201000101, Transcript of Hearing at 3:1-9 (May 5, 2011)(Judge Tatum)("Default Judgment Tr.").  At the hearing, Sawyer stated that no Defendant had entered an appearance and that notice of the hearing was sent to the Superintendent of Insurance.[4]  See Default Judgment Tr. at 3:21-4:2 (Collins).  Judge Tatum stated that he was surprised that no Defendant entered an appearance, because the Defendants are national companies.  See Default Judgment Tr. at 4:3-7 (Judge Tatum).  Judge Tatum indicated that it would grant default judgment against all the Defendants except for Defendant Nueterra Healthcare, because there were questions whether service was made on Nueterra Healthcare.  See Default Judgment Tr. at 8:13-9:6 (Judge Tatum).  On May 11, 2011, Judge Tatum entered a default judgment.  See Sawyer v. USAA Ins. Co., Case No. D-0911-CV-0201000101, Default Judgment on the Pleadings (dated May 11, 2011), filed June 14, 2011 (Doc. 1-1)("Default Judgment").  In his Default Judgment, Judge Tatum found that service of process was duly and properly made and entered judgment as follows: (i) $100,000.00 against USAA Insurance for breach of contract; (ii) $300,000.00 against USAA

---

[4]The Superintendent of Insurance is the designated agent to receive service of legal process against an authorized or unauthorized insurer in this state.  See N.M.S.A. §§ 38-1-8, 59A-5-31.

Insurance for violations of the Unfair Practices Act; (iii) $500,000.00 against USAA Insurance as punitive damages; (iv) $85,625.01 against BCBS Association, BCBS Kansas City, and Blue Cross Blue Shield of New Mexico ("BCBS New Mexico") jointly and severally for breach of contract; (v) $256,875.63 against BCBS Association, BCBS Kansas City, and BCBS New Mexico jointly and severally for violations of the Unfair Practices Act; and (vi) $428,126.05 against BCBS Association, BCBS Kansas City, and BCBS New Mexico jointly and severally as punitive damages. Default Judgment at 1-3. On June 6, 2011, Sawyer filed Plaintiff's Unopposed Motion to Vacate and Set Aside Default Judgment and to Dismiss Without Prejudice Claims Against Blue Cross Blue Shield of New Mexico (dated June 6, 2011), filed June 14, 2011 (Doc. 1-1)("BCBS New Mexico Default Set Aside"). Sawyer stated that, since the entry of the Default Judgment, she received a document stating that BCBS New Mexico was a division of Health Care Service Corporation and that a search of its database revealed she "was not, is not, and has never been a member." BCBS New Mexico Default Set Aside at 36. Sawyer represented that Health Care Service Corporation denied that it received proper service, and that there is "good cause and sufficient 'other reason' to justify setting aside and vacation of the judgment against" BCBS New Mexico. BCBS New Mexico Default Set Aside at 36. Judge Tatum entered an order setting aside the default judgment against BCBS New Mexico the same day. See Sawyer v. USAA Ins. Co., Case No. D-0911-CV-0201000101, Order Vacating and Setting Aside Default Judgment Dismissing Without Prejudice Plaintiff's Claims Against Blue Cross Blue Shield of New Mexico (dated June 6, 2011), filed June 14, 2011 (Doc. 1-1).

On June 14, 2011, the Defendants filed their Notice of Removal. See Doc. 1. The Defendants assert that BCBS Kansas City is an independent licensee of BCBS Association. See Notice of Removal ¶ 2, at 2. They contend that removal is timely, because they removed within

thirty days of becoming aware of the litigation, in conformance with 28 U.S.C. § 1446(b). See Notice of Removal ¶ 7, at 3. They argue that the one-year time limit for removal, set forth in 28 U.S.C. § 1446(b), is expressly limited to diversity removals. See Notice of Removal ¶ 8, at 4. The Defendants assert that the federal proceeding is not an appeal, but a continuation of the state proceedings, and that the Default Judgment is not a final judgment, because the Complaint also sought costs. See Notice of Removal ¶ 9, at 4.

BCBS Kansas City asserts that it is only authorized to transact insurance in Missouri and Kansas, and not in New Mexico, and that it is an "unauthorized" insurer under N.M.S.A. 1978, § 59A-5-11(H). Notice of Removal ¶¶ 11-12, at 4-5. It argues that, for service of process upon the Superintendent of Insurance to be lawful, Sawyer must have delivered two copies of the Complaint and a fee to the Superintendent of Insurance, who must, in turn, forward the Complaint to BCBS Kansas City by certified mail. Notice of Removal ¶ 13, at 5. It also argues that New Mexico law requires that Sawyer send a copy of the court process to BCBS Kansas City's last know principal place of business, and submit receipts and an affidavit to the court. See Notice of Removal ¶ 13, at 4-5. BCBS Kansas City asserts that, until it received a courtesy copy of the Complaint on May 18, 2011, it had not seen the Complaint. See Notice of Removal ¶ 17, at 7. BCBS Association asserts that it is an incorporated association and not an insurer. See Notice of Removal ¶ 20, at 7. It asserts that it does not "solicit, induce, negotiate, or effect any insurance contract." Notice of Removal ¶ 20, at 7. BCBS Association argues that, because the Superintendent of Insurance is not an authorized agent of process for BCBS Association under New Mexico law, it was not served. See Notice of Removal ¶ 21, at 8. BCBS Kansas City and BCBS Association assert that the general rule of unanimity for removal does not apply to defendants who have not been served at the time of removal and defendants who were dismissed before removal. See Notice of Removal ¶ 24, at 9.

They argue that BCBS of New Mexico need not consent to removal, because it denied service of process and because Sawyer voluntarily dismissed her claims against it.  <u>See</u> Notice of Removal ¶ 24, at 9.  BCBS Association and BCBS Kansas City note that United Services denied that it was served with process or named as a Defendant and that, in the alternative, United Services consents to removal.  <u>See</u> Notice of Removal ¶¶ 27, 30, at 10.  They also note that Nueterra Healthcare denies that it was served, but that, in the alternative, it consents to removal.  <u>See</u> Notice of Removal ¶ 31, at 10-11.

The Defendants assert that the Court has federal jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461.  They argue that the Supreme Court of the United States has held that ERISA  "bars all claims of close relation," and that "the preemptive force of [28 U.S.C. § 1132(a)] of ERISA is so extraordinary that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule."  Notice of Removal ¶¶ 32-33, at 11 (citing <u>Metro Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63, 65 (1987); <u>Lind v. Aetna Health, Inc.</u>, 466 F.3d 1195, 1197 (10th Cir. 2006)).  They contend that the group health plan that BCBS Kansas City issued to Sawyer's former employer meets all the criteria of an employee benefit plan under ERISA.  <u>See</u> Notice of Removal ¶¶ 35-36, at 12.  The Defendants assert that "all of Plaintiff's attempted state law claims against BCBSKC[,] BCBSA[,] and Nueterra Healthcare are based on alleged improper processing of her claim for benefits under the group health plan," and that all of Sawyer's "purported state law claims" relate to the employee benefit plan.  Notice of Removal ¶¶ 41-43, at 13-14.  They argue that Sawyer's "attempted state law claims . . . conflict with ERISA's comprehensive civil enforcement scheme and are therefore completely preempted."  Notice of Removal ¶ 45, at 14.

The Defendants then filed several motions to set aside the default judgment, and Sawyer

filed a motion to remand.

> 1.     **United Services Motion.**

On July 13, 2011, United Services filed its motion.  <u>See</u> Doc. 10.  United Services argues that it was never served with notice of this lawsuit, and never had an opportunity to answer or respond to the Complaint before entry of default judgment.  <u>See</u> United Services Motion at 1.  As a result, United Services asserts that the default judgment was entered in error and that the Court should set it aside.  <u>See</u> United Services Motion at 1.  United Services represents that there is no legal entity known as "USAA Insurance Company," but that United Services is a reciprocal interinsurance exchange[5] authorized to transact insurance in New Mexico.  <u>See</u> United Services Motion at 2.  It denies that it was properly named, or named at all, as a defendant in the state proceeding.  <u>See</u> United Services Motion at 2.

United Services notes that the returns of service that Sawyer filed relating to each Defendant demonstrate only that Sawyer's counsel sent a copy of the Complaint to each Defendant in care of the Superintendent of Insurance and that Paul S. Lucero received each summons on June 7, 2010. <u>See</u> United Services Motion at 2 (citing Certified Mail Receipt at 19 (dated June 7, 2010), filed June 14, 2011 (Doc. 1-1)("USAA Receipt"); Certified Mail Receipt at 22 (dated June 7, 2010), filed June 14, 2011 (Doc. 1-1)("BCBS Association Receipt"); Certified Mail Receipt at 25 (dated June 7, 2010), filed June 14, 2011 (Doc. 1-1)("BCBS Kansas City Receipt")).  It contends that John Franchini, Superintendent of Insurance, has admitted that "[s]ervice of process was not done on USAA and BCBS of NM by the Superintendent of Insurance," and that, "as for the other

---

[5]"A reciprocal or interinsurance exchange is an aggregation of persons, called subscribers, who, through an attorney-in-fact, cooperate to furnish themselves and each other insurance against a designated risk, and the subscribers are both the insured and insurers."  3 L. Russ & T. Segalla, <u>Couch on Insurance</u> § 39:48 (3d ed. 2011).

companies[,] they are not doing business in New Mexico and we could not serve them."  United

Services Motion at 2-3 (citing Letter from John G. Franchini to Andrew Schultz at 1 (dated June 29,

2011), filed July 13, 2011 (Doc. 10-1)("Franchini Letter")).[6]  United Services also represents that,

when Franchini contacted Sawyer, she could not produce the "Certificate of Acceptance of Service

by the Superintendent."  United Services Motion at 3 (citing Franchini Letter at 1).  With respect

to the Default Judgment, United Services notes that the Default Judgment "purports to treble

damages under New Mexico's Unfair Practices Act even though no such claim is set forth in the

body of the complaint," and that the it awards "both treble _and_ punitive damages," which is

"expressly prohibited by New Mexico law."  United Services Motion at 4 (emphasis original).

United Services argues that, when a case is removed from state court, the federal court takes

the case in its current posture and treats previously entered orders as its own.  See United Services

Motion at 4 (citing 28 U.S.C. § 1450; Granny Goose Foods v. Bhd. of Teamsters, Local No. 70, 415

U.S. 423 (1974)).  It asserts that a federal district court should also treat a state default judgment as

its own and that rule 55(c) of the Federal Rules of Civil Procedure allows for relief from a default

judgment in accordance with rule 60(b).  See United Services Motion at 5.  It contends that the

Default Judgment is void, because neither USAA Insurance nor United Services was served with

process, which offends due process.  See United Services Motion at 6 (citing Armstrong v. Manzo,

380 U.S. 545, 550 (1965)).  It asserts that the Default Judgment is also void because the state court

lacked personal jurisdiction over United Services.  See United Services Motion at 6 (citing Hukill

v. Okla. Native Am. Domestic Violence Coal., 542 F.3d 794, 797 (10th Cir. 2008)).  United Services

further asserts that the Court should set aside the Default Judgment, because of "mistake,

_____

    [6]John G. Franchini is the Superintendent of Insurance for the State of New Mexico.
See Franchini Letter at 1.

-9-

inadvertence, surprise, or excusable neglect" under rule 60(b)(1).  United Services Motion at 7.  It argues that: (i) nothing United Services did caused the Default Judgment to be entered; (ii) it has a meritorious defense to the lawsuit, because United Services does not appear to have insured Sawyer; and (iii)  if the Court sets aside the Default Judgment, Sawyer will not be prejudiced.  See United Services Motion at 8.

On July 26, 2011, Sawyer filed her Memorandum of Points and Authorities in Opposition to Defendant United Services Automobile Association's Motion to Set Aside Default Judgment. See Doc. 21 ("United Services Response").  Sawyer argues that United Services, which she denotes as "USAA," is subject to the Default Judgment, that the United Services Motion is untimely, and that she properly served process on United Services.  United Services Response at 1.  Sawyer asserts that the United Services Motion is untimely, because, under New Mexico law, a court retains jurisdiction over a judgment for a period of thirty days and a party has only thirty days in which to appeal the judgment.  See United Services Response at 2.  She represents that United Service's time to file this motion expired on June 10, 2011, and that, when a judgment becomes final, there is no case or controversy over which the Court can exercise jurisdiction.  See United Services Response at 2.  She argues that the Defendants' removal is "nothing more than forum shopping."  United Services Response at 3.

Sawyer further asserts that, even if the Court has jurisdiction, the Default Judgment should not be set aside, because she properly served United Services and because personal service is not a due-process requirement.  See United Services Response at 3.  Sawyer represents that the New Mexico Legislature has determined that companies offering insurance services within New Mexico agree that service of process on the Superintendent is sufficient to give notice of a complaint. See United Services Response at 3-4.  Sawyer states that she served process on the Superintendent

of Insurance and that, through her services, constructive notice was given to the Defendants. See United Services Response at 4.  Sawyer also argues that any meritorious defense that the Defendants may have had are now stale, because the Defendants had notice of the state court action within the thirty-day time limit established under state law.  See United Services Response at 5.

On August 1, 2011, United Services filed United Services Automobile Association's Reply in Support of Motion to Set Aside Default Judgment.  See Doc. 23 ("United Services Reply"). United Services describes Sawyer's state Default Judgment as a "chimerical victory," because the undisputed facts are that no "USAA Insurance Company" exists.  United Services Reply at 1-2.  It asserts that, even if USAA Insurance Company is a real entity, Sawyer failed to serve it in the manner required under New Mexico law, because service of process on the insurer is complete only "upon receipt, or, in the event of refusal to accept, the date of such refusal," and that actual notice is required.  United Services Reply at 4 (citing N.M.S.A. 1978, § 59A-5-32(B)).  United Services notes that there is no evidence that Sawyer paid the statutorily required fee or filed an affidavit demonstrating compliance with N.M.S.A. 1978, § 59A-15-8.  See United Services Reply at 5.  With respect to timeliness, United Services asserts that this action was timely removed, because, where the Defendants were never formally served, the thirty-day removal clock never began to run and removal was timely.  See United Services Reply at 7.  It contends that removal or a motion to set aside a default judgment is timely even after a default judgment is entered in state court.  See United Services Reply at 8.  It argues that in Nieto v. University of New Mexico, 727 F.Supp.2d 1176 (D.N.M. 2010)(Browning, J.), the Court held that "so long as there was a legal dispute between the parties that a federal court could legitimately resolve, there exists a case or controversy under Article III," and noted that, "even where a federal district court issues a final judgment, it maintains jurisdiction to rule on post-judgment motions."  United Services Reply at 9 (citing Nieto v. Univ.

-11-

of N.M., 727 F.Supp.2d at 1187, 1192).

      **2.**      **BCBSKC Motion.**

On July 13, 2011, BCBS Kansas City filed its motion.  See Doc. 11.  BCBS Kansas City states that Sawyer had a policy with it that expired on May 31, 2007 and that they have no record of Sawyer obtaining a COBRA[7] policy with it.  See BCBSKC Motion ¶ 4, at 2.  It argues that it was never served with a summons or complaint in accordance with N.M.S.A. § 59A-15-7 and that it has meritorious defenses to the Complaint.  See BCBSKC Motion ¶¶ 5-7, at 2-3.  On July 13, 2011, BCBS Kansas City filed its Memorandum of Points and Authorities in Support of Motion to Set Aside Default Judgment Against Defendant Blue Cross and Blue Shield of Kansas City.  See Doc. 12 ("BCBSKC Memo").  BCBS Kansas City asserts that "there is no question that, following removal, this Court has the authority to set aside the default judgment entered against BCBSKC in the State Court Action for failure to obtain good service on BCBSKC."  BCBSKC Memo at 2 (citing Jenkins v. MTGLQ Investors, 218 F.App'x 724 (10th Cir. 2007)(unpublished)).  BCBS Kansas City argues that the Default Judgment is void for lack of service of process, because there is no evidence that it was served in accordance with N.M.S.A. 1978, § 59A-15-7, which requires a plaintiff to send copies of the summons and the complaint "directly to the insurer defendant by certified mail." BCBSKC Memo at 2.  It asserts that the "direct service by mail" requirement is intended to safeguard against the possibility that the Superintendent of Insurance may not have contact information readily available for unauthorized insurers like BCBS Kansas City.  BCBSKC Memo at 3.  BCBS Kansas City contends that lack of service prevented the state court from obtaining

---

      [7]A terminated employee may, under an employer's group health plan, obtain continuation coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 ("COBRA").

personal jurisdiction over it, which voids the judgment.  <u>See</u> BCBSKC Memo at 3-4.

BCBS Kansas City further asserts that the Default Judgment against it should be set aside because of a misrepresentation to the state court.  <u>See</u> BCBSKC Memo at 4.  It argues that the Default Judgment, "at the urging of plaintiff's counsel," included damages not pled in the Complaint and duplicative damages.  BCBSKC Memo at 4.  It contends that it has meritorious defenses, because all of Sawyer's allegations are grounded on the assumption that she had a valid right to health care benefits and there is no evidence that she had any such right under COBRA. <u>See</u> BCBSKC Memo at 5.  BCBS Kansas City asserts that the lack of any evidence of a valid COBRA election relieved BCBS Kansas City from any obligation to provide Sawyer with health care benefits following her termination of employment with Nueterra.  <u>See</u> BCBSKC Memo at 6. It argues that it has the further legal defense that ERISA preempts Sawyer's claims against it. <u>See</u> BCBSKC Memo at 6.

On July 26, 2011, Sawyer filed her Memorandum of Points and Authorities in Opposition to Defendant Blue Cross and Blue Shield of Kansas City's Motion to Set Aside Default Judgment. <u>See</u> Doc. 22 ("BCBSKC Response").  In her BCBSKC Response, Sawyer makes substantially the same timeliness, service of process, and meritorious defense arguments as in her United Services Response.  <u>See</u> BCBSKC Response at 2-4, 5.  Sawyer disputes that any misrepresentation occurred, and argues that, even if a misrepresentation occurred, it would not justify setting aside the entire Default Judgment.  <u>See</u> BCBSKC Response at 5.

On August 3, 2011, BCBS Kansas City filed the Reply of Defendant Blue Cross and Blue Shield of Kansas City in Support of Motion to Set Aside Default Judgment.  <u>See</u> Doc. 26 ("BCBSKC Reply").  BCBS Kansas City argues that Sawyer failed to rebut its evidence that it did not obtain service and that failure to properly serve BCBS Kansas City voids the Default Judgment.

See BCBSKC Reply at 1.  It asserts that Sawyer does not address the provisions of the Insurance Code which address service on an unauthorized insurers and argues that the plaintiff owes actual notice to an unauthorized insurer.  See BCBSKC Reply at 2.  It contends that the Court has subject matter jurisdiction, because, had "the case not been removed, BCBSKC would have had exactly the same grounds for setting aside the default judgment under NMRA Rule 1-060(B)(4) without regard to the time for filing an appeal from the default judgment."  BCBSKC Reply at 5.

       **3.**      **BCBSA Motion.**

      BCBS Association filed its motion on July 14, 2011.  See Doc. 14.  BCBS Association represents that it is an Illinois not-for-profit corporation and argues that, because it does not transact insurance in New Mexico, it is not subject to service of process under the New Mexico Insurance Code, N.M.S.A. 1978, § 59A-15-7  See BCBSA Motion ¶¶ 2, 4, at 1-2.  It argues that it has a meritorious defense, because it is not a party to the agreement between Nueterra and BCBSKC and does not owe Sawyer coverage of her alleged medical bills.  See BCBSA Motion ¶¶ 5-6, at 2.  BCBS Association contends that the state court did not obtain personal jurisdiction over it, because it was never served, and it "does not maintain an office in New Mexico, has no operations in New Mexico, and does not routinely transact business in New Mexico."  BCBSA Motion ¶¶ 8-9, at 3.  Sawyer did not file a written response to the BCBSA Motion.  See Notice of Completion of Briefing at 1-2, filed August 3, 2011 (Doc. 25).

       **4.**      **Sawyer Motion.**[8]

---

    [8]The Sawyer Motion argues that the Court lacks subject-matter jurisdiction over this lawsuit, because there is no case or controversy, and because the Rooker-Feldman doctrine prohibits federal district courts from hearing appeals of state court final judgments.  See Sawyer Memo at 3-4.  She does not, however, challenge the basis for removal: federal question jurisdiction pursuant to complete preemption under ERISA.  The Rooker-Feldman doctrine derives from two Supreme Court of the United States cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of

-14-

Sawyer filed her motion on August 4, 2011.  <u>See</u> Doc. 28.  Sawyer moves, pursuant to 28 U.S.C. § 1447(c), to remand this matter to the Ninth Judicial District Court, because the Court lacks subject-matter jurisdiction.  <u>See</u> Sawyer Motion at 1.  She argues that, because the Default Judgment was a final judgment, the Court cannot take any action regarding it.  <u>See</u> Sawyer Motion at 1. Sawyer argues that, by removing this action to federal court, the Defendants are "attempting to appeal the state court's ruling on constitutionality grounds, among other things."  Sawyer Motion at 1.  Sawyer also filed a Memorandum of Points and Authorities in Support of Motion to Remand on August 4, 2011.  <u>See</u> Doc. 29 ("Sawyer Memo").  In support of her motion, Sawyer sets out twelve undisputed facts: (i) that Sawyer filed her Complaint on May 28, 2010; (ii) that process was served on USAA Insurance, BCBS Association, and BCBS Kansas City through the Superintendent on June 7, 2010; (iii) that no Defendant entered an appearance; (iv) that, on February 24, 2011, she filed the Default Judgment Application; (v) that Judge Tatum held a hearing on her application and notices of the hearing were mailed to the Defendants through the Superintendent of Insurance; (vi) that, at the May 5, 2011 hearing, no Defendant appeared; (vii) that Judge Tatum entered the Default Judgment on May 11, 2011; (viii) that, no later than May 18, 2011, the Defendants began contacting Sawyer with respect to the matter; (ix) that Sawyer agreed to set aside the judgment as to BCBS New Mexico; (x) that, on June 10, 2011, the time limit for Defendants to file any post-judgment expired; (xi) that, on June 16, 2011, BCBS Kansas City and BCBS Association removed this action; and (xii) that, thereafter, the BCBS Kansas City, BCBS Association, and United Services filed their motions.  <u>See</u> Sawyer Memo at 1-2.

---

<u>Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).  The United States Court of Appeals for the Tenth Circuit has held that the "<u>Rooker-Feldman</u> doctrine prohibits federal suits that amount to appeals of state-court judgments."  <u>Bolden v. City of Topeka, Kan.</u>, 441 F.3d 1129, 1142-43 (10th Cir. 2006).

Sawyer argues that, in "distributing to courts the authority to hear matters, the 'authority to review final judgments of a state court in judicial proceedings' was withheld from federal district courts, and 'such review may be had only in the United States Supreme Court.'"  Sawyer Memo at 3 (citing Van Sickle v. Holloway, 791 F.2d 1431, 1436 (10th Cir. 1986)).  She assert that, because no appeal or post-judgment motion could be made, the Default Judgment was final, and "no case or controversy exists over which this Court can exercise jurisdiction."  Sawyer Memo at 4.  She further asserts that, in Nieto v. University of New Mexico, the Court determined that removal following a state court dismissal was appropriate, because a case or controversy still existed, but that the Court added the caveat that removal is appropriate "so long as there is time to insist on reconsideration or appellate review."  Sawyer Memo at 4.  Sawyer contends that the Defendants did nothing until BCBS Kansas City and BCBS Association untimely removed this matter to federal court and that, because of "their own lack of diligence," they lost that chance to move to set aside the Default Judgment or appeal in the state court system.  Sawyer Memo at 5.  Sawyer also requests attorney's fees under 28 U.S.C. § 1447(c).  See Sawyer Memo at 5.

On August 12, 2011, United Services filed United Services Automobile Association's Response to Plaintiff's Motion to Remand (Doc. 28).  See Doc. 30 ("United Services' Sawyer Response").  United Services argues that the Court has subject-matter jurisdiction over the case, and that the Sawyer Motion is premised on "unsupported factual assertions" and "a fundamental misunderstanding of legal authorities."  United Services' Sawyer Response at 1.  It disputes several of Sawyer's facts as "thinly disguised legal conclusions that are incorrect and unsupported."  United Services' Sawyer Response at 1.  It argues that the assertion that process was served on the United Services, USAA Insurance, BCBS Kansas City, or BCBS Association through the Superintendent of Insurance is "demonstrably false," because the Superintendent of Insurance admits that he did not

serve them, and because there is nothing in the record which demonstrates that Sawyer complied with the full requirements for service of process.  United Services' Sawyer Response at 2.  United Services also disputes that the time limit to file a post-judgment action or appeal had expired.  See United Services' Sawyer Response at 2.  United Services contends that nothing in N.M.S.A. 1978, § 39-1-1, affects the deadlines in N.M.R.A. 1-060(B), which also permits post-judgment relief.  See United Services' Sawyer Response at 2-3 (citing N.M.S.A. 1978, § 39-1-1; A.C. v. C.B., 113 N.M. 581, 584, 829 P.2d 660, 663 (Ct. App. 1992)).

United Services argues that Sawyer misunderstands the Rooker-Feldman doctrine, which is confined to "cases brought by state-court losers complaining of injuries cause by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  United Services' Sawyer Response at 3 (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2007)).  It asserts that Sawyer's reliance on this doctrine falters because proper removal does not constitute an appeal.  See United Services' Sawyer Response at 3.  United Services notes that Sawyer has waived any argument with respect to removal other than subject-matter jurisdiction, because the motion to remand was made more than thirty days after the notice of removal.  See United Services' Sawyer Response at 5 (citing 28 U.S.C. § 1447(c)).  United Services argues that the Court has jurisdiction to consider whether to set aside the Default Judgment.  See United Services' Sawyer Response at 5.  United Services also includes substantially the same discussion of the Court's opinion in Nieto v. University of New Mexico as in the United Services Reply.  See United Services' Sawyer Response at 6-7.  United Services contends that Sawyer is not entitled to attorneys fees.  See United Services' Sawyer Response at 7-8.

On August 12, 2011, BCBS Kansas City and BCBS Association filed BCBSKC's and

BCBSA's Response to Plaintiff's Motion to Remand.  <u>See</u> Doc. 31 ("BCBS' Sawyer Response").

BCBS Association asserts that it is not an insurance company and that the Superintendent of

Insurance cannot be its agent for service of process.  <u>See</u> BCBS' Sawyer Response at 1-2.  BCBS

Kansas City asserts that service was proper only if Sawyer sent copies of the notice of service and

court process, and filed an affidavit of her compliance.  <u>See</u> BCBS' Sawyer Response at 2.  It argues

that Sawyer did not meet the service requirements and that it was not served.  <u>See</u> BCBS' Sawyer

Response at 3.  BCBS Kansas City and BCBS Association contend that Sawyer waived any non-

jurisdictional arguments, because the Sawyer Motion was filed more than thirty days after removal.

<u>See</u> BCBS' Sawyer Response at 4.  They assert that the New Mexico courts have repeatedly held

that the time limits in N.M.S.A. 1978, § 39-1-1 yield to the longer time limits in N.M.R.A. 1-060

and that N.M.R.A. 1-060 motions remain viable "<u>indefinitely</u>."  BCBS' Sawyer Response at 4

(emphasis original).  They also argue that removal jurisdiction is original, not appellate, and, thus,

the <u>Rooker-Feldman</u> doctrine does not apply.  <u>See</u> BCBS' Sawyer Response at 6.

On September 8, 2011, Sawyer filed her Reply Memorandum in Support of Motion to

Remand.  <u>See</u> Doc. 32 ("Sawyer Response").  Sawyer argues that, despite any of the Superintendent

of Insurance's alleged failings, she served the Defendants' agent and, therefore, properly served the

Defendants.  <u>See</u> Sawyer Response at 1.  She asserts that, because service was proper, the Court has

no jurisdiction and remand is necessary.  <u>See</u> Sawyer Response at 1.

On February 9, 2012, the Court held a hearing.  The Court asked United Services how it

learned of the Default Judgment.   <u>See</u> Transcript of Hearing at 4:13-15 (February 9,

2012)(Court)("Tr.").[9]  United Services responded that one of the Blue Cross Blue Shield entities

---

[9]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

-18-

contacted its corporate offices, because Blue Cross Blue Shield had just seen the judgment and was trying to determine what United Services knew about it.  <u>See</u> Tr. at 4:16-5:10 (Court, Schultz). United Services argued that the Default Judgment was in error, because: (i) Sawyer failed to name the correct corporate entity; and (ii) United Services was never properly served.  <u>See</u> Tr. at 5:11-20 (Schultz).  The Court asked whether United Services would feel comfortable removing the case and voiding the Default Judgment, if the facts of the case were more egregious, and United Services did not find out about the case until three or four years after default judgment.  <u>See</u> Tr. at 6:11-19 (Court).  United Services stated that it would feel comfortable because, under 28 U.S.C. § 1446, the thirty-day removal period begins to run only when proper service is made and asserted that the United States Court of Appeals for the Tenth Circuit determined that rule was the correct one in <u>Jenkins v. MTGLQ Investors</u>.  <u>See</u> Tr. at 6:20-7:11 (Schultz).  It contended that rule 60(b)(4), which states that a judgment should be set aside if void, applies, because USAA Insurance does not exist and that, once a judgment is void, a court must set it aside.  <u>See</u> Tr. at 7:15-8:6 (Schultz).  United Services asserted that it would make the same argument, if it received a summons with the wrong name, but admitted that it was a closer question.  <u>See</u> Tr. at 8:7-17 (Court, Schultz).  The Court asked why, if USAA Insurance is a non-entity and judgment was only entered as to it, United Services is concerned about the Default Judgment.  <u>See</u> Tr. at 9:6-9 (Court).  United Services responded that it wants a court ruling that the judgment is void and that it wants there to be no doubt that the Default Judgment against USAA Insurance cannot be enforced against United Services. <u>See</u> Tr. at 9:10-17 (Schultz).  It argued that the Franchini Letter establishes two key facts: (i) that the Superintendent of Insurance received a copy of process from Sawyer; and (ii) that he never served either USAA Insurance or United Services.  <u>See</u> Tr. at 10:15-12:12 (Court, Schultz).  United Services contended that the Franchini Letter establishes that service was never completed.  <u>See</u> Tr.

at 13:1-11 (Schultz).   United Services also asserted that the Court could set aside the Default Judgement as the result of mistake, inadvertence, surprise or excusable neglect, because: (i) United Services did not cause the default judgment to be entered; (ii) it has meritorious defenses, because the Default Judgment was entered against a different entity, and because it has no record of a policy related to Sawyer; and (iii) there is no prejudice to Sawyer if the Default Judgment is set aside, because setting aside a judgment to which she was never entitled cannot prejudice her. See Tr. at 13:12-14:16 (Schultz).

The Court then asked BCBS Kansas City and BCBS Association what evidence they had to show that they were not served.  See Tr. at 17:19-24 (Court).  BCBS Kansas City and BCBS Association responded that they supplied affidavits from company employees who have attested that neither company received service of process from the Superintendent of Insurance and that the Franchini Letter confirms that the Superintendent of Insurance did not forward any copies of the Complaint Sawyer that provided him.  See Tr. at 17:25-18:11 (Bartell).  They argued that Sawyer has only provided the certified mail receipt, which established no more than that the Superintendent of Insurance received service.  See Tr. at 18:12-17 (Bartell).  BCBS Association asserted that its service of process argument is clear-cut, because it is not an insurance company and does not transact insurance, such that the Superintendent of Insurance is not its agent and no statute permits substituted service to the Superintendent of Insurance.  See Tr. at 18:18-19:1 (Bartell).  It represented that it is the holder of the Blue Cross Blue Shield trademark and that it has no corporate ties to the other Blue Cross Blue Shield Defendants.  See Tr. at 20:4-19 (Bartell).  BCBS Kansas City admitted that Sawyer, at one time, had insurance with it through her employer.  See Tr. at 20:20-21:2 (Bartell).  It asserted that it is an unauthorized insurer and that the N.M.S.A. 1978, § 59A-15-7 sets forth the means of serving an unauthorized insurer.  See Tr. at 22:5-15 (Bartell).  It

-20-

contended that Sawyer treated all of the Defendants as if they were authorized insurers and that she did not follow § 59A-15-7, because, in addition to serving the Superintendent of Insurance, New Mexico law requires that a plaintiff send a copy of the summons and the complaint directly to an unauthorized insurer.  See Tr. at 22:16-23:23 (Bartell).  BCBS Association and BCBS Kansas City argued that the Default Judgment is void for lack of proper service and that the state court did not have personal jurisdiction over them in the absence of proper service.  See Tr. at 23:24-25:8 (Bartell).  BCBS Association and BCBS Kansas City asserted that the Court has jurisdiction over the action, and that Sawyer's references to Nieto v. University of New Mexico are misguided. See Tr. at 24:16-25:6 (Bartell).  They represented that, if these motions were before the state court, the state court would have had jurisdiction to set aside the default judgment once it determined that process had never been served.  See Tr. at 25:7-18 (Bartell).  They contended that there is a live controversy sufficient to support the Court's subject-matter jurisdiction and that the Court should set aside the Default Judgment.  See Tr. at 26:4-16 (Bartell).

The Court asked Sawyer whether she believed the Court would be sitting in an appellate fashion if Judge Tatum had entered summary judgment and then the Defendants properly removed. See Tr. at 27:19-28:2 (Court).  Sawyer responded that, if the case was removed within thirty days of service, it would also be inside the thirty-day requirement under N.M.S.A. 1978, § 39-1-1, which permits a court to dispose of any post-judgment motion.  See Tr. at 28:3-12 (Collins).  Sawyer admitted that, with respect to rule 60(b)(4), the thirty-day rule under § 39-1-1 would not have any impact, but that the thirty-day rule would dispose of the rule 60(b)(6) motion -- that Sawyer negligently named USAA Insurance rather than United Services.  See Tr. at 28:24-29:2 (Collins). Sawyer asserted that United Services should be treated differently from the other Defendants, because it is arguing that it was improperly named, and contended that United Services' argument

-21-

was a "red herring," because it had sufficient notice that it was the real party in interest.  Tr. at
29:13-24 (Collins).  The Court asked what Sawyer gained in having a judgment against a non-
existent entity.  See Tr. at 29:25-30:2 (Court).  She responded that, if the entity does not exist, then
she would not be able to enforce the Default Judgment.  See Tr. at 30:3-5 (Collins).  She argued,
however, that United Services is known as USAA, and that, had it received a copy of the summons
and complaint from the Superintendent of Insurance it would have been on notice.  See Tr. at 30:6-
13 (Collins).  The Court asked, assuming that Sawyer complied with the service of process statutes
and that the Superintendent of Insurance never forwarded that service, how the Court should rule
on the motions.  See Tr. at 30:22-31:2 (Court).  Sawyer agreed the blame lies with the
Superintendent of Insurance  but asserted that the Court needs to decide the state-law question
whether the Superintendent is the Defendants' agent, authorized to receive service of process.
See Tr. at 31:3-12 (Court, Collins).  She asserted that, once she served the Superintendent of
Insurance, United Services, BCBS Association, and BCBS Kansas City were served under state law.
See Tr. at 31:13-15 (Court, Collins).

        Sawyer represented that the Supreme Court of New Mexico has not addressed the statutes
discussing service of process on authorized and unauthorized insurers, but that it has ruled on service
of process on an agent in the context of a corporation.  See Tr. at 31:19-25 (Collins).  She stated that,
in 1935, in Silva v. Crombie & Co., 39 N.M. 240, 44 P.2d 719 (1935), a corporation appointed an
agent who subsequently left the state and the Supreme Court of New Mexico held that serving the
Secretary of State of New Mexico, who failed to forward the process, was sufficient.  See Tr. at
32:3-12 (Collins).  Sawyer asserted that the Supreme Court of New Mexico held that the Secretary
of State's negligence is not chargeable to the plaintiff.  See Tr. at 32:13-18 (Collins).  Sawyer also
pointed the Court to Abarca v. Henry L. Hanson, Inc., 106 N.M. 25, 738 P.2d 519 (Ct. App. 1987).

See Tr. at 33:23-25 (Collins). The Court then asked, assuming that Sawyer correctly interpreted the statutes and that service was proper when made on the Superintendent of Insurance, whether a federal court could find good cause to set aside the Default Judgment, because United Services, BCBS Association, and BCBS Kansas City did not receive the full benefits of service under those statutes. See Tr. at 35:14-21 (Court). Sawyer responded that actual notice is not required under due process. See Tr. at 35:22-23 (Collins). Sawyer asserted that the only process due to the Defendants is process reasonably calculated to give the Defendants notice and that the State of New Mexico has determined that insurance companies have notice when service is made on the Superintendent. See Tr. at 36:4-20 (Collins). She argued that the Superintendent of Insurance was served, giving United Services, BCBS Association, and BCBS Kansas City notice, and asked that the Court remand the matter to state court and deny the Defendants' motions. See Tr. at 36:21-37:4 (Collins). With respect to Nieto v. University of New Mexico, Sawyer contended that the Court held that, when there is no issue that can be appealed, there is no case or controversy for the Court to decide. See Tr. at 37:12-19 (Collins). She admitted, however, that, if BCBS Association and BCBS Kansas City had not removed, the Defendants probably would have been able to bring a rule 60(b) or 55(c) motion in state court. See Tr. at 38:17-22 (Collins).

The Court asked why United Services had standing to contest the Default Judgment. See Tr. at 41:4-6 (Court). United Services responded that it had standing insofar as Sawyer has represented that she intends to enforce the Default Judgment against it. See Tr. at 41:7-14 (Schultz). With respect to § 39-1-1, United Services argued that § 39-1-1 does not repeal "the provisions of sections 4227 or 4230, Code 1915" and that rule 1-060 superseded those provisions. Tr. at 42:5-15 (Schultz). It also pointed the Court to A.C. v. C.B., where the Court of Appeals of New Mexico held that § 39-1-1 "has never been viewed as depriving the district court of jurisdiction to consider and resolve a

subsequent timely motion under Rule 60(B)" and to <u>Classen v. Classen</u>, 119 N.M. 582, 893 P.2d 478

(Ct. App. 1995).  Tr. at 42:25-43:5 (Schultz).  United Services conceded that New Mexico could

have a scheme in which service on the Superintendent of Insurance would satisfy due process, even

though a party did not receive actual service, but asserted that New Mexico has not done that.

<u>See</u> Tr. at 44:9-18 (Court, Schultz).  It argued that service is not completed until the insurer receives

service or refuses to accept service.  <u>See</u> Tr. at 44:23-45:15 (Schultz).  United Services agreed that

the Court has no appellate jurisdiction, under the <u>Rooker-Feldman</u> doctrine, but asserted that this

case was removed and that the Court has original jurisdiction.  <u>See</u> Tr. at 47:10-48:1 (Schultz).

United Services contended that failure to satisfy the statutory service requirements rendered the

Default Judgment void, despite the allegation that the due-process minimum standard may have been

met.  <u>See</u> Tr. at 48:7-18 (Court, Schultz).  BCBS Kansas City argued that it saw no way that merely

serving the Superintendent of Insurance without demanding proof of actual service could comply

with due process, because service on the Superintendent of Insurance is not reasonably calculated

to advise the defendant that he has been served.  <u>See</u> Tr. at 49:21-25 (Bartell).  Furthermore, BCBS

Kansas City and BCBS Association contended that Sawyer has not rebutted their assertions that they

are not authorized insurers and that BCBS Association is not an  insurer.  <u>See</u> Tr. at 50:3-18

(Bartell).  They also asserted that they were not blaming the Superintendent of Insurance, because

Sawyer failed to comply with the unauthorized insurer statute and send service of process directly

to them.  <u>See</u> Tr. at 51:8-52:16 (Bartell).

## <u>RELEVANT LAW OF REMOVAL PROCEDURES</u>

A defendant may remove "any civil action brought in a State court of which the district

courts of the United States have original jurisdiction" to "the district court of the United States for

the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

The right to remove is a statutory right, and thus removing defendants must carefully follow all statutory requirements.  See Bonadeo v. Lujan, No. 08-0812, 2009 WL 1324119, at *9-10 (D.N.M. Apr. 30, 2009)(Browning, J.).  Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.  See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09 (1941); Fajen v. Found Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).  Doubtful cases are resolved in favor of remand, because "there is a presumption against removal jurisdiction."  Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).  On the other hand, strict construction and a presumption against Congressionally allowed removal should not become a judicial hostility toward removal cases.  See Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal.").

Section 1446 of Title 28 of the United States Code governs the procedure for removal.  See 28 U.S.C. § 1446(b).  It demands that "[t]he notice of removal . . . be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading . . . or . . . after the service of summons . . . if such initial pleading has then been filed in court and is not required to be served . . . , whichever period is shorter."  28 U.S.C. 1446(b).  The requirement that a defendant timely file the notice of removal is mandatory, although it is not jurisdictional.  See Bonadeo v. Lujan, 2009 WL 1324119, at *6 (citing McCain v.. Cahoj, 794 F.Supp. 1061, 1062 (D. Kan. 1992)).  As the Court has recognized, there is a split amongst courts whether this thirty-day removal window runs from the date the first defendant is served -- the "first-served" rule -- or the date the last-served defendant is served -- the "last-served" rule.

Neither the Supreme Court nor the United States Court of Appeals for the Tenth Circuit . . . has spoken on whether, in a case of more than one defendant, the thirty-day clock for removal begins to run when the first defendant is served or when the last defendant is served.  There appears . . . to be a split among the other federal courts on this issue. . . .

A majority of judges in the District of New Mexico support the traditional view that the thirty-day removal period begins to run when service of process is accomplished on the first-served defendant.  This rule is referred to as the "first-served rule."  This Court, however, has concluded that the more modern, "last-served" rule is more in harmony with the language of the removal statute, and is a more fair and workable rule.  Under that rule, the clock begins running on each defendant to either remove a case or join a removal petition when that defendant receives formal service of process.

McEntire v. Kmart Corp., No. 09-0567, 2010 WL 553443, at *4 (D.N.M. Feb. 9, 2010)(Browning,

J.)(citations omitted).  The Court follows the last-served rule.[10]

If a defendant removes a matter to federal court, the plaintiff may challenge the removal by

filing a motion to remand in federal district court.  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 69

(1996).  The procedure for motions to remand is governed primarily by 28 U.S.C. § 1447.  Grounds

for remand include a lack of subject-matter jurisdiction, see 28 U.S.C. § 1447(c), or a defect in the

removal procedure, see Bonadeo v. Lujan, 2009 WL 1324119, at *6 (citing McShares, Inc. v. Barry,

979 F. Supp. 1338, 1341 (D. Kan. 1997)).  A defect in the removal notice or any "[f]ailure to comply

with the requirements of § 1446(b) constitutes a 'defect in removal procedure.'"  Page v. City of

Southfield, 45 F.3d 128, 131 (6th Cir.1995)(citing In re Cont'l Cas. Co., 29 F.3d 292, 294 (7th Cir.

1994)).  Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other

than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of

removal under section 1446(a)."  28 U.S.C. § 1447(c).

---

[10]The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, § 103 (2011) ("FCJVC") recently adopted the last-served rule and provides: "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal."  The FCJVC only applies, however, to cases "commenced on or after" January 6, 2012.  See Pub. L. No. 112-63, 125 Stat. 758, § 105(a).

## REMOVAL TO FEDERAL COURT AFTER JUDGMENT

There is some disagreement whether a defendant may remove a case to federal court after the state trial court has entered a judgment in a state-court action, but before the expiration of the defendant's time for removal under the applicable removal statute. This situation rarely arises, because it is uncommon that a state-court judge will dispose of a case before the defendant's thirty-day period to seek removal expires. See 28 U.S.C. § 1446(b) (requiring notice of removal be filed within thirty days of receipt of service of process). Thus, most cases that address the issue do so in the context of removal statutes other than 28 U.S.C. § 1441. Nevertheless, the Court concludes that the better reasoned opinions allow for removal after a state-court dismissal. And, in certain circumstances, a federal district court may set aside the state trial court's judgment pursuant to rule 60(b) of the Federal Rules of Civil Procedure.

The statutes governing procedures for removal appear to require only: (i) an existing "civil action," 28 U.S.C. §§ 1441, 1446(a)-(b); (ii) over which the federal district court has original jurisdiction, see 28 U.S.C. § 1441(a); and (iii) that the defendant file a notice of removal within thirty days of receipt of service, see 28 U.S.C. § 1446(b). There is no express requirement that the removal occur at any particular stage of the adjudicatory process.

### 1.     The Case-or-Controversy Requirement.

Article III of the Constitution limits the judicial power of the federal courts to particular "cases" or "controversies." The Clause states:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; . . . [and] to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. Art. III, § 2.  To satisfy Article III's core justiciability requirements, a plaintiff must have standing, his or her claims must not be moot, and his or her claims must be ripe.  To have standing, a plaintiff must show: (i) that he or she has suffered an injury in fact -- an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (ii) that there is a fairly traceable causal connection between the injury and the defendant's conduct complained of; and (iii) that it is likely that a favorable decision will redress the injury.  See D.L.S. v. Utah, 374 F.3d 971, 974 (10th Cir. 2004); Morgan v. McCotter, 365 F.3d 882, 887-88 (10th Cir. 2004).

Claims become moot when the issues that they present are no longer "live" or the parties lack a legally cognizable interest in the outcome.  City of L.A. v. Davis, 440 U.S. 625, 631 (1979). A claim may become moot if "(i) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  City of L.A. v. Davis, 440 U.S. at 631.  The burden of establishing mootness is a heavy one.  See City of L.A. v. Davis, 440 U.S. at 631.

The ripeness doctrine focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.  In determining whether a case is ripe, a court must evaluate the fitness of the issues and record presented for judicial review, and the potential hardship to the parties of withholding court consideration.  See Morgan v. McCotter, 365 F.3d at 890-91.  The fitness inquiry involves assessing whether uncertain or contingent future events may not occur as anticipated, and the hardship inquiry involves examining whether the challenged action creates a direct and immediate dilemma for the parties.  See Morgan v. McCotter, 365 F.3d at 890-91.

## 2.     A Case or Controversy Exists in Cases Removed After State-Court Judgments.

Although several federal district courts have found that, when a case is removed after the

state court has issued a final judgment, the district court lacks jurisdiction and must remand the case to state court,[11] the Court, in <u>Nieto v. University of New Mexico</u>, found the reasoning of those case unpersuasive.  <u>See</u> 727 F.Supp.2d at 1185.  In <u>Nieto v. University of New Mexico</u>, a state court had dismissed the plaintiff's complaint before the defendants removed, and the plaintiff  argued that there was no case or controversy under Article III.  <u>See</u> 727 F.Supp.2d at 1190.  The Court found that both parties still had a cognizable interest in the outcome of the case, because "even when cases are dismissed at the trial level it is standard to still be a case if the parties are contemplating post-trial motions, requests for fees, or appeals."  <u>Nieto v. Univ. of N.M.</u>, 727 F.Supp.2d at 1191.  The Court noted that "even where a federal district court issues a final judgment, it maintains jurisdiction to rule on post-judgment motions, <u>e.g.</u>, motions for new trial, motions for fees, or motions for relief from judgment."  <u>Nieto v. Univ. of N.M.</u>, 727 F.Supp.2d at 1192 (citations omitted).  The Court held that, as a matter of logic, it "does not believes a state-court judgment could extinguish a case-or-controversy, at least while non-extraordinary appellate remedies are still available."  <u>Nieto v. Univ. of N.M.</u>, 727 F.Supp.2d at 1193.  It noted that "the case-or-controversy requirement binds all courts, including the Supreme Court of the United States" and that  "the state-court judgment, after all state appellate remedies have been exhausted, does not extinguish the case or controversy for the purposes of the Supreme Court's review."  <u>Nieto v. Univ. of N.M.</u>, 727 F.Supp.2d at 1193.  The Court held that, "[s]o long as there exist issues to be resolved at some level of judicial review, there exists a case or controversy and a basis for federal jurisdiction."  <u>Nieto v. Univ. of N.M.</u>, 727 F.Supp.2d at 1194.  The Court stated that, if it treats the state-court judgment as if it was rendered

---

[11]<u>See</u> <u>Robert Plan Corp. v. American International Group, Inc.</u>, No. 09-200, 2009 WL 2448509 (D.N.J. Aug. 10, 2009); <u>Brown v. Dist. Director</u>, No. 01-D-1625, 2002 WL 1760847 (D. Colo. July 15, 2002); <u>Zilinger v. Allied Am. Ins. Co.</u>, 957 F. Supp. 148, 149 (N.D. Ill. 1997).

by the Court, "the Court has jurisdiction to review it and potentially set it aside in response to a party's post-judgment motions." Nieto v. Univ. of N.M., 727 F.Supp.2d at 1195.

Several federal courts have recognized that the case-or-controversy requirement is met even after a state-court judgment.  The Tenth Circuit, in Jenkins v. MTGLQ Investors, implicitly recognized that a case or controversy exists when a case is removed after the entry of a state-court default judgment. There, the Tenth Circuit granted a motion to amend the notice of removal to more specifically discuss the defendant's citizenship and found that the notice of removal was timely "despite being filed more than three months after entry of the default judgment and more than eight months after Mr. Jenkins filed his complaint."  218 F.App'x at 724.  The Tenth Circuit held that, after removal, "MTGLQ had the 'right to the opinion of the Federal court' . . . . [and] [t]he district court could set aside the default judgment under Fed. R. Civ. P. 55(c) and 60(b)."  Jenkins v. MTGLQ Investors, 218 F.App'x at 724.   In In re Savers Federal Savings & Loan Association, 872 F.2d 963 (11th Cir. 1989), a jury decided the plaintiff's primary claims on December 1, 1988, and the state trial court entered final judgment on January 25, 1989.  See 872 F.2d at 964 & n.1.  On February 10, 1989 -- before the time for filing a notice of appeal in state court expired -- the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as conservator for the defendant, and FSLIC removed to federal district court and filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit.  In re Savers Fed. Sav. & Loan Ass'n, 872 F.2d at 964-65.  The plaintiff moved to remand, challenging the propriety of the post-judgment removal.  See In re Savers Fed. Sav. & Loan Ass'n, 872 F.2d at 964-65.  The district court granted the motion to remand, but the Eleventh Circuit stayed the order to decide whether to issue a writ of mandamus requiring the district court to vacate the remand order.  The Eleventh Circuit issued the writ.  It first found that, although the removal in question was made pursuant to 12 U.S.C. § 1730(k)(1), it was governed by

-30-

the procedures of 28 U.S.C. § 1446(b), just like a removal under 28 U.S.C. § 1441.  See 872 F.2d

at 965.  It then stated:

> The question, then, is whether[,] after there has been a final judgment by the state
> trial court, but when the period for appeal has not yet lapsed, a case ceases to be an
> "action from a State court" which can be removed to a federal forum under section
> 1730(k).  We can discern no reason to confine the interpretation of "action" to
> actions that have not reached judgment.  Such a rule has been rejected by three
> circuits with respect to default judgments.

872 F.2d at 965-66.  Although the Eleventh Circuit did not state this proposition in terms of the case-

or-controversy requirement, it acknowledged that there was a federal court action from which the

defendant could appeal to the Eleventh Circuit.  The Court finds the reasoning of the Eleventh

Circuit persuasive.

In Resolution Trust Corp. v. BVS Development, Inc., 42 F.3d 1206 (9th Cir. 1994), the

United States Court of Appeals for the Ninth Circuit addressed whether a case or controversy exists

in a case pending appeal in state court.[12]  Resolution Trust Corporation removed to federal court

using the removal power in 12 U.S.C. § 1441a(l).  See 42 F.3d at 1210.[13]  The federal district court

denied two motion to remand and entered the state-court's final judgment as its own.  See

Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d at 1210.  In a third motion to remand, GT Water

Products, Inc. argued that "the Article III limitation of federal jurisdiction to 'cases' and

'controversies' prohibits a district court from entering a state court judgment as its own."

---

[12] The Court assumes that, if there exists a case or controversy in a pending appeal, the same
case or controversy exists in a case in which a final judgment has been entered but no appeal has
been filed, so long as there are still non-extraordinary procedural mechanisms for seeking relief from
that judgment.  For example, if a defendant wins at trial, the Court believes a case or controversy
exists during the time in which the plaintiff can file a notice of appeal or a post-judgment motion.

[13] Although the Ninth Circuit was dealing with a different removal statute, it applied the
removal procedures in 28 U.S.C. § 1447, just as it would have if it were dealing with removal under
28 U.S.C. § 1441.  See Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d at 1211.

Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d at 1211.  The Ninth Circuit rejected this

argument, stating:

> The terms "cases" and "controversies" in Section 2 of Article III define the "judicial
> Power," the permissible bounds of federal jurisdiction as a whole.  Article III does
> not make distinctions among the "inferior courts" to be established by Congress or
> require the "judicial Power" to be divided among those courts in any particular way.
> Because Article III is concerned with the scope of federal jurisdiction as a whole, it
> is only concerned with whether a "case" or "controversy" is presented to the federal
> judiciary as a whole.  It is of no constitutional significance if in a particular instance
> a district court is required to perform the ministerial task of entering judgment based
> on an already entered state judgment, as a condition of our exercise of appellate
> jurisdiction.
>
> GT Water errs in equating the unfamiliar with the impermissible.  Though the RTC
> removal provision may require the district courts to act in unaccustomed ways,
> inconsistent with the ordinary course of federal litigation, there is no constitutional
> prohibition against novelty.

Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d at 1211.  In other words, the Ninth Circuit

believed that, so long as there is a legal dispute between the parties that a federal court could

legitimately resolve, there exists a case or controversy under Article III.

In FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d 183 (5th Cir. 1992), the United States

Court of Appeals for the Fifth Circuit addressed "the question of the jurisdiction of a federal court

of appeals where a matter has been removed to federal district court while appeal is pending in a

state court of appeals."  978 F.2d at 183.  The case dealt with a different removal statute -- 12 U.S.C.

§ 1819(b)(2) -- but the case is instructive.[14]  After the state trial court entered summary judgment

---

[14] The relevant provision reads:

> Except as provided in subparagraph (D) [which was not relevant in FDIC v. Kahlil
> Zoom-In Markets, Inc. and is not relevant here], the Corporation may, without bond
> or security, remove any action, suit, or proceeding from a State court to the
> appropriate United States district court before the end of the 90-day period beginning
> on the date the action, suit, or proceeding is filed against the Corporation or the
> Corporation is substituted as a party.

in the FDIC's favor, Kahlil filed a notice of appeal in state court.  See FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184.  The FDIC then removed the matter to federal court.  See FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184.  In response, Kahlil filed both a notice of appeal to the Fifth Circuit and a notice to transfer to the Fifth Circuit court pursuant to 28 U.S.C. § 1631.  See FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184.  The district court granted the § 1631 motion without entering a judgment.  See FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184.  The Fifth Circuit stated that § 1631 was inapplicable and found that the district court had jurisdiction, notwithstanding the state-court dismissal and Kahlil's notice of appeal before the FDIC's notice of removal.  See FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184.  The Fifth Circuit found that, until the federal district court entered a final judgment in the removed action, the federal court of appeals lacked appellate jurisdiction.  See FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184 ("[I]n the absence of a final, appealable judgment from the district court, we are without jurisdiction.").  The Fifth Circuit informed the trial court that the proper procedure for a district court to follow when dealing with a case that has been dismissed in state court before removal is to "enter[] the state court's judgment as its own, complying with the requirements set forth in Granny Goose Foods."  FDIC v. Kahlil Zoom-In Markets, Inc., 978 F.2d at 184.  While it did not address the case-or-controversy issue, the Fifth Circuit found jurisdiction.

        In Federal Deposit Insurance Corporation v. Yancey Camp Development, 889 F.2d 647 (5th Cir. 1989), the Fifth Circuit exercised jurisdiction, when a defendant removes to federal court after the state court has entered a judgment.  See 889 F.2d at 648.  The Fifth Circuit explained that "[a] state court judgment in a case properly removed to federal court -- like the one before us -- can be

------

18 U.S.C. § 1819(b)(2)(B).

vacated under Federal Rule of Civil Procedure 60(b)."  889 F.2d at 648 (citing Beighley v. FDIC, 868 F.2d 776, 781-82 (5th Cir. 1989); Northshore Dev., Inc. v. Lee, 835 F.2d 580 (5th Cir. 1988); Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir. 1984)).  The Fifth Circuit also exercised jurisdiction after entry of a state-court judgment in Murray v. Ford Motor Co., 770 F.2d 461 (1985).  The court in Murray v. Ford Motor Co. addressed whether the district court had authority to set aside the state-court's judgment pursuant to rule 60(b) after removal.  See 770 F.2d at 463.  The Fifth Circuit did not directly address whether a case or controversy existed or whether the district court had jurisdiction over the removal after entry of the state-court default judgment, but both courts were charged with determining their own jurisdiction, and the Fifth Circuit made no mention of any concern that jurisdiction might be lacking.  The Court finds this authority persuasive and that such authority indicates that the Court can also exercise jurisdiction.

In 1955, the United States Court of Appeals for the Sixth Circuit recognized that a case may be removed after entry of a default judgment against the defendant, and exercised jurisdiction over the case.  In Munsey v. Testworth Laboratories, 227 F.2d 902 (6th Cir. 1955), Munsey sued Testworth Laboratories.  The case had a peculiar procedural posture, because Munsey had served Testworth with a summons four months before he filed his complaint.  Munsey then filed his complaint on one day, served Testworth with a copy of the complaint two days later, and received a default judgment a mere two days after service.  See Munsey v. Testworth Labs., 227 F.2d at 902-03.  Within a week after the complaint was filed -- and two days after the default judgment was entered -- Testworth removed to federal court.  See Munsey v. Testworth Labs., 227 F.2d at 903.  Munsey argued that the federal district court lacked jurisdiction to proceed.  The Sixth Circuit stated:

> We agree with the district court that the appellant's contention is without merit. . . .

-34-

The petition for removal was therefore filed well within the twenty day period provided by the federal statute.  28 U.S.C.A. § 1446(b).

Prior to removal the state court judgment was concededly subject to being set aside in the state court.  It was subject to the same hazard in the federal court after removal.  28 U.S.C.A., § 1450.  "When a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court."  Savell v. Southern Railway Co., 5 Cir., 1937, 93 F.2d 377, 379, 114 A.L.R. 1261.  However, the federal court was not limited to thirty days within which to set aside the judgment that limitation being merely a rule of practice governing Tennessee courts.

Munsey v. Testworth Labs., 227 F.2d at 903.  The Sixth Circuit thus affirmed the district court's decision to set aside the default judgment against Testworth that the Tennessee trial court entered.

Several United States District Courts have also found that removal after a state court dismissal is appropriate, and exercised jurisdiction.  See Yash Techs., Inc. v. ProSpeed Trading, Inc., No. 07-CV-4054, 2009 U.S. Dist. LEXIS 82026, at *6-12 (C.D. Ill. Sept. 9, 2009)(ruling on 60(b)(1) motion to set aside state court default judgment); Va. Stockton v. Can. Life Assurance Co., No. 08-3016, 2008 U.S. Dist. LEXIS 74258, at *10-12 (C.D. Ill. Aug. 9, 2008)("[T]he state court's default judgment against Defendants was valid when entered, but this Court will treat the judgment as if it had entered the order and will consider the [rule 60(b)] Motion to Vacate."); Alonzi v. Budget Constr. Co., No. 94-C-254, 1994 U.S. Dist. LEXIS 11348, at *4 (N.D. Ill. Aug. 10, 1994)("Since this case was properly removed to federal court after the state circuit court issued its order of default judgment against Budget, Federal Rules of Civil Procedure 55(c) and 60(b) will govern consideration of the motion to vacate.").  The Court finds persuasive the reasoning of these cases from the Fifth, Sixth, Ninth, and Eleventh Circuits, and the several District Courts.

In Philpott v. Resolution Trust Corp.,739 F.Supp. 380 (N.D. Ill. 1990), the United States District Court for the Northern District of Illinois held that a defendant could not remove a closed case, because "[t]here is no jurisdiction to remove a case if no case or controversy exists," see 739

F.Supp. at 383-84,[15] but acknowledged that many cases recognize the propriety of removal to federal court after the state court enters a default judgment, apparently recognizing a case or controversy exists, see 739 F. Supp. at 383 (citing Murray v. Ford Motor Co., 770 F.2d 461, 463 (5th Cir. 1985); Butner v. Neustadter, 324 F.2d 783, 785 (9th Cir. 1963); Munsey v. Testworth Labs., 227 F.2d 902 (6th Cir. 1955)(per curiam); Robert E. Diehl, Inc. v. Morrison, 590 F.Supp. 1190, 1192 (M.D. Pa. 1984); Kizer v. Sherwood, 311 F.Supp. 809, 811 (M.D. Pa. 1970)).  The Northern District of Illinois did not attempt to explain away the post-default removal cases.  Rather, it addressed the "[o]nly . . . case [it] found that permitted removal after a final judgment where the judgment was not one by default": In re Savers Federal Savings & Loan Association, 872 F.2d 963 (11th Cir. 1989). See Philpott v. Resolution Trust Corp., 739 F.Supp. at 383.  The Northern District of Illinois did

---

[15] In Philpott v. Resolution Trust Corp., the court was dealing with 12 U.S.C. § 1441a(l), rather than 28 U.S.C. § 1441, as its removal statute.  The language of 12 U.S.C. § 1441a(l), however, is similar to 28 U.S.C. § 1441.  It states:

> The [Resolution Trust] Corporation . . . may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the Corporation as conservator or receiver of such institution. The removal of any such suit or proceeding shall be instituted--
>
> > (i) not later than 90 days after the date the Corporation is substituted as a party, or
> >
> > (ii) not later than 30 days after service on the Corporation, if the Corporation is named as a party in any capacity . . . .

12 U.S.C. § 1441a(l)(3)(A).  The Court sees no indication from the language of 12 U.S.C. § 1441a(l) that it would somehow differ from 28 U.S.C. § 1441 with respect to whether a case or controversy exists, or whether a district court could have jurisdiction over a removed case if the case had already reached a final judgment.

not attempt to address the Eleventh Circuit's logic in <u>In re Savers Federal Savings & Loan</u> <u>Association</u>, and found that, "[i]n light of the dictum in <u>Rothner[ v. City of Chicago</u>, 879 F.2d 1402 (7th Cir. 1989),] and the Seventh Circuit's general narrow interpretation of federal jurisdiction, it is believed the Seventh Circuit would follow those courts that hold there is generally no jurisdiction to remove closed cases." <u>Philpott v. Resolution Trust Corp.</u>, 739 F.Supp. at 384.

### A FEDERAL DISTRICT COURT TAKES A REMOVED CASE AS THE COURT FINDS IT

When a case is removed from state court, the federal court takes the case in its current posture and treats previously entered orders as its own. The Supreme Court in <u>Granny Goose Foods</u> <u>v. Brotherhood of Teamsters, Local No. 70</u>, stated:

> Congress clearly intended to preserve the effectiveness of state court orders after removal . . . . After removal, the federal court "takes the case up where the State court left it off." <u>Duncan v. Gegan</u>, 101 U.S. 810, 812 . . . (1880). The "full force and effect" provided state court orders after removal of the case to federal court was not intended to be more than the force and effect the orders would have had in state court.
>
> More importantly, once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal.

415 U.S. at 436-37. <u>See</u> 28 U.S.C. § 1450 (stating that all orders entered before removal "shall remain in full force and effect until dissolved or modified by the district court"); Fed. R. Civ. P. 81(c)(1) (stating that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court"). In <u>Wallace v. Microsoft Corp.</u>, 596 F.3d 703, 707 (10th Cir. 2010), the Tenth Circuit stated:

> After the removal of an action from state court . . . the case will proceed as if it originally had been brought in the federal court[;] [t]hus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.

596 F.3d at 707 (citations omitted)(internal quotation marks omitted).  After removal, "[t]he district court then c[an] set aside [a] default judgment under Fed.R.Civ.P. 55(c) and 60(b)."  Jenkins v. MTGLQ Investors, 218 F.App'x at 724 (affirming the federal district court's application of rule 60(b) to set aside the state court's dismissal of a case based on improper service of process).

After removal, a federal court treats the state court orders as its own.  The United States Court of Appeals for the Fifth Circuit stated in Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir. 1984):

> Once a state court action is removed, it is governed by federal, rather than state, procedure. . . .  Federal Rule of Civil Procedure 55(c) allows relief from a default judgment in accordance with the terms of Rule 60(b), which states that a judgment may be set aside for ". . . mistake, inadvertence, surprise, or excusable neglect . . . ."

742 F.2d 890, 895.  See In re Savers Fed. Sav. & Loan Ass'n, 872 F.2d 963, 966 (11th Cir. 1989)("In the instant case, in which removal and notice of appeal were timely, we will take the case as we find it on removal and treat everything that occurred in the state court as if it had taken place in the district court below.").  As the Ninth Circuit has recognized, "a federal court must take a case as it finds it on removal, requiring a district court to treat a prior state judgment 'as though it had been validly rendered in [a] federal proceeding.'"  Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d 1206, 1212 (9th Cir. 1984)(quoting Butner v. Neustadter, 324 F.2d 783, 786 (9th Cir. 1963)).  At least two circuits have recognized that, where there has been a final judgment entered in the state court before removal, the proper action for the federal district court is to enter the state court's judgment as its own.  See Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d at 1210; FDIC v. Kahlil Zoom-In Markets, 978 F.2d 183, 184 (5th Cir. 1992).  See also Nieto v. Univ. of N.M., No. 08-0465, 2010 WL 4929013, at *11 (D.N.M. Oct. 31, 2010)(Browning, J.)("The Court finds that rule 60(b)(6) governs Nieto's Motion, because the Court treats the state district court's order as its own, and more

than one year has passed since the decision was entered."); Stockton v. Can. Life Assurance Co., No. 08-3016, 2008 WL 3925159, at *4 (C.D. Ill. Aug. 20, 2008)("After the state court's jurisdiction ends, the federal court must treat any judgment entered before the state court received notice [of removal] as if it [the federal court] had entered the judgment").

## THE ROOKER-FELDMAN DOCTRINE

Although it has a complex history and was for a long time shrouded in mystery, the Rooker-Feldman doctrine embodies the simple principle that federal district courts have no jurisdiction to sit as courts of appeal to state courts.  "The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006)(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  See Erlandson v. Northglenn Mun. Court, 528 F.3d 785, 788-89 (10th Cir. 2008); Mann v. Boatright, 477 F.3d 1140, 1146 (10th Cir. 2007).  The elements, thus, are: (i) a state-court loser; (ii) who is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) which judgment was rendered before the commencement of the federal proceeding.  See Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir.2006)("The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.")(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284). The Tenth Circuit has made clear that "the Rooker-Feldman doctrine is confined to cases brought after the state proceedings have ended."  Mann v. Boatright, 477 F.3d at 1146 (internal quotation marks omitted). See Guttman v. Khalsa, 446 F.3d at 1031-32 (holding that

Rooker-Feldman doctrine applies only where state court appeals process has run its full course).

The Tenth Circuit has addressed the Rooker-Feldman doctrine in the context of a motion to set aside a default judgment in federal court at least three times.  In Jenkins v. MTGLQ Investors, the Tenth Circuit  stated that the plaintiff's argument evidenced a "fundamental misunderstanding of both Rooker-Feldman and removal."  218 F.App'x at 723.  The Tenth Circuit stated:

> Under 28 U.S.C. § 1257(a), "final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari."  "The Rooker-Feldman doctrine arose out of this statute, and provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments."  Proper removal does not constitute an appeal, de facto or otherwise, of the state court proceedings but a continuation of them.  Thus, the Rooker-Feldman doctrine has no application to a properly removed case where, as here, there is no attack on a separate and final state-court judgment.

Jenkins v. MTGLQ Investors, 218 F.App'x at 723-24 (citations omitted).  In Sheriff v. Accelerated Receivables Solutions, 283 F.App'x 602 (10th Cir. 2008)(unpublished), a default judgment was entered against the federal court plaintiff in state court, and the federal court plaintiff then filed a federal court action seeking money damages for alleged constitutional violations arising out of the state court debt collection default judgment.  See 283 F.App'x at 604-05.  The Tenth Circuit determined that the "default judgment entered by the district court could not be considered 'final,'" because, as a result of the absence of a rule 60(b) motion, the "clock for filing an appeal of the judgment had not even started running prior to the filing of the federal suit."  Sheriff v. Accelerated Receivables Solutions, 283 F.App'x at 606-07.  In Edwards v. Bank of New York, 63 F.App'x 445 (10th Cir. 2003)(unpublished), the Tenth Circuit held that Rooker-Feldman applied where the federal-court plaintiff filed a "Motion for a Stay on the Property, a Petition for Review and Writ of Subpoena, and a Notice of Removal" in federal court, after he had appealed the state court's entry of default judgment to the Supreme Court of New Mexico.  63 F.App'x at 445-46.  There, the Tenth

Circuit found that the federal-court plaintiff was seeking review of a final state court decision and affirmed the district court's finding that it lacked subject-matter jurisdiction.  See Edwards v. Bank of N.Y., 63 F.App'x at 445-46.

## LAW REGARDING RULE 60(b)

A Court may set aside a default judgment under rule 60(b) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 55(c); Advanced Optics Elec., Inc. v. Robins, 769 F.Supp.2d 1285, 1310 (D.N.M. 2010)(Browning, J.).  Rule 60(b) governs motions for relief from a judgment or orders in federal court.  The Tenth Court imposes a rigorous standard for rule 60(b)(6).

1.    **State Rule 60(B).**

N.M.R.A. 1-060(B) largely mirrors rule 60(b) of the Federal Rules of Civil Procedure.  It provides that, on a motion and upon just terms, a court may relieve a party from a final judgment, order, or proceeding for:

> (1)    mistake, inadvertence, surprise or excusable neglect;
>
> (2)    newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 1-059;
>
> (3)    fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4)    the judgment is void;
>
> (5)    the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
>
> (6)    any other reason justifying relief from the operation of the judgment.

N.M.R.A. 1-060(B).  A motion under rule 1-060(B) "shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one-year after the judgment, order or proceeding was

-41-

2:11-cv-00523-JB-CG   Document 41   Filed 03/08/12   Page 42 of 63

entered or taken." N.M.R.A. 1-060(B).  Under New Mexico state procedure rule 1-060(B), a court

has discretion to reopen a matter and relieve a party from a judgment.  See Mora v. Hunick, 100

N.M. 466, 468, 672 P.2d 295, 297 (Ct. App. 1983).  "[C]ourts are authorized by Rule 60(b) to

relieve a party from any final judgment for good cause shown."  Mora v. Hunick, 100 N.M. at 468,

672 P.2d at 297.  In Mora v. Hunick, the plaintiff's complaint was dismissed sua sponte for lack of

prosecution more than two years after it was filed, was reinstated, was dismissed again sua sponte

on the same ground more than one year later, and was again reinstated, and the court still had

jurisdiction to hear the case on its merits.  See 100 N.M. at 469, 672 P.2d at 298.

New Mexico law provides that final judgments and decrees "entered by district courts . . .

shall remain under the control of such courts for a period of thirty days after the entry thereof, and

for such further time as may be necessary to . . . dispose of any motion which may have been filed

within such period."  N.M.S.A. 1978, § 39-1-1.  That statute further provides that "the provisions

of this section shall not be construed to amend, change, alter or repeal the provisions of Sections

4227 or 4230, Code 1915."  N.M.S.A. 1978, § 39-1-1.  The Court of Appeals of New Mexico has

held:

> One could bring a Rule 1-060(B) motion (1) without the grant of jurisdiction to the
> district court in Section 39-1-1 and (2) long after Section 39-1-1 would have required
> a ruling on the motion; so the time limit for ruling on Section 39-1-1 motions [does]
> not govern Rule 1-060(B) motions.

Archuleta v. N.M. State Police, 108 N.M. 543, 547, 775 P.2d 745, 749 (Ct. App. 1989).  In another

case, the Court of Appeals of New Mexico stated that "Section 39-1-1 . . . has never been viewed

as depriving the district court of jurisdiction to consider and resolve a subsequent timely motion

under Rule 60(B)."  A.C. v. C.B., 113 N.M. at 584, 829 P.2d at 663 (citing Wooley v. Wicker, 75

N.M. 241, 244-45, 403 P.2d 685, 687-88 (1965)).  See also Gordon v. Gordon, 149 N.M. 783, 788,

255 P.3d 361, 367 (Ct. App. 2011)(holding that, after the expiration of the time limits under § 39-1-1, "Rule 1-060(B) N.M.R.A. [is] the only authority for the district court to modify the decree").

### 2.    **Federal Rule 60(b).**

Turning to federal law, rule 60(b) allows a court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), where "the judgment is void," Fed. R. Civ. P. 60(b)(4), or for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice.  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444.

Motions to reconsider based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment.").  The pendency of an appeal does not toll the time requirement for pursuing a motion that rule 60(c)(1) governs.  See Griffin v. Reid, 259 F.App'x 121, 123 (10th Cir. 2007)(unpublished); Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of

Rule 60(b).”). The Tenth Circuit uses three factors in determining whether a court may set aside a judgment in accordance with rule 60(b)(1): (i) whether the moving party’s culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party setting aside the judgment will prejudice the non-moving party.  See United States v. Timbers Preserve, 999 F.2d 452, 454 (10th Cir. 1993).

Motions to reconsider because the judgment is void must be brought within a “reasonable time.”  Fed. R. Civ. P. 60(c).  Relief under rule 60(b)(4) is “not a discretionary matter; it is mandatory.”  Marcus Food Co. v. DiPanfilo, No. 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011).  Under both New Mexico and federal law, where a plaintiff has failed to properly serve a defendant, the court lacks personal jurisdiction, and a judgment is void.  See Hukill v. Okla. Native Am. Domestic Violence Coal., 542 F.3d at 801 (“Because the service in the case, attempted under Oklahoma law, did not substantially comply with the law of that state, the district court did not have personal jurisdiction. . . . Therefore, the district court erred in denying defendants’ motion to set aside the default judgment under Fed. R. Civ. P. 60(b)(4).”); Edmonds v. Martinez, 146 N.M. 753, 756, 215 P.3d 62, 65 (Ct. App. 2009)(“New Mexico has long recognized that ‘a court lacks jurisdiction to pronounce judgment over a defendant of respondent unless that defendant or respondent has been properly summoned to court.’  A court has no power to bind a party to judgment when that party has not been properly served”).

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for “any other reason that justifies relief.”  Fed. R. Civ. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).  “Courts have found few narrowly-defined situations that clearly present ‘other reasons justifying relief.’”  11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, § 2864 (2d

-44-

ed. 2011).  In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court reasoned that, to avoid abrogating the one year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."  507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)).  The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.  If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control.  Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. 193, 197-200 (1950); Klapprott v. United States, 335 U.S. 601, 613-614 (1949)).  See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment.").  In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance.  See 545 U.S. at 537.

## ANALYSIS

The Defendants removed this case while post-judgment motions could still be filed.  Accordingly, there is a case or controversy for the Court to resolve, and the Court has subject-matter jurisdiction over the case.  Because United Services, BCBS Kansas City, and BCBS Association were not properly served, the default judgment entered against them is void.

I.     **BECAUSE THE COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS CASE, THE COURT WILL DENY THE MOTION TO REMAND.**

In the responses that Sawyer filed to the motions to set aside the Default Judgment, Sawyer asserted that "no case or controversy exists as a result of the lapse of time in which Defendant could have brought any post-judgment motion or appeal . . . Defendant's motion must be denied." United Services Response at 3.  See BCBSKC Response at 3.  She asserts that, because no appeal or post-judgment motion could be made, the Default Judgment was final, and "no case or controversy exists over which this Court can exercise jurisdiction."  Sawyer Memo at 4.  She further asserts that, in Nieto v. University of New Mexico, the Court determined that removal following a state court dismiss was appropriate, because a case or controversy still existed, but that the Court added the caveat that removal is appropriate "so long as there is time to insist on reconsideration or appellate review."  Sawyer Memo at 4.  Additionally, Sawyer asserts that the Court should remand this matter, because "the 'authority to review final judgments of a state court in judicial proceedings' was withheld from federal district courts, and 'such review may be had only in the United States Supreme Court.'"  Sawyer Memo at 3 (citing Van Sickle v. Holloway, 791 F.2d at 1436; Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. at 482).  She argues that "no jurisdiction lies for any challenge 'to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'"  Sawyer Memo at 3 (citing Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. at 486).[16]

---

[16]Because this motion to remand was filed on August 4, 2011-- approximately fifty-one days after the notice of removal was filed on June 14, 2011 -- the only removal issue Sawyer can assert is a lack of subject-matter jurisdiction.  See 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

A.      THERE IS A CASE OR CONTROVERSY.

The Court held, in Nieto v. University of New Mexico, that it had jurisdiction over a case which the state court had dismissed before the defendants removed the case and "so long as there is time to insist on reconsideration or appellate review, a case continues to be an action brought to redress a private right."  727 F.Supp.2d at 1192.  The Court held that it did not believe that a "state-court judgment could extinguish a case-or-controversy, at least while non-extraordinary appellate remedies are still available," because "[s]o long as there exist issues to be resolved at some level of judicial review, there exists a case or controversy and a basis for federal jurisdiction."  Nieto v. Univ. of N.M., 727 F.Supp.2d at 1193.

New Mexico provides thirty days in which to appeal from the entry of judgment. See N.M.S.A. 1978, § 39-1-1.  Because the Default Judgment was entered on May 11, 2011, the last day to appeal Judge Tatum's decision was June 10, 2011.  The Notice of Appeal was filed on June 14, 2011; accordingly, the Defendants had no appellate rights at the time they removed.  The state district court could, however, still entertain a motion for reconsideration under rule 1-060, because "Section 39-1-1 . . . has never been viewed as depriving the district court of jurisdiction to consider and resolve a subsequent timely motion under Rule 60(B)."  A.C. v. C.B., 113 N.M. at 584, 829 P.2d at 663.  Removal was within the one-year limitations period for rule 60(B)(1) -- mistake inadvertence, surprise or excusable neglect, (2) -- newly discovered evidence, and (3) -- fraud, and likely within the "reasonable time" requirement for (4) -- a void judgment, (5) -- a satisfied judgment, and (6) -- any other reason justifying relief.  N.M.R.A. 1-060(B).  Because the state court had jurisdiction to reconsider its entry of default judgment, its judgment did not terminate the case or controversy, and the Defendants properly removed the case.  As the Court held in Nieto v. University of New Mexico, "it is standard to consider the case still to be a case if the parties are

contemplating post-trial motions, requests for fees, or appeals." 727 F.Supp.2d at 1191.  The Court finds that this matter, like <u>Nieto v. University of New Mexico</u>, fits the legal and common-sense understanding of a case and controversy.

Moreover, the Court's holding is bolstered by the many federal courts, including the Tenth Circuit, which have held that a district court may reconsider or set aside a state default judgment when the case is removed to federal court.  In <u>Jenkins v. MTGLQ Investors</u>, the Tenth Circuit, without discussing whether a case or controversy existed, affirmed a district court order setting aside a district court default judgment several months after judgment was entered in state court.  <u>See</u> 218 F.App'x at 724, 726.  The Tenth Circuit found that "removal based on diversity of citizenship was appropriate."  <u>Jenkins v. MTGLQ Investors</u>, 218 F.App'x at 723.  It also took notice of the several courts which have "implicitly approved of removal even after a state court has entered a default judgment."  <u>Jenkins v. MTGLQ Investors</u>, 218 F.App'x at 724 (citing <u>Murray v. Ford Motor Co.</u>, 770 F.2d at 463, 465; <u>Butner v. Neustadter</u>, 324 F.2d 783, 785-87 (9th Cir. 1963); <u>Munsey v. Testworth Labs.</u>, 227 F.2d at 903; <u>Cady v. Associated Colonies</u>, 119 F. 420, 423 (C.C.N.D. Cal. 1902)).  In <u>Price v. Wyeth Holdings Corp.</u>, 505 F.3d 624 (7th Cir. 2007), the United States Court of Appeals for the Seventh Circuit affirmed, without discussing whether a case or controversy existed, a district court decision setting aside a default judgment in a case removed approximately four years after it was entered.[17]  <u>See</u> 505 F.3d at 626.[18]  There, the Seventh Circuit affirmed, even

_____

[17]Indiana state courts, where <u>Price v. Wyeth Holdings Corp</u>. was originally filed, has a rule of civil procedure similar to N.M.S.A. 1978, § 39-1-1, which provides a thirty-day window for an appeal.  <u>See</u> Ind. R. App. Proc. 9(A)(1).

[18]Several other cases exercised jurisdiction when: (i) a default judgment is entered in state court; (ii) sometime later the defendants, who have not been properly served or who do not have sufficient contacts with the state, remove; and (iii) the defendants move to set aside the state-court default judgment.  <u>See</u> <u>Johnson v. Arden</u>, 614 F.3d 785, 787 (8th Cir. 2010); <u>Azalam v. U.S. Postal</u>

though the time for appeal appears to have run, and it granted a motion to set aside the default judgment pursuant to rule 60(b).  See Price v. Wyeth Holdings Corp., 505 F.3d at 631.  In Aiken v. Waffle-House, Inc., 509 F.Supp.2d 541 (D.S.C. 2007), the United States District Court for South Carolina held that the case was properly removed to federal court, despite the default judgment that the state court entered against the defendant, because "at the time the case was removed by Waffle House, the state court still had the authority to modify, amend, or vacate the default judgment," and "the time for filing post-judgment motions had not run at the time the case was removed to this court."  509 F.Supp.2d at 545.  Similarly, Judge Tatum still had jurisdiction to hear post-judgment motions to reconsider under rule 1-060(B), and to modify, amend, or vacate the default judgment.

The Court declines to adopt Sawyer's argument that no case or controversy exists, because the Defendants' "time to file either an appeal or post-judgment motion for relief expired on June 10, 2011."  Sawyer Memo at 4.  The Court finds that, even though the time for appeal had expired, the Defendants could still file a post-judgment motion pursuant to rule 1-060(B).  See A.C. v. C.B., 113 N.M. at 584, 829 P.2d at 663.  As the Court has previously held, when parties are contemplating post-judgment motions "it is standard to consider the case to still be a case."  Nieto v. Univ. of N.M., 727 F.Supp.2d at 1191.  There is still a controversy here -- whether the case will proceed, whether the default judgment is void, and, if the case proceeds, what the Court will do procedurally and/or on the merits.

### B.   THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY.

"The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction

---

Serv., No. 06-15390, 2007 WL 956929, at *1 (E.D. Mich. Mar. 28, 2007); Hawes v. Cart Prods., Inc., 386 F.Supp.2d 681, 683 (D.S.C. 2005); Savariego v. Melman, No. 3:01-CV-1951-M, 2001 WL 1543857, at *1 (N.D. Tex. Dec. 3, 2001); Teder v. Nat'l Con-Serv, Inc., No. 00-380, 2000 WL 1135117, at *1 (S.D. Ala. July 20, 2000).

over cases brought by 'state court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006).  A state court judgment is final when: (i) it is an effective determination of litigation that is not an interlocutory or intermediate judgment; and (ii) it is subject to no further review or correction in any state tribunal.[19]  See Mkt. St. Ry. Co. v. R.R. Comm'n of State of Cal., 324 U.S. 548, 551 (1945).  "Proper removal does not constitute an appeal, de facto or otherwise, of the state court proceeding, but a continuation of them."  Jenkins v. MTGLQ Investors, 218 F.App'x at 723 (citing Freeman v. Bee Mach. Co., 319 U.S. 448, 452 (1943)).  The Eleventh Circuit has similarly held that the Rooker-Feldman doctrine does not apply when the removing defendant invokes the district court's original jurisdiction over the case and that a federal district court "may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal."  Ware v. Fleetboston Fin. Corp., 180 F.App'x 59, 64 (11th Cir. 2006).

Here, the Defendants removed the case following a default judgment entered in state court. Sawyer contends that the Court should remand because federal district courts have no authority to review final state court judgments.  See Sawyer Memo at 3.  First, the Defendants invoke the Court's original jurisdiction, under 28 U.S.C. § 1331, rather than appellate jurisdiction.  Freeman v. Bee Mach. Co., 319 U.S. at 452 ("The jurisdiction exercised on removal is original not appellate.").  Second, the Defendants do not attack a separate and final state-court judgment, but ask that the Court set aside a default judgment entered in this same case.  A removed action is not separate from

---

[19]These finality requirements dovetail nicely with the Court's decision to find a case-or-controversy where the state-court judgment can be modified by the state trial court or appealed to the state appellate court, and suggest that the Court's conclusion that such non-final cases can be removed.  When final, appeal is through the state system to the Supreme Court of the United States; otherwise, there is still a case or controversy for the purpose of exercising federal jurisdiction.

the state action; rather, it is a continuation of it.  See Jenkins v. MTGLQ Investors, 218 F.App'x at

724.  Furthermore, where post-judgment motions are pending or could be filed, the Rooker-Feldman

doctrine is inapplicable, because the judgment is not "the final word of a final court."  Mkt. St. Ry.

Co. v. R.R. Comm'n of State of Cal., 324 U.S. at 551.  Accord Motley v. Option One Mtg. Corp.,

620 F.Supp.2d 1297, 1302 (M.D. Ala. 2009).  The Defendants still had time, under rule 1-060(B),

to file a post-judgment motion to declare the judgment void in state court or to seek to set aside the

default judgment.  See N.M.R.A. 1-060(B).  See also A.C. v. C.B., 113 N.M. at 584, 829 P.2d at

663.[20]  Because the state court judgment could be reconsidered or modified, and because the

Defendants have not commenced a new action in federal court, the Rooker-Feldman doctrine does

not apply or require that the Court remand the case.

       In their Notice of Removal, BCBS Kansas City and BCBS Association invoked the Court's

original jurisdiction, and Sawyer has waived any challenges to removal other than those to the

Court's subject-matter jurisdiction.  See 28 U.S.C. § 1447(c).  Sawyer raises no challenges to the

Court's subject-matter jurisdiction beyond asserting that there is no case or controversy, and that the

Rooker-Feldman doctrine bars the Court from hearing an appeal of a state-court judgment.

Accordingly, the Court will deny the Sawyer Motion, which asks that the Court remand the case to

state court, because there is a case or controversy and because the Rooker-Feldman doctrine does

---

[20]Additionally, in Jenkins-Dyer v. Exxon Mobil Corp., No. 08-2095, 2008 WL 2560717 (D.
Kan June 26, 2008)(Vratil, J.), the United States District Court for the District of Kansas held that,
even though the time for filing an appeal an order had expired, the removed action was not final and,
therefore, was not subject to Rooker-Feldman.  See 2008 WL 2560717, at *3.  The Honorable Judge
Kathryn H. Vratil, United States District Judge for the District of Kansas, relying on the Tenth
Circuit's decision Jenkins v. MTGLQ Investors, found that the plaintiff had not identified any
separate and final state court judgment which the defendant attempted to collaterally attack through
the removal of the motion to enforce the state court entry and overruled the motion to remand.
See Jenkins-Dyer v. Exxon Mobil Corp., 2008 WL 2560717, at *3.

not apply.

## II. THE COURT WILL GRANT THE MOTIONS TO SET ASIDE THE DEFAULT JUDGMENT, BECAUSE UNITED SERVICES, BCBS KANSAS CITY, AND BCBS ASSOCIATION WERE NOT PROPERLY SERVED.

United Services, BCBS Kansas City, and BCBS Association argue that they were improperly served, lacked notice of the case, and never received a copy of the summons or Complaint. See United Services Motion at 1; BCBSKC Memo at 1; BCBS Association Memo at 1. They assert that, because they were never properly served, the Court should set aside the Default Judgment under rule 60(b)(1) or 60(b)(4). See United Services Motion at 1; BCBSKC Memo at 1; BCBS Association Memo at 1. Sawyer argues that the Defendants were properly served when she served the Superintendent of Insurance. See United Services Response at 4; BCBSKC Response at 4; Tr. at 31:13-15 (Court, Collins).

### A. SAWYER DID NOT PROPERLY SERVE UNITED SERVICES.

United Services is an authorized insurer, see United Services Motion at 2, and, as such, is subject to service under N.M.S.A. 1978, § 59A-5-32. Under N.M.S.A. 1978, § 59A-5-31, an authorized insurer is required to "appoint the superintendent and his successors in office as its attorney to receive service of legal process issues against the insurer in this state." N.M.S.A. 1978, § 59A-5-31(A). Section 59A-5-32 provides:

    A.    Service of process against an insurer for whom the superintendent is attorney shall be made by delivering to and leaving with the superintendent . . . two (2) copies of the process together with the fee therefor specified in Section 101 (fee schedule) of the Insurance Code, taxable as costs in the action.

    B.    Upon such service the superintendent shall forthwith forward by prepaid registered or certified mail return receipt requested one of the copies of process showing date and time of service on the superintendent, to the person currently designated by the insurer to receive the copy as provided in Section 98 (appointment of superintendent as process agent) of this article. Service of process on the insurer shall be complete upon receipt, or, in the event of

> refusal to accept, the date of such refusal.
>
> . . . .
>
> D.     The superintendent shall keep record of the day and time of service of legal process under this section.

N.M.S.A. 1978, § 59A-5-32 (emphasis added).  No New Mexico court, be it state or federal, has analyzed § 59A-5-32.  At the hearing, Sawyer argued that, once she served the Superintendent, the Defendants were served under state law.  See Tr. at 31:13-15 (Court, Collins).  Sawyer asserted that there are similar statutes in the corporate context, and that, in Silva v. Crombie & Co., the Supreme Court of New Mexico had ruled that service of process on a corporate agent, in that case the New Mexico Secretary of State, was sufficient, even if that agent failed to forward service and the corporation received no actual notice.  See Tr. at 31:19-32:12 (Collins).  Sawyer contended that the Supreme Court of New Mexico held that the negligence of the Secretary of State is not chargeable to the plaintiff and that the negligence of the Superintendent should not be charged to her.  See Tr. at 32:13-18 (Collins).

The Superintendent admits that he did not serve USAA Insurance or United Services. See Franchini Letter at 1.  The Superintendent had no record of receiving the summons and Complaint.  See Franchini Letter at 1.  United Services asserts that an exhaustive search of its files demonstrated that it had not received the summons or Complaint.  See United Services Motion at 3.  The only evidence of service is the certified mail receipt indicating that a Paul Lucero signed for service at the Superintendent's office on June 7, 2010.  See USAA Receipt at 19.

Ordinarily, the plain language of the phrase "complete upon receipt" would indicate that the New Mexico Legislature does not consider an authorized insurer served with process until that company receives a copy of the summons and Complaint.  United Services argued that, because it

did not receive actual service, it was not properly served, see Tr. at 46:16-23 (Schultz), while Sawyer asks the Court to look to the Supreme Court of New Mexico's holdings in the corporate context, see Tr. at 31:19-32:12 (Collins).  N.M.S.A. 1978, §38-1-5 is the relevant New Mexico statute for service of process on a corporation authorized to transact business in New Mexico.  It provides that, if there is no corporate agent available, a plaintiff may serve the New Mexico Secretary of State, and explicitly states that "service shall be as effective to all intents and purposes as if made upon an officer, director or the registered agent of the corporation."  N.M.S.A. 1978, § 38-1-5(A).  The differences in language between § 38-1-5(A), which provides that service shall be effective as if on the designated agent, and § 59A-5-32(B), which provides that service is complete upon receipt, counsels that the New Mexico Legislature intended service on the state agent to mean different things in the corporate versus insurance context.  "Contrasting language in similar statutes may show that the legislature intended different standards of compliance."  2A N. Singer, Sutherland and Statutory Construction § 57:6 (7th ed. 2011).  The case which Sawyer cites, Silva v. Crombie & Co., supports the Court's view of these statutes and supports the Court's interpretation of §59A-5-32 as providing that service is only complete upon receipt of process by the authorized insurer.  In Silva v. Crombie & Co., the Supreme Court of New Mexico held that the particular terms of a prior enactment of § 38-1-5(A) were determinative, and that service upon the Secretary of State was effective for all intents and purposes as if on the corporate agent, despite the failure to forward service.  See 39 N.M. at 240, 241, 44 P.2d at 719, 720.  The Supreme Court of New Mexico went on to say, however, that, if "the Legislature had desired to make the service effective only when the secretary of state had notified such corporation, it could have so stated in plain language," and that such language "is discernable in the case of insurance companies."  Silva v. Crombie & Co., 39 N.M. at 241, 44 P.2d at 720.    It also commented that the "Legislature chose its terms with

discrimination" and made the terms of service "plain."  Silva v. Crombie & Co., 39 N.M. at 241, 44
P.2d at 720.

Accordingly, under § 59A-5-32's plain language, service is "complete upon receipt."  The
New Mexico Legislature chose the terms it used in each of the statutes -- those applicable to insurers
and those applicable to corporations -- "with discrimination," and those differences have meaning.
Silva v. Crombie & Co., 39 N.M. at 241, 44 P.2d at 720.  Accord. 2A N. Singer, Sutherland and
Statutory Construction § 57:6.   There is no evidence that United Services received service,
see Affidavit of Linda Allen ¶¶ 4-5, at 2 (executed June 13, 2011), filed June 14, 2011 (Doc. 1-11);
in fact, the Superintendent of Insurance admits that it never served the process delivered for USAA
Insurance.  See Franchini Letter at 1.  Because United Services did not receive service, service of
process was never completed.  See N.M.S.A. 1978, § 59A-5-32(B).

Because service was not effectively made, the Court must then determine whether this failure
voids the Default Judgment.  "[A] default judgment in a civil case is void if there is no personal
jurisdiction over the defendant."   United States v. Bigford, 365 F.3d 859, 865 (10th Cir.
2004)(emphasis omitted).  "[S]ervice of process provides the mechanism by which a court having
venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the
party served."  Okla. Radio Assoc. v. FDIC, 969 F.2d 940, 943 (10th Cir. 1992).  New Mexico
follows the same principles.  New Mexico courts recognize that "a court lacks jurisdiction to
pronounce judgment over a defendant or respondent unless that defendant or respondent has been
properly summoned to court."  Trujillo v. Goodwin, 138 N.M. 48, 49, 116 P.3d 839, 840 (Ct. App.
2005).  A New Mexico court has no power to bind a party to a judgment when that party has not
been properly served with process.  See Jueng v. N.M. Dep't of Labor, 121 N.M. 237, 240, 910 P.2d
313, 316 (1996).  Because United Services had not been properly served when the Default Judgment

was entered against it, the Default Judgment is void.  Additionally, the United Services Motion was made within a reasonable time, as required under rule 60(b)(4), because it was made within approximately 60 days of the Default Judgment and within 29 days of the Notice of Removal.[21] United Services acted promptly after learning of the Default Judgment and the case's removal to federal court.  Accordingly, the Court will grant the United Services Motion and set aside the Default Judgment as it pertains to it.[22]

### B.     SAWYER DID NOT PROPERLY SERVE BCBS KANSAS CITY.

BCBS Kansas City is an unauthorized insurer, see BCBSKC Motion at 2, and, as such, is subject to service under N.M.S.A. 1978, § 59A-15-7.  That statute provides:

---

[21]Although the date on which United Services learned of the Default Judgment is not clear, United Services represented that it learned of the Default Judgment when one of the Blue Cross Blue Shield Defendants contacted it.  See Tr. at 4:16-5:10 (Court, Schultz).  BCBS Kansas City asserts that it first received a courtesy copy of the Complaint on May 18, 2011.  See Notice of Removal ¶ 17, at 7.  Accordingly, United Services filed the United Services Motion within approximately 57 days of learning of the Default Judgment.

[22]United Services also argues that the Default Judgment was not against it, because it is not USAA Insurance.  See United Services Motion at 2.  Because the Court finds that United Services was never served, that United Services was incorrectly named is not determinative.  Had United Services received a copy of the summons and Complaint, however, the name USAA Insurance would likely be sufficient to convey notice to United Services.  See Graves v. Gen. Ins. Corp., 412 F.2d 583, 585 (10th Cir. 1969)("Generally, in the cases cited[,] the plaintiff actually sued and served the correct party . . . , but mistakenly used the wrong name of the defendant.  The defendant, in these cases, of course had notice of the suit . . . .").  "Misnomer mistakes need not be treated as grounds for dismissal if intelligent persons can understand what was intended, or if the party intended to be served knows, or has good reason to know, that he has been proceeded against."  62B Am. Jur. 2d Process § 84 (2nd ed.).  The initials of United Services Automobile Association are "USAA."  Furthermore, the Court notes that United Services' website refers to "USAA Auto Insurance," has "USAA" in its logo, and the website is www.usaa.com.  See https://www.usaa.com/inet/ent_logon/Logon (last visited March 3, 2012).  These principles and facts also support the Court's finding that United Services has the standing to move to set aside the judgment against "USAA Insurance Company," because, even though USAA Insurance does not exist as an entity, proper service of process might permit Sawyer to enforce the Default Judgment against United Services.

A.     Service of process in such an action or proceeding shall be made by delivering and leaving with the superintendent . . . two (2) copies thereof and by payment to the superintendent of the fee prescribed by Section 101 (fee schedule) of the Insurance Code.  Service upon the superintendent as such attorney shall be service upon the insurer.

B.     The Superintendent shall forthwith forward by certified mail one of the copies of such process, or such notice, order, pleading or process in proceedings before the superintendent to the defendant in such court proceeding . . . at its principal place of business last known to the superintendent and shall keep a record of all processes so served on him which shall show the day and hour of service.  Such service is sufficient if:

   (1)     notice of such service and a copy of the court process or the notice, order, pleading or process in such administrative proceeding are sent within ten (10) days thereafter by certified mail (with return receipt requested) by the plaintiff or the plaintiff's attorney in the court proceeding . . . to the defendant in the court proceeding . . ., and

   (2)     the defendant's receipt or receipts issued by the post office with which the letter is certified, showing the name of the sender of the letter and the name and address of the person or insurer to whom the letter is addressed, and an affidavit of the plaintiff or the plaintiff's attorney in court proceeding, or of the superintendent in administrative proceeding, showing compliance therewith are filed with the clerk of the court in which such action, suit or proceeding is pending . . . on or before the date the defendant in the court or administrative proceeding is required to appear or respond thereto, or within such further time as the court or superintendent may allow.

C.     No plaintiff shall be entitled to judgment or determination by default in any court or administrative proceeding in which court process or notice, order, pleading or process in proceedings before the superintendent is served under this section until the expiration of forty-five (45) days from the date of filing the affidavit of compliance.

   . . . .

N.M.S.A. 1978, § 59A-15-7.  No New Mexico court, be it state or federal, has analyzed § 59A-15-7.

In the Franchini Letter, the Superintendent admitted that: "As for the other companies they are not

doing business in New Mexico and we could not serve them."  Franchini Letter at 1.  Furthermore,

after a diligent search, BCBS Kansas City asserts that it has found no evidence that it received the

summons and Complaint.  See BCBSKC Motion at 3.  Although the clerk of the court for the Ninth

Judicial District Court certified, on February 24, 2011, that "it also appears from the return made

by Chris Quinn that process was served on Defendant Blue Cross Blue Shield of Kansas City by

mailing the same to Blue Cross Blue Shield of Kansas City, c/o Superintendent of Insurance for the

Dept. of Ins. For the State of NM," State Certificate at 11-13, neither Sawyer nor her attorney filed

an affidavit showing compliance with N.M.S.A. 1978, § 59A-15-7.[23]

> N.M.S.A. 1978, § 59A-15-6 provides that any
>
> act of transacting an insurance business in  this state by an unauthorized insurer is
> equivalent to and shall constitute an irrevocable appointment by such insurer,
> binding upon him, his executor or administrator, or successor in interest if a
> corporation, of the superintendent . . . to be the true and lawful attorney of the insurer
> upon whom may be served all lawful process in any court by the superintendent or
> by the state or others.

 N.M.S.A. 1978, § 59A-15-6.  N.M.S.A. 1978, § 59A-15-7 establishes that service "upon the

superintendent as such attorney shall be service upon the insurer in subsection (A), but, in subsection

(B), conditions the sufficiency of such service on complying with subsections (B)(1) and (2).  See

N.M.S.A. 1978, § 59A-15-7(A)-(B).  Sawyer submitted, to the state court, only the certified mail

return receipts for service upon the Superintendent, see USAA Receipt at 19; BCBS Association

Receipt at 22; BCBS Kansas City Receipt at 25, and the State Certificate refers to those receipts as

evidence of service, see State Certificate at 11-13.  There is no evidence that Sawyer ever sent a

copy of the summons and Complaint to BCBS Kansas City, and, in her BCBSKC Response, Sawyer

does not assert that she sent a second copy to BCBS Kansas City or discuss the implications of

N.M.S.A. 1978, § 59A-15-7.  See BCBSKC Response at 4.  Sawyer also did not argue her

---

[23]No affidavit was filed in the state court.  See Sawyer v. USAA Ins., D-911-CV-
2010000101, Register of Actions Activity, available at http://www2.nmcourts.gov/caselookup/app.

compliance with N.M.S.A. 1978, § 59A-15-7 at the February 9, 2012 hearing.  Because service on

the Superintendent of Insurance is sufficient only "if" a plaintiff sends notice to the defendant, gets

a certified mail receipt from the United States Post Office confirming that notice was sent, and files

an affidavit indicating compliance with N.M.S.A. 1978, § 59A-15-7, and because there is no

evidence that Sawyer met any of those requirements, BCBS Kansas City was not properly served.[24]

Sawyer again compared service to BCBS Kansas City to service on a corporation and

pointed the Court to <u>Silva v. Crombie & Co.</u>  <u>See</u> Tr. at 32:13-18 (Collins).  Service on an

unauthorized corporation is more similar to <u>Abarca v. Henry L. Hanson, Inc.</u> than to <u>Silva v.</u>

<u>Crombie & Co.</u>.  In <u>Silva v. Crombie & Co.</u>, the corporation had previously designated an agent, but

declined to replace the agent when the agent left the state, and, when served under N.M.S.A. 1978,

§ 38-1-5, the New Mexico Secretary of State failed to forward service of process.  <u>See</u> 39 N.M. at

241, 44 P.2d at 720.  The Supreme Court of New Mexico found that such service was sufficient.

<u>See</u> <u>Silva v. Crombie & Co.</u>, 39 N.M. at 241, 44 P.2d at 720.  In <u>Abarca v. Henry L. Hanson, Inc.</u>,

the corporation had never appointed an agent in the state, and, when served under N.M.S.A. 1978,

§ 38-1-6, the New Mexico Secretary of State failed to forward service of process.  <u>See</u> 106 N.M. at

26, 738 P.2d 520.  There, the Supreme Court of New Mexico held that the plaintiff "ought not to

profit from the secretary of state's failure" and that, "when notice is a person's due, process which

---

[24]Furthermore, the Default Judgment against BSBC Kansas City would not be proper under
N.M.S.A. 1978, § 59A-15-7(C), because Sawyer never filed an affidavit. N.M.S.A. 1978, § 59A-15-
7(C) provides that no default judgment shall be entered against an unauthorized insurer "until the
expiration of forty-five (45) days from the date of filing the affidavit of compliance."  Although
Sawyer filed the State Certificate, which indicated that the Superintendent had been served, she
never filed an affidavit stating that she complied with N.M.S.A. 1978, § 59A-15-7(C). Accordingly,
the Default Judgment was not properly entered, and, if the Court has jurisdiction over the Default
Judgment, as the Court has concluded, it has the power to make that determination and, on that
basis, set aside the Default Judgment against BCBS Kansas City.

is a mere gesture is not due process." Abarca v. Henry L. Hanson, Inc., 106 N.M. at 26, 738 P.2d 520.  BCBS Kansas City is more similar to the corporation in Abarca v. Henry L. Hanson, because BCBS Kansas City has never appointed an agent, is not authorized to transact business in New Mexico, and has never given its information to the Superintendent of Insurance, and had the Superintendent of Insurance appointed as its agent under statute.  Accordingly, the Court believes that the Supreme Court of New Mexico would find, as it did in Abarca v. Henry L. Hanson, that BCBS Kansas City was not properly served.

Because service was improper, the Court must then determine whether this failure voids the Default Judgment.  "[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant." United States v. Bigford, 365 F.3d at 865 (emphasis omitted).  New Mexico follows the same principle.  New Mexico courts recognize that "a court lacks jurisdiction to pronounce judgment over a defendant or respondent unless that defendant or respondent has been properly summoned to court." Trujillo v. Goodwin, 138 N.M. at 49, 116 P.3d at 840.  A New Mexico court has no power to bind a party to a judgment when that party has not been properly served with process. See Jueng v. N.M. Dep't of Labor, 121 N.M. at 240, 910 P.2d at 316.  Because BCBS Kansas City had not been properly served when the Default Judgment was entered against it, the Default Judgment is void.  Additionally, the BCBSKC Motion was made within a reasonable time, as required under rule 60(b)(4), because it was made within approximately 60 days of the Default Judgment.  Accordingly, the Court will grant the BCBSKC Motion and set aside the Default Judgment as it pertains to BCBS Kansas City.

## C.    SAWYER DID NOT PROPERLY SERVE BCBS ASSOCIATION.

BCBS Association "is not an insurer, does not transact insurance anywhere, and is not a party to the insuring agreement between BCBSKC and Nueterra."  BCBSA Memo at 2 (citing Affidavit

of Mary Kay Dudley ¶¶ 2-3, at 1-2 (executed June 13, 2011), filed June 14, 2011 (Doc. 1-9)("Dudley Aff.")).  BCBS Association is a not-for-profit corporation that does not share any corporate relationship with BCBS Kansas City or with BCBS New Mexico.  See BCBSA Motion ¶ 2, at 1.  The Superintendent of Insurance admitted that it did not serve BCBS Association. See Franchini Letter at 1.  Sawyer did not introduce any evidence to contravene the Affidavit of Mary Kay Dudley, BCBS Association's counsel, which stated that BCBS is not an insurer.  See Dudley Aff. ¶¶ 2-3, at 1-2.  Dudley states that, after a diligent search, she was unable to find any evidence that BCBS Association had been served with process of the state case.  See Dudley Aff. ¶ 4, at 2.

Sawyer did not file a written response to the BCBSA Motion and, at the hearing, did not address the argument that BCBS Association is not an insurer.  Pursuant to D.N.M.LR-Civ. 7.1, the "failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b).  Accordingly, Sawyer has consented to the BCBSA Motion.  Furthermore, because BCBS Association is not an authorized or unauthorized insurer, service upon the Superintendent of Insurance was improper.  See N.M.S.A. 1978, § 59A-5-32, § 59A-15-7.  Even if BCBS Association was an insurer, the Court has already established that Sawyer's service either under the authorized insurer statute, N.M.S.A. 1978, § 59A-5-32, or the unauthorized insurer statute, N.M.S.A. 1978, § 59A-15-7, was not properly completed.  As the Court discussed in reference to United Services and BCBS Kansas City, when a plaintiff fails to properly serve a defendant, a default judgment is void and should be set aside under rule 60(b)(4). See Hukill v. Okla. Native Am. Domestic Violence Coal., 542 F.3d at 801; Edmonds v. Martinez, 146 N.M. at 756, 215 P.3d at 65.  Accordingly, the Court will grant the BCBSA Motion and void the Default Judgment as to BCBS Association.

**IT IS ORDERED** that:  (i) the United Services Automobile Association's Motion to Set Aside Default Judgment, filed July 13, 2011 (Doc. 10), is granted; (ii) the Motion to Set Aside Default Judgment Against Defendants Blue Cross and Blue Shield of Kansas City, filed July 13, 2011 (Doc. 11), is granted; (iii) the Motion to Set Aside Default Judgment Against Defendant Blue Cross and Blue Shield Association, filed July 14, 2011 (Doc. 14), is granted; and (iv) the Motion to Remand, filed August 4, 2011 (Doc. 28), is denied.  The Court has subject-matter jurisdiction over this case, because it was properly removed before the state court entered a final judgment. Because Defendants United Services Automobile Association, Blue Cross Blue Shield Kansas City, and Blue Cross Blue Shield Association were not properly served, the default judgment entered against them in the Ninth Judicial District Court, Roosevelt County, State of New Mexico is void and the Court will set it aside.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniel R. Lindsey
Clovis, New Mexico

    *Attorney for the Plaintiff*

Andrew G. Schultz
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant United Services Automobile Association*

Jeff L. Martin
Randy S. Bartell
Montgomery & Andrews, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants Blue Cross Blue Shield Association, Blue Cross Blue Shield of*

*Kansas City, and Blue Cross Blue Shield of New Mexico*

Teresa L. Shulda
Foulston Siefkin, LLP
Wichita, Kansas

*Attorneys for Defendant Nueterra Healthcare*