## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CONSTANCE A. SAWYER,

     Plaintiff,

     v.                                 No. CIV 11-0523 JB/CG

USAA INSURANCE COMPANY,
BLUE CROSS BLUE SHIELD OF KANSAS
CITY, NUETERRA HEALTHCARE, and
COBRAGUARD,

     Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Blue Cross and Blue Shield of

Kansas City's Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice, filed April

19, 2012 (Doc. 56)("MTD"). The Court held a hearing on May 31, 2012. The primary issues are:

(i) whether the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461

(2012)("ERISA") preempts some or all of Plaintiff Constance A. Sawyer's state-law claims; and (ii)

whether Plaintiff Constance Sawyer's federal cause of action under ERISA has accrued because she

has exhausted her administrative remedies. Sawyer filed an affidavit outside of the pleadings on this

matter, and the Court has thus converted the motion to dismiss into a motion for summary judgment.

No genuine issue of material fact exists whether ERISA preempts Sawyer's state-law claims.

ERISA completely preempts Sawyer's state-law claims and thus they may be converted into federal

causes of action; and the Court will thus not dismiss her state-law claims on that basis. On the other

hand, no genuine issue of material fact exists whether Sawyer exhausted the administrative remedies

required under her benefits plan: Sawyer has not alleged that she has exhausted the administrative

procedures that her benefits plan requires. Further, she does not dispute Defendant Blue Cross and

Blue Shield of Kansas City's allegation that she has not filed a written request for review of the denial of her coverage, as her benefits plan requires.  Because Sawyer has not exhausted her administrative remedies, nor shown that she has met an exception to the exhaustion requirement, the Court will dismiss without prejudice her claim for relief that is framed under ERISA and her state-law claims that ERISA completely preempts.  Sawyer must exhaust her administrative remedies before bringing a civil suit to recover her benefits under her healthcare plan from Blue Cross and Blue Shield of Kansas City.

## FACTUAL BACKGROUND[1]

Defendant Nueterra Healthcare, LLC, employs Sawyer from April 9, 2007, through May 27, 2007.  See First Amended Complaint and Jury Demand ¶ 8, at 2, filed Mar. 30, 2012 (Doc. 51)("FAC")(setting forth fact); Reply of Defendant Blue Cross and Blue Shield of Kansas City in Support of its Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice ¶ 1, at 1, filed Sept. 26, 2012 (Doc. 81)("Reply")(not contesting fact).  Sawyer had a health insurance policy through Nueterra Healthcare.  See FAC ¶¶ 4, 8, at 2 (setting forth fact); Sawyer Aff. ¶ 2, at 1 (setting forth fact); Reply ¶ 1 at 1 (not contesting fact).  Nueterra Healthcare gave Sawyer a copy of a policy

_____

[1]Sawyer submitted the Affidavit of Constance Sawyer, executed June 29, 2012, separately and outside of the pleadings on July 6, 2012 (Doc. 69)("Sawyer Aff.").  A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  To convert a motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed R. Civ. P. 12(d).  If the party opposing the motion to dismiss submits a matter outside of the pleadings, that party is considered to be on notice and have an adequate opportunity to present material pertinent to the motion.  See Burnham v. Humphrey Hospitality Reit Trust, Inc.,  403 F.3d 709, 713-714 (10th Cir. 2005)(noting that a plaintiff is not prejudiced when a defendant's motion to dismiss is converted to a motion for summary judgment, when the plaintiff's "opposition to the motion to dismiss first introduced affidavits containing facts beyond those in the complaint.").  The Court has thus converted this matter into a summary judgment; Sawyer will not be prejudiced by the conversion, because Sawyer, in opposition to the motion to dismiss, submitted the affidavit outside of the pleadings.

document ("Policy") from Defendant Blue Cross and Blue Shield of Kansas City ("BCBSKC"),

before June 7, 2007.  See First Requests for Admissions to Plaintiff from Defendant Blue Cross Blue

Shield of Kansas City, ¶ 1, at 2, filed Sept. 26, 2012 (Doc. 81-1)("Requests for Admissions")(setting

forth fact).[2]  Sawyer's health care policy was subject to the provisions of ERISA.  See FAC ¶ 8, at

2 (setting forth fact); Reply ¶ 3, at 2 (not contesting fact).

On or about May 31, 2007, Sawyer's employment with Nueterra Healthcare ended.  See FAC

¶ 9, at 2 (setting forth fact); Reply ¶ 4, at 2 (not contesting fact).  Sawyer elected to continue her

coverage pursuant to the terms of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C.

§ 1161 (2012)("COBRA").  See FAC ¶ 9, at 3.  Sawyer paid the premiums to continue her coverage

to the COBRA administrator, CobraGuard.  See FAC ¶ 9, at 3 (setting forth fact); Sawyer Aff. ¶ 2,

at 1 (setting forth fact); Reply ¶ 4, at 2 (not contesting fact).  BCBSKC did not receive notification

from CobraGuard that Sawyer elected to continue her coverage.  See  FAC ¶ 45, at 7 (setting forth

fact); Reply ¶ 4, at 2 (not contesting fact).

On June 7, 2007, Sawyer was involved in an automobile accident, and she suffered severe

and significant injuries.  See FAC ¶ 11, at 3 (setting forth fact); Reply ¶¶ 1-12, at 1-4 (not contesting

fact) .  Sawyer was a passenger in a car that was driven negligently by Joel Widener, who was under

the influence of alcohol, and his driving caused the vehicle to roll.  See FAC ¶ 11, at 3 (setting forth

---

[2]Sawyer did not respond to BCBSKC's Requests for Admissions within thirty-days of being served, and thus the requested admissions are deemed admitted by Sawyer pursuant to Fed. R. Civ. P. 36(a)(3).  See Certificate of Service at 1, filed July 31, 2012 (Doc. 70); Fed. R. Civ. P. 36(a)(3)("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter . . . .").  Matters deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3) "are conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b); Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005).  Moreover, Sawyer's Affidavit does not dispute that she was in possession of the Policy at the time of her accident, on June 7, 2007.  See Sawyer Aff. ¶¶ 2 ,16 at 1, 3 (Sawyer Aff.).

fact); Reply ¶¶ 1-12, at 1-4 (not contesting fact).  Sawyer received a full settlement from Widener at the maximum liability amount possible, but the amount she recovered was not enough to cover her medical bills.  See FAC ¶ 12, at 3 (setting forth fact); Reply ¶¶ 1-12, at 1-4 (not contesting fact).  Sawyer had, as of the filing of her FAC, outstanding medical bills.  See FAC ¶ 12, at 3 (setting forth fact); Reply ¶¶ 1-12, at 1-4 (not contesting fact).

The Defendants in this action -- United Services Automobile Association ("USAA"), BCBSKC, Nueterra Healthcare, and Cobraguard -- have refused to make payments required by their policies with the Defendants.  See FAC ¶ 13, at 3 (setting forth fact); Reply ¶ 5, at 2 (not contesting fact).  Sawyer telephone BCBSKC once between June 7 and 30, 2007, and she inquired why BCBSKC was not covering her medical bills.  See Requests for Admission ¶ 6, at 3 (setting forth fact).[3]  Sawyer was informed that BCBSKC could not find her policy number, but that BCBSKC would call her back after this issue had been resolved.  See Sawyer Aff. ¶ 4, at 1 (setting forth fact); Reply ¶ 5, at 2 (not contesting fact).  Sawyer was informed by a representative that BCBSKC had

---

[3]BCBSKC asserts that Sawyer made only one call to BCBSKC regarding her coverage, and that call was made between June 7 and June 30, 2007.  See Reply ¶ 5, at 2; Requests for Admissions ¶ 2, at 2; id. ¶ 6, at 3 (setting forth fact).  Sawyer did not file a response to BCBSKC's Requests for Admissions, and these requests are thus deemed admitted by Sawyer.  See Reply at 5; Fed. R. Civ. P. 36(a)(3)("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter . . . .").  Matters deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3) "are conclusively established unless the court on motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. 36(b); Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005).  Sawyer's Affidavit states that she made "at least" three phone calls to BCBSKC, Sawyer Aff. ¶¶ 2, 14, 20, at 1-3, and Sawyer does not limit the time frame for these telephone calls to June 7-30, 2007, see Sawyer Aff. ¶¶ 2, 7, 14, 20, at 1-3.  Because Sawyer failed to respond to BCBSKC's Requests for Admissions, and she has not moved the Court for permission to amend her answers, BCBSKC's requested admissions are deemed admitted, notwithstanding any possible contradiction between the admissions and Sawyer's previous filings.

terminated her coverage on June 1, 2007.  See Requests for Admissions ¶ 4, at 2 (setting forth fact).[4]

Sawyer never received a follow-up telephone call from BCBSKC, or any other correspondence,

except for medical bills.  See Sawyer Aff. ¶¶ 4-7, at 1-2 (setting forth fact); Reply ¶ 5, at 2 (not

contesting fact).  Sawyer would have received better after-care for her injuries from her accident if

her insurance had not been in question at the time.  See Sawyer Aff. ¶¶ 9-12, at 2 (setting forth fact);

Reply ¶¶ 1-12, at 1-4 (not contesting fact).

   The Policy that Sawyer possesses from BCBSKC states that "[f]or Employee Welfare

Benefit Plans subject to [ERISA] You must file a first level Grievance before You bring a civil

action under ERISA Section 502(a)."   BCBSKC's group health plan information ¶ 3, at 4, filed

April 19, 2012 (Doc. 56-1)("the Policy"); Sawyer Aff. ¶¶ 1-21, at 1-3 (not contesting fact).  The

Policy also states, in Section L, that a member has a right to bring a civil action under ERISA

Section 502(a) to recover benefits under the Policy, "provided You have exhausted Your first level

Grievance rights."  Policy ¶ 3, at 4 (setting forth fact); Sawyer Aff. ¶¶ 1-21, at 1-3 (not contesting

fact).  A first level Grievance is initiated when a member submits a Member Grievance form within

365 days of receiving an Explanation of Benefits from BCBSKC.  See Policy ¶ 4, at 4-5 (setting

---

[4]Sawyer did not file a response to BCBSKC's Requests for Admissions, and pursuant to Fed.
R. Civ. P. 36(a)(3), these requests are deemed admitted by Sawyer.  See Reply at 5; Fed. R. Civ. P.
36(a)(3)("A matter is admitted unless, within 30 days after being served, the party to whom the
request is directed serves on the requesting party a written answer or objection addressed to the
matter . . . .").  Matters deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3) "are conclusively
established unless the court on motion permits withdrawal or amendment of the admission."  Fed.
R. Civ. P. 36(b); Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005).  Sawyer's Affidavit
states that the "only response I ever received in regard to my inquiry was that they were having
problems finding my policy number and that they would straighten it out and call me back."  Sawyer
Aff. ¶ 4, at 1.   While Sawyer's statement that she the "only response I ever received" is
contradictory BCBSKC's assertion that Sawyer was informed that her coverage was terminated, the
Court must accept BCBSKC's requested admission, because Sawyer has not moved the Court to
amend or withdrawal the admissions.  Sawyer Aff. ¶ 4, at 1.  See Request for Admission ¶ 4, at 2.

forth fact); Sawyer Aff. ¶¶ 1-21, at 1-3 (not contesting fact). A Grievance is defined in Section L, paragraph 1 of the Policy, as "[a] written complaint submitted by or on behalf of a Covered Person to Our Appeals Department regarding: . . . (b) Post-Service Claims payment, handling or reimbursement for health care services." Policy ¶ 1, at 3 (setting forth fact). See Sawyer Aff. ¶ 16, at 3 (not contesting fact).

Sawyer did not call or write to BCBSKC to request a review of BCBSKC's denial of the claims processed on Sawyer's behalf, in the amounts of $11,603.34, $29,050.92, and $16,162.27 as described in the Explanations of Benefits sent to Sawyer on or about December 10, 2007. See Requests for Admission ¶¶ 7-9, at 3-4 (setting forth fact).[5] The Explanations of Benefits sent to Sawyer contain a section titled, "Notice to Member," which provides:

> If you disagree with our decision you may request a review of the claim. You must send a written request within 180 days of receiving this notice. You should explain why you disagree and you may provide additional information about the claim . . . . If your group health plan is subject to ERISA . . . , you may file a lawsuit under

---

[5]BCBSKC puts forth the fact that Sawyer did not "call or write" to BCBSKC regarding the three denials of her claims that Sawyer received in December 10, 2007. Request for Admission ¶¶ 7-9, at 3-4. Sawyer's Affidavit does not set forth that she called regarding the denials of her claims as described specifically in the Explanation of Benefits sent to her on or about December 10, 2007. See Sawyer Aff. ¶¶ 1-21, at 1-3. Sawyer states, however, that she made "at least three" telephone calls regarding "why I was not being covered after the accident." Sawyer Aff. ¶ 2, at 1. These telephone calls are not limited to a particular time frame. See supra n. 4.

Sawyer did not file a response to BCBSKC's Requests for Admissions, and pursuant to Fed. R. Civ. P. 36(a)(3), these requests are deemed admitted by Sawyer. See Reply at 5; Fed. R. Civ. P. 36(a)(3)("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter . . . ."). Matters deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3) "are conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b); Raiser v. Utah County, 409 F.3d 1243, 1246 (10th Cir. 2005). Because Sawyer has not requested the Court leave to amend or withdraw the admissions, the Court must deem admitted that Sawyer did not call or write to BCBSKC to request review of the Explanations of Benefits mailed to her. Moreover, Sawyer's Affidavit does not allege that she wrote to BCBSKC, nor that she called specifically regarding the denials of her coverage communicated to her in the Explanations of Benefits. Sawyer Aff. ¶¶ 2, 14, at 1, 2.

Section 502(a) of ERISA, if you have used all of the appeal rights required by your plan.  Please see your certificate or summary plan description or call the phone number on the EOB for detailed information about the appeal process.

Explanation of Benefits at 8, 10, 12, 14, 16, filed Apr. 19, 2012 (Doc. 56-1)(setting forth fact); Sawyer Aff. ¶¶ 1-21, at 1-3 (not contesting fact and not contesting authenticity of the Explanations of Benefits).

Sawyer exhausted every effort of which she was aware at the time, but she did not exhaust the administrative remedies described in Section L of the Policy.  <u>See</u> Sawyer Aff. ¶ 18, at 3 (setting forth that Sawyer exhausted "every effort known to [her] at the time" and not contesting that she did not exhaust the procedures outlined in Section L of the Plan).  <u>See also</u> Requests for Admissions ¶ 13, at 5 (setting forth she did not exhaust the procedures outlined in Section L of the Plan).[6] CobraGuard did not attempt to initiate a first level Grievance on Sawyer's behalf.  <u>See</u> Requests for Admissions ¶ 14, at 5 (setting forth fact).[7]

---

[6]BCBSKC does not specifically controvert Sawyer's assertion that she exhausted every effort of which she was aware of at the time in seeking reimbursement under the policy she believed she had with BCBSKC.  <u>See</u> Reply ¶¶ 9-12, at 3-4.  Rather, BCBSKC contends that Sawyer did not follow the provisions outlined in the Policy for requesting review of a denial of coverage.  <u>See</u> Reply ¶¶ 9-12, at 3-4.  Because these assertions do not specifically controvert Sawyer's statement that she "exhausted every effort known to" her at the time, the Court will deem Sawyer's statement of her knowledge of the efforts she was required to take as undisputed.  Sawyer Aff. ¶ 18, at 3; D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically converted.").

[7]Sawyer did not file a response to BCBSKC's Requests for Admissions, and pursuant to Fed. R. Civ. P. 36(a)(3), these requests are deemed admitted by Sawyer.  <u>See</u> Reply at 5; Fed. R. Civ. P. 36(a)(3)("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter . . . .").  Matters deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3) "are conclusively established unless the court permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b); <u>Raiser v. Utah County</u>, 409 F.3d 1243, 1246 (10th Cir. 2005).  The Court thus deems as admitted that CobraGuard did not initiate a first level Grievance on Sawyer's behalf.  Moreover, Sawyer's Affidavit does not contest that a Grievance was not initiated on her behalf.  <u>See</u> Sawyer Aff. ¶¶ 1-21, at 1-3.

-7-

## PROCEDURAL BACKGROUND

Sawyer lawsuit "arises out of, among other things, a dispute between an insured and an insurer subject tot the provisions of ERISA," and she thus alleges that this Court has jurisdiction under 28 U.S.C. § 1331 (2012), federal question jurisdiction. FAC ¶¶ 1, 3, 6, at 1-2. See 28 U.S.C. § 1331. A substantial portion of the events that gave rise to Sawyer's complaint occurred in the State of New Mexico, and Sawyer thus asserts that the venue of this Court is proper under 28 U.S.C. § 1391(a)(2).

Sawyer alleges that the Defendants have breached their duties as an insurance companies "by failing to act in good faith in the performance of the contract in that they have failed to give equal consideration to the interest of its policy holder." FAC ¶ 14, at 3.[8] Sawyer argues that there is implied in every insurance policy or contract a duty on the part of the Defendants "to deal fairly with the policy holder," which Sawyer alleges the Defendants have breached through their dealings with her. FAC ¶ 15, at 3. Sawyer alleges that the Defendants' breach has proximately caused her damages, in an amount to be determined at trial. See FAC ¶ 15, at 3.

Sawyer has made five claims for relief in this case. Her first claim, for breach of contract, is alleged against USAA and BCBSKC. See FAC ¶¶ 16-22, at 4. Sawyer argues that she had a valid and effective contract of insurance with USAA and BCBSKC, and that contract required BCBSKC to cover Sawyer's medical bills. See FAC ¶¶ 18, 20, at 4. Sawyer asserts that BCBSKC and USAA

---

[8]Sawyer's Complaint in state court alleged claims against USAA, BCBSKC, Nueterra Healthcare, Blue Cross Blue Shield of New Mexico and Blue Cross Blue Shield Association. See Verified Complaint for Damages and Breach of Contract, Insurance Bad Faith, Violation of the Insurance Code, and Breach of Fiduciary Duties, filed in the Ninth Judicial District, New Mexico State Court May 28, 2010, filed in federal court June 14, 2011, Doc. 1-1. Blue Cross Blue Shield of New Mexico and Blue Cross Blue Shield Association were terminated pursuant to Sawyer's FAC, which did not allege claims against these parties, on March 30, 2012.

have refused to pay her medical bills, and are thus in breach of their contracts of insurance with Sawyer.  See FAC ¶¶ 20-21, at 4.  Sawyer argues that USAA and BCBSKC's breach has directly and proximately caused her damages that she is entitled to recover.  See FAC ¶ 22, at 4.

Sawyer's second claim for relief is for insurance bad faith and is alleged against all of the Defendants.  See FAC ¶¶ 23-31, at 4-5.  Sawyer argues that she is insured under policies that USAA and BCBSKC issued, and that she has performed all of the duties and obligations which the terms of the policies required, including paying premiums that BCBSKC, CobraGuard, and Nueterra Healthcare accepted.  See FAC ¶¶ 24-27, at 4-5.  Sawyer asserts that her loss is compensable under the terms of her insurance policy.  See FAC ¶ 28, at 5.  Sawyer argues that the Defendants, breached their duty to act in good faith and deal fairly with Sawyer and did so in a manor that manifested willful and reckless disregard for her rights.  See FAC ¶ 30, at 5.  Sawyer asserts that this breach of good faith has directly and proximately caused her damages, which she is entitled to recover.  See FAC ¶ 31, at 5.

Sawyer's third claim against USAA and BCBSKC is a violation of the New Mexico Unfair Insurance Practices Act, N.M.S.A. 1978, § 59A-16-20 (1984).  See FAC ¶¶ 32-35, at 5-6.  Sawyer asserts that she had valid insurance policies with both USAA and BCBSKC, and that they violated the Unfair Insurance Practices Act by: (i) "[f]ailing to acknowledge and act reasonably and promptly" on Sawyer's communications with BCBSKC and USAA regarding their policies; (ii) "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing" of Sawyer's claims under their policies; (iii) "[f]ailing to attempt in good faith to effectuate prompt, fair, and equitable settlements" of her claims, for which Sawyer asserts their liability is reasonably clear; and (iv) "[c]ompelling Sawyer to institute litigation to recover amounts due under the policies."  FAC ¶ 34, at 5.  Sawyer asserts that she has directly and proximately suffered damages

from these actions, and that she is entitled to recover against the USAA and BCBSKC.  See FAC ¶ 35, at 6.

Sawyer's fourth claim, breach of fiduciary duty, is alleged against BCBSKC, Nueterra Healthcare, and CobraGuard.[9]  See FAC ¶ 36-42, at 6-7.  Sawyer alleges that these defendants "played [a role] in administering the plan that provided insurance, including making coverage and benefit decisions," and thus acted as fiduciaries under ERISA.  FAC ¶ 37, at 6.  Sawyer asserts that ERISA prohibits BCBSKC from "deny[ing] coverage for services unless the applicable health care plan expressly includes an exclusion specifying that such services are not covered benefits."  FAC ¶ 38, at 6.  Sawyer asserts that BCBSKC must comply with the terms and conditions of its health care plan under ERISA.  See FAC ¶ 39, at 7.  Sawyer contends that, under ERISA, BCBSKC, Nueterra Healthcare, and CobraGuard, assume the role of "Plan Administrator," as defined in ERISA, such that they will "interpret and apply plan terms, make all coverage decisions, and provide for payment to members and/or their providers."  FAC ¶ 40, at 7.  Sawyer alleges that these Defendants breached their fiduciary duties by "improperly excluding benefits owed to []Sawyer on an incorrect determination that they were not owed and by failing to fulfill [its] obligations of good faith, due care, and loyalty, without limitation."  FAC ¶ 41, at 7.  Sawyer alleges that she is entitled to recover damages directly and proximately caused by this breach.  See FAC ¶ 42, at 7.

In Sawyer's last claim for relief, she contends that she elected to continue her insurance

---

[9]Sawyer's FAC states that her claim for breach of fiduciary duty is alleged against "Defendants BHBC." FAC ¶¶ 37-41, at 6-7. No defendant is party to this matter whose name could be distilled into the acronym BHBC. The Court is required to take Sawyer's allegations as true for the purposes of this Order, and thus the Court will assume that Sawyer has intended to allege a claim against BCBSKC, as that acronym seems similar to the acronym used in her FAC for Blue Cross and Blue Shield of Kansas City. See Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)( "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

coverage under COBRA and paid her premiums to CobraGuard.  See FAC ¶ 43, at 7.  BCBSKC

asserts, however, that it never received her insurance premiums from CobraGuard.  See FAC ¶ 44,

at 7.  Sawyer asserts that Nueterra Healthcare and CobraGuard represented to her that she was

entitled to COBRA continuation of coverage, that she had properly elected continuation of coverage,

and that she had made the premium payments necessary for her coverage to continue.  See FAC ¶

46, at 7-8.  Sawyer states that she "reasonably relied upon the conduct and representation of

Nueterra Healthcare and CobraGuard as to the status of her continuation coverage."  FAC ¶ 47, at

8.

        BCBSKC moves to dismiss Sawyer's FAC with prejudice.  See MTD at 1.  BCBSKC argues

that the Court should dismiss Sawyer's FAC with prejudice because ERISA preempts Sawyer's

state-law claims, and Sawyer "fails to state a claim under ERISA because she has failed to plead

exhaustion of her administrative remedies" as described in her former employer's group health plan.

MTD at 1.  BCBSKC argues that Sawyer must exhaust the available administrative remedies set

forth in Section L of BCBSKC's Healthcare Plan.  See Defendant Blue Cross and Blue Shield of

Kansas City's Memorandum of Legal Points and Authorities in Support of its Motion to Dismiss

Plaintiff's First Amended Complaint with Prejudice at 2, filed Apr. 19, 2012 (Doc. 57)("BCBSKC

Memo. in Support").

        BCBSKC first asserts that the Supreme Court of the United States precedent dictates that

ERISA preempts Sawyer's state-law claims.  See BCBSKC Memo. in Support at 3 (citing Aetna

Health, Inc., v. Davila, 542 U.S. 200, 210 (2004)).  BCBSKC argues that the Supreme Court has

ruled that ERISA preempts a plaintiff's claims which arise from the denial of benefits under an

ERISA-regulated employee benefit plan.  See BCBSKC Memo. in Support at 4.  BCBSKC thus

argues that all of Sawyer's state-law claims are preempted, because they arise from the alleged

denial of her claimed benefits under an ERISA-regulated benefit plan.  See BCBSKC Memo. in Support at 4.

BCBSKC also argues that Sawyer's FAC contains "conclusory allegations and formulaic recitation of the elements of her causes of action for breach of contract, . . . insurance bad faith, . . . violation of the New Mexico Unfair Insurance Practices Act, . . . and breach of a fiduciary duty. . . ."  BCBSKC Memo. in Support at 4.  BCBSKC thus argues that Sawyer has not put forth "well-pled" facts, and her facts should on that basis not be assumed to be true.  BCBSKC Memo. in Support at 4.

Additionally, BCBSKC asserts that the United States Court of Appeals for the Tenth Circuit "has consistently held that the failure to exhaust administrative remedies precludes an employee from bringing a benefits recovery action in federal district court."  BCBSKC Memo. in Support at 4 (citing Lane v. Sunoco, Inc., (R&M), 260 F. App'x 64 (10th Cir. 2008); Evans v. Kirke-Van Orsdel, 122 F. App'x 947 (10th Cir. 2004); Woods v. Halliburton, Co., 49 F. App'x 827 (10th Cir. 2002); Lloyd v. General Motors Hourly Rate Employees Pension Plan, 1 F. App'x 789 (10th Cir. 2001)).  BCBSKC asserts that federal ERISA common law requires a plaintiff to exhaust her "ERISA-required internal remedies before being allowed to sue."  BCBSKC Memo. in Support at 5 (citing Getting v. Fortis Benefits Ins. Co., Inc., 108 F. Supp. 2d 1200 (D. Kan. 2000)).  BCBSKC thus asserts that the Tenth Circuit recognizes the federal common law that requires exhaustion of administrative remedies before bringing a civil suit under ERISA.  See BCBSKC Memo. in Support at 5 (citing Whitehead v. Okla. Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir. 1999); Held v. Mfrs. Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir. 1990)).

BCBSKC argues that, because Sawyer does not even allege that she "ever filed a grievance as required by Section L of the Policy," the Court should dismiss her FAC.  BCBSKC Memo. in

Support at 6.  BCBSKC points to Section L, ¶ 7, and the "Notice to Member," in the Policy,  for this

assertion.  BCBSKC Memo. in Support at 6.  BCBSKC points to authorities from other circuits in

support of its contention that the Court should dismiss Sawyer's FAC because she has not exhausted

her administrative remedies.  See BCBSKC Memo. in Support at 6.  BCBSKC asserts that failing

to plead the exhaustion of administrative remedies takes Sawyer's FAC out of the arena of

complaints that state a claim upon which relief can be granted, and thus dismissal of her FAC is

proper under rule 12(b)(6) of the Federal Rules of Civil Procedure.  See BCBSKC Memo. in Support

at 7.  BCBSKC argues that the Court must, therefore, dismiss Sawyer's claims with prejudice.  See

BCBSKC Memo. in Support at 7.

The Court held a hearing on May 31, 2012.  See Transcript of Hearing, taken May 31, 2012

("Tr.").[10]  Sawyer began by stating that she agrees that ERISA preempts the state-law claims.  See

Tr. at 3:20-24 (Lindsey).  Sawyer stated that she has no problem with the Court granting BCBSKC's

MTD with respect to the preemption allegation.  See Tr. at 3:25-4:2 (Lindsey).

Sawyer asserted, however, that she is not certain that she has failed to exhaust her

administrative remedies, as BCBSKC argues.  See Tr. at 4:9-18 (Lindsey).  Sawyer argued that the

FAC adequately responds to that argument, and that she has exhausted her administrative remedies,

pointing to her FAC setting forth that Sawyer applied to have her medical bills paid by her insurers.

See Tr. at 4:9-5:11 (Lindsey).  The Court inquired whether counsel would like to confer with Sawyer

and see if Sawyer is certain she has exhausted her administrative remedies, and counsel stated it

would like to so do.  See Tr. at 5:12-24 (Court, Lindsey).

BCBSKC then argued, regarding the exhaustion allegation, that Sawyer has not attached any

---

[10]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

records which indicate that she followed up on her denials of coverage with an appeal or by contesting the denial, the Policy requires.  <u>See</u> Tr. at 6:18-7:1 (Bartell).  BCBSKC asserted that Sawyer was advised in each of her denials to be in contact with BCBSKC.  <u>See</u> Tr. at 7:3-18 (Bartell).  BCBSKC contended that Sawyer was put on notice about the administrative remedies for review that were available, but the records show that she made no attempt to exercise her right to review.  <u>See</u> Tr. at 7:19-21 (Bartell).  BCBSKC asserted that an administrative review would not be futile, but rather that BCBSKC would have conducted an investigation if Sawyer had alerted it that her claims were denied while she had paid premiums.  <u>See</u> Tr. at 7:24-8:13 (Court, Bartell).  BCBSKC asserted that it could have found the lapse in communication between itself and CobraGuard led to the denials of Sawyer's coverage, the problem could have thus been addressed at an earlier time, and her coverage would have been paid, if Sawyer had requested a review of the denials of her coverage.  <u>See</u> Tr. at 8:13-25 (Bartell).

The Court inquired what recourse Sawyer would have if the Court granted BCBSKC's MTD, and BCBSKC responded that Sawyer could seek recourse from BCBSKC.  <u>See</u> Tr. at 9:1-5 (Court, Bartell).  The Court inquired whether statutes of limitations with the Policy would preclude Sawyer from receiving coverage, and BCBSKC admitted that it is now too late for Sawyer to file a new claim.  <u>See</u> Tr. at 9:9-13 (Court, Bartell).  BCBSKC stated that five years have elapsed from the time Sawyer filed her claim.  <u>See</u> Tr. at 9:14-20 (Bartell).

The Court then inquired whether exhaustion must be pled for a plaintiff's claims to survive a motion to dismiss.  <u>See</u> Tr. at 9:21-10:5 (Court).  BCBSKC responded that exhaustion must be pled, because exhaustion is a prerequisite to bringing a lawsuit such as Sawyer's.  <u>See</u> Tr. at 10:6-8 (Bartell).  BCBSKC pointed to Section L, ¶ 3 of the Policy, which outlines procedures required for filing a grievance, and stated that the Policy requires a grievance to be filed before bringing a civil

ERISA claim against the insurer.  See Tr. at 10:10-19 (Bartell).  BCBSKC contended that the Policy, as a contract, requires members to comply with certain administrative procedures before bringing civil lawsuits.  See Tr. at 10:20-25 (Bartell).  BCBSKC also contended that Sawyer has been on notice of BCBSKC's defense of a failure to exhaust from earlier pleadings in this litigation, yet she has not brought forth any facts which show she has exhausted her administrative remedies.  See Tr. at 11:1-13 (Bartell).

BCBSKC agreed with Sawyer that the bar to survive a motion to dismiss is not very high, and that neither Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), nor Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009),  require a plaintiff to provide "in-depth exhaustive pleading of every last fact known to [Sawyer]."  Tr. at 11:14-21 (Bartell).  BCBSKC asserted that Sawyer's FAC would be sufficient had it merely stated that she telephoned, or sent a letter or an electronic mail transmission to follow up with the denial of her requests for coverage.  See Tr. at 11:21-25 (Bartell).  BCBSKC asserted that it was unaware of Sawyer's dissatisfaction with her coverage, because she had not followed the required procedures to voice a grievance.  See Tr. at 12:4-11 (Bartell).  BCBSKC asserted that, had Sawyer voiced a grievance, her requests for coverage would have been handled much earlier.  See Tr. at 12:13-19 (Bartell).

The Court encouraged counsel for Sawyer to talk to Sawyer as soon as possible and determine if she has anything more to add on the motion.  See Tr. at 13:16-18 (Court).  The Court requested counsel for Sawyer to inform the Court if the motion was unopposed, based on counsel's conversations with Sawyer.  See Tr. at 13:18-23 (Lindsey).

After the hearing, Sawyer filed an affidavit with the Court.  See Notice of Filing of Affidavit of Constance Sawyer at 1, filed July 6, 2012 (Doc. 69).  Sawyer asserts in her affidavit that she has proof of the premiums she paid to CobraGuard to extend her insurance coverage.  See Sawyer Aff.

¶ 2, at 1.  Sawyer also asserts that after she telephoned BCBSKC at least three times to inquire why her medical bills from her accident were not covered, BCBSKC never followed-through on its promise to communicate with her regarding her coverage.  See Sawyer Aff. ¶¶ 2, 4, 5-7, at 1-2. Additionally, Sawyer re-states that her disputed insurance coverage caused her to not receive the care she needed after her accident.  See Sawyer Aff. ¶¶ 8-12, at 2.  Sawyer admits that she has a copy of the Policy.  See Sawyer Aff. ¶ 18, at 3.

BCBSKC filed a reply in support of its motion to dismiss Sawyer's FAC with prejudice on September 26, 2012.  See Reply at 1.  In its Reply, BCBSKC argues first that Sawyer's failure to respond to its MTD constitutes a consent to granting the motion, pursuant to D.N.M.LR.-Civ. 7.1(b). See Reply at 4.  BCBSKC further argues that the Court should grant BCBSKC's MTD because Sawyer did not respond to the MTD after the Court allowed Sawyer more time to file a response at the status conference on May 31, 2012.  See Reply at 4.  BCBSKC asserts that the Sawyer Affidavit cannot constitute a reply, even if read in the "most expansive interpretation possible," because the affidavit does not cite any authority in support of an argument, as D.N.M.LR-Civ. 7.3(a) requires. Reply at 4.  BCBSKC argues that the Court should thus grant the MTD, pursuant to D.N.M.LR-Civ. 7.1(b), which provides that a court should grant a motion if the opposing party fails to respond within the proscribed time limit.  See Reply at 4. Additionally, BCBSKC asserts that the Court should deem BCBSKC's Requests for Admissions as "admitted" by Sawyer, because Sawyer did not serve a response or objection within thirty days, rule 36(a)(3) of the Federal Rules of Civil Procedure requires.  Reply at 5.  BCBSKC served its Requests for Admissions on July 31, 2012. See Certificate of Service at 1.  Sawyer has not yet responded to the Requests for Admissions, and BCBSKC argues that the requests should thus be "deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3)."  Reply at 5.

BCBSKC contends that Sawyer admits that she failed to exhaust her ERISA-requires administrative remedies.  See Reply at 5.  BCBSKC argues that the Tenth Circuit has "consistently held that the failure to exhaust administrative remedies under an ERISA-qualified plan precludes an employee from bringing a benefits recovery action under ERISA in federal district court."  Reply at 5.  BCBSKC cites to this Court's decision in Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1191 (D.N.M. 2010)(Browning, J.), for the proposition that the "exhaustion of administrative remedies is one among related doctrines . . . that govern the timing of federal-court decision making . . . [and] [w]here Congress provides that certain administrative remedies are exclusive, exhaustion is required."  Reply at 6.  BCBSKC asserts that the policy is clear in that Sawyer can file a lawsuit only if she has exhausted her first level Grievance rights.  See Reply at 6.  BCBSKC contends that Sawyer does not attempt to allege that she has exhausted her Grievance rights.  See Reply at 6. BCBSKC asserts that Sawyer is "chargeable with knowing that the Policy required the submission of a written Member Grievance form to initiate a first level Grievance," because Sawyer admits that she possesses a copy of the Policy.  Reply at 6.  BCBSKC contends that Sawyer has admitted that she did not file a first level Grievance, and she has not provided any explanation why she failed to invoke her right to a Grievance.  See Reply at 6-7.  BCBSKC thus argues that, even if Sawyer's facts are true and she made three telephone calls which BCBSKC did not return, she has not exhausted her Grievance rights as the policy requires.  See Reply at 7.  BCBSKC argues that Sawyer was on notice that she should file any evidence showing that she had exhausted her Grievance rights after the May 31, 2012, status conference, but because Sawyer failed to provide any evidence of exhaustion, she has not alleged facts that allow her to bring an ERISA claim in federal court.  See Reply at 7.  BCBSKC argues that, because Sawyer did not give the administrative relief process available to her an opportunity to work, as federal law requires, the Court should dismiss her FAC

with prejudice.  See Reply at 6-7.

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d at 340.  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. at 546.  See Ashcroft v. Iqbal, 556 U.S. at 663 (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements").  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 545 (citation omitted).  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 663.

"Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(internal citations omitted).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "[a]ll parties are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(d).  "[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1366, at 159 (3d ed. 2004).  See Dobson v. Anderson, 319 F. App'x 698, 702 (10th Cir. 2008)(unpublished); Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir. 1998)("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings.").  A party is considered to have adequate notice that a motion to dismiss under 12(b)(6) has been converted to a motion for summary judgment when that party is the one whose submission of documents outside of the pleadings triggered the conversion.  Normally, notice and opportunity to present material must be given of such a conversion.  See, e.g., Fed. R. Civ. P. 12(d).  If "the non-moving party is the party

introducing the additional material and the Court is nonetheless granting summary judgment to the moving party. . . . notice is not necessary." Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633, 2008 WL 5992270, at *20 n. 7 (D.N.M. 2008)(Browning, J.). See Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713-714 (10th Cir. 2005) (noting that a plaintiff is not prejudiced when a defendant's motion to dismiss is converted to a motion for summary judgment, when the plaintiff's "opposition to the motion to dismiss first introduced affidavits containing facts beyond those in the complaint.").

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal

quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could

reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251

(quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v.

Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson

v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact,

considering the record as a whole, could not find for the non-moving party, there is no genuine issue

for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three

principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue

whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor

of the non-moving party, and construe all evidence in the light most favorable to the non-moving

party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255

("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING FAILURE TO RESPOND TO A MOTION

"Failure of a party to file and serve a response in opposition to a motion within the time

prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  The court

cannot, however, grant a motion to dismiss based solely on plaintiff's failure to respond and must

consider the merits of the motion.  See Issa v. Comp USA, 354 F.3d 1174, 1177-78 (10th Cir.

2003)(holding that a court must address the merits of a motion to dismiss notwithstanding the

plaintiff's failure to respond); <u>Reed v. Bennett</u>, 312 F.3d 1190, 1194-95 (10th Cir. 2002)(holding that a district court cannot grant an unopposed motion for summary judgment unless the moving party has first met its burden of production and demonstrates it is legally entitled to judgment under rule 56). The requirement that a court consider the merits before granting an unopposed motion to dismiss "consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.'" <u>Issa v. Comp USA</u>, 354 F.3d at 1177-78 (quoting <u>Mobley v. McCormick</u>, 40 F.3d at 340). Similarly, when a party fails to respond to a motion for summary judgment, a district court can properly grant the motion only "if the motion demonstrates no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." <u>Reed v. Bennett</u>, 312 F.3d at 1196. Failure to respond does "not relieve the court of its duty to make the specific determination required by Fed. R. Civ. P. 56(c)." <u>Reed v. Bennett</u> 312 F.3d at 1196.

## <u>LAW REGARDING ERISA PREEMPTION</u>

ERISA provides a uniform regulatory regime over employee-benefit plans and includes expansive preemption provisions which are intended to ensure that employee-benefit-plan regulation are "exclusively a federal concern." <u>Aetna Health Inc. v. Davila</u>, 542 U.S. at 208 (quoting <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 (1981)). <u>See</u> 29 U.S.C. § 1144 (§ 514 of ERISA). Congress "expressly included a broadly worded pre-emption provision" in ERISA. <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. at 138. <u>See</u> <u>Straub v. W. Union Tel. Co.</u>, 851 F.2d 1262, 1263 (10th Cir. 1988)("The scope of ERISA preemption . . . is very broad."). The Tenth Circuit has explained that "[i]mportant to understanding the propriety of removing [a case] is the distinction between 'conflict preemption' under § 514 of ERISA and 'complete preemption' under § 502 of ERISA." <u>Felix v. Lucent Techs., Inc.</u>, 387 F.3d 1146, 1153 (10th Cir. 2004).

1.     **Express Preemption.**

Section 514 of ERISA, 29 U.S.C. § 1144, contains an express preemption provision which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers.  29 U.S.C. § 1144(a).  The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'"  Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 146 (2001).  The Supreme Court has explained: "The key to § 514(a) is found in the words 'relate to.'  Congress used those words in their broad sense, rejecting more limited pre-emption language . . . ."  Ingersoll-Rand Co. v. McClendon, 498 U.S. at 138.  "But at the same time, [the Supreme Court has] recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'"  Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. at 146 (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)).

The Supreme Court has held that a state law "relates to" an ERISA plan, and is thus expressly preempted under § 514, "if it has a connection with or reference to such a plan."  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983).  Additionally, the Supreme Court has

> cautioned against an uncritical literalism that would make pre-emption turn on infinite connections.  Instead, to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.

Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. at 147 (citation omitted)(internal quotation marks omitted).

The ERISA express preemption provision does not apply "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general

applicability." District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.1 (1992) (quotations and citations omitted). See Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078, 1084 (10th Cir. 1994)(en banc).

## 2. **Complete Preemption.**

"The complete-preemption doctrine allows the removal of state actions that fall within the scope of § 502(a), 29 U.S.C. § 1132, ERISA's civil-enforcement provision." Ruby v. Sandia Corp., 699 F. Supp. 2d 1247, 1260 (D.N.M. 2010)(Browning, J.). Section 502(a)(1) provides a cause of action to any plan beneficiary or participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the Policy, or to clarify rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). "[T]he preemptive force of § 502(a) of ERISA is so 'extraordinary' that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule." Felix v. Lucent Techs., Inc., 387 F.3d at 1156 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). Even absent the express preemption provision in 29 U.S.C. § 1144 (§ 514 of ERISA), § 502(a) would still preempt state-law claims that conflict with the enforcement mechanism § 502(a) provides. See Aetna Health Inc. v. Davila, 542 U.S. at 214 n.4. As the Supreme Court has held:

> Respondents also argue that ERISA § 502(a) completely pre-empts a state cause of action only if the cause of action would be pre-empted under ERISA § 514(a) . . . . But a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive.

Aetna Health Inc. v. Davila, 542 U.S. at 214 n.4.

In Metro. Life. Ins. Co. v. Taylor, the Supreme Court found that ERISA manifested sufficient congressional intent to recharacterize state-law claims that fall within the scope of § 502(a) of ERISA as federal claims subject to removal. See 481 U.S. at 65-66. The Supreme Court concluded

that an ERISA preemption defense provides a sufficient basis for removal of a cause of action to the federal courts notwithstanding the traditional limitation the "well-pleaded complaint" rule imposes. 481 U.S. at 63-66.

"[D]efendants seeking removal under the doctrine of complete preemption bear a significant burden.  They must establish congressional intent to extinguish similar state claims by making the federal cause of action exclusive.  And as [courts] must construe removal strictly, reasonable doubts must be resolved against the complete preemption basis for it."  Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005).  The Supreme Court in Metro. Life. Ins. Co. v. Taylor held that the scope of the "complete preemption" exception for removal is narrow, and limited to state common-law or statutory claims that fall within § 502(a)(1)(B) of ERISA's civil-enforcement provision, because "the legislative history consistently sets out this clear intention to make [§ 502(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction."  481 U.S. at 66.  The Supreme Court noted, however, that it had previously held that, in light of the various forms of ERISA preemption, "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law."  481 U.S. at 64.

To come within the removal exception to the well-pleaded complaint rule,[11] a court must, therefore, conclude that the state-law claim "should be characterized as a superseding ERISA action 'to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)."  Wright v. Gen'l Motors Corp., 262 F.3d 610, 614 (6th Cir. 2001).  In Wright

---

[11]The Tenth Circuit has offered a definition of the well-pleaded complaint rule: "Under the well-pleaded complaint rule, in order to invoke federal-question jurisdiction under 28 U.S.C. § 1331 and thus to be removable on that basis, a federal question must appear on the face of the plaintiff's complaint . . . ."  Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1220 (10th Cir. 2011).

v. General Motors Corp., the United States Court of Appeals for the Sixth Circuit held that ERISA

did not preempt a complaint for unlawful termination as a result of race and sex discrimination, and

retaliation.  The state complaint included a request for damages for the proceeds of the plaintiff's

late-husband's life-insurance policy under his former employer's Health and Disability Benefit

Program.  The Sixth Circuit concluded that the complaint was not removable, because it "is not a

lawsuit claiming wrongful withholding of ERISA covered plan benefits; it is a lawsuit claiming race

and sex discrimination and retaliation resulting in damages, one component of which is a sum owed

under the provision of the [employee-benefits] plan."  Wright v. Gen'l Motors Corp., 262 F.3d at

614 (internal quotation marks omitted).

     In Aetna Health Inc. v. Davila, the Supreme Court set forth the test for finding complete

preemption:

> Where the individual is entitled to such [claimed] coverage only because of the terms
> of an ERISA-regulated employee benefit plan, and where no legal duty (state or
> federal) independent of ERISA or the plan terms is violated, then the suit falls
> "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at
> some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and
> where there is no other independent legal duty that is implicated by a defendant's
> actions, then the individual's cause of action is completely pre-empted by ERISA
> § 502(a)(1)(B).

542 U.S. at 210.  The Supreme Court held that ERISA completely preempted a claim brought under

a separate statute, the Texas Health Care Liability Act, for drug benefits under an ERISA plan,

because the claim was not independent of the ERISA plan.  See Aetna Health Inc. v. Davila, 542

U.S. at 210.  The Supreme Court emphasized that complete preemption under § 502(a) of ERISA

is not limited to situations in which the state cause of action precisely duplicates a cause of action

under § 502(a).  See Aetna Health Inc. v. Davila, 542 U.S. at 216 ("Congress' intent to make the

ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that

supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.").

    3.    **Distinguishing Between Express Preemption and Complete Preemption.**

The Supreme Court in Metro. Life. Ins. Co. v. Taylor treated express preemption under § 514 and complete preemption under § 502(a) as two distinct concepts, with only the latter supporting removal.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. at 64 ("ERISA pre-emption [under § 514], without more, does not convert a state claim into an action arising under federal law."); Felix v. Lucent Techs. Inc., 387 F.3d at 1156.  The Supreme Court in Metro. Life. Ins. Co. v. Taylor explained that "federal pre-emption is ordinarily a federal defense to the plaintiff's suit" and thus is insufficient grounds for removal.  481 U.S. at 63.  Although the Supreme Court in Metro. Life. Ins. Co. v. Taylor determined that § 514 of ERISA expressly preempted the plaintiff's state-law claims, the "well-pleaded complaint" rule precluded removal on the basis of a federal defense.  481 U.S. at 64.

The Tenth Circuit has explained that "ERISA preemption under § 514 is not sufficient for removal jurisdiction and that a state-law claim is only 'completely preempted' under Taylor if it can be recharacterized as a claim under § 502(a)."  Felix v. Lucent Techs., Inc., 387 F.3d at 1156.  In Felix v. Lucent Techs., Inc., the Tenth Circuit summarized the distinction between express preemption and complete preemption, quoting from the United States Court of Appeals for the Third Circuit's opinion in Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995):

> The difference between preemption and complete preemption is important.  When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

Felix v. Lucent Techs., Inc., 387 F.3d at 1158 (quoting Dukes v. U.S. Healthcare, Inc., 57 F.3d at

355).  See Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999)("When a

complaint contains only state causes of action that the defendant argues are merely

conflict-preempted [under § 514], the court must remand for want of subject matter jurisdiction.").

The Tenth Circuit elaborated on its view of ERISA complete preemption in Schmeling v.

NORDAM, 97 F.3d 1336 (10th Cir. 1996), stating:

> We read the term not as a crude measure of the breadth of the preemption (in the
> ordinary sense) of a state law by a federal law, but rather as a description of the
> specific situation in which a federal law not only preempts a state law to some degree
> but also substitutes a federal cause of action for the state cause of action, thereby
> manifesting Congress's intent to permit removal. . . . This usage reveals that
> "complete preemption" refers to the replacement of a state cause of action with a
> federal one.

Schmeling v. NORDAM, 97 F.3d at 1342.  In Carland v. Metro. Life Ins. Co., 935 F.2d 1114 (10th

Cir. 1991), the Tenth Circuit held that "a state law claim will convert to a federal claim only if the

claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions."  935

F.2d at 1118-19.  See Felix v. Lucent Techs., Inc., 387 F.3d at 1157 (quoting Carland v. Metro. Life

Ins. Co.).

Other circuits have also stressed that § 502's complete preemption is necessary for removal.

See Warner v. Ford Motor Co., 46 F.3d 531, 536 (6th Cir. 1995)(en banc)(overruling its prior

precedent for "mistakenly allowing removal in a case not covered by § 1132(a)(1)(B)

[§ 502 of ERISA] and only arguably covered by § 1144(a) [§ 514 of ERISA]"); Giles v. NYLCare

Health Plans, Inc., 172 F.3d at 337 ("The presence of conflict-preemption [§ 514 of ERISA] does

not establish federal question jurisdiction.  Rather than transmogrifying a state cause of action into

a federal one -- as occurs with complete preemption -- conflict preemption serves as a defense to

state action." (emphasis in original)); King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003)

(holding that a state claim must fit within the scope of § 502 and disregarding § 514 express preemption); Rice v. Panchal, 65 F.3d 637, 646 (7th Cir. 1995); Dukes v. U.S. Healthcare, Inc., 57 F.3d at 355 ("That the Supreme Court has recognized a limited exception to the well-pleaded complaint rule for state law claims which fit within the scope of § 502 by no means implies that all claims preempted by ERISA are subject to removal." ); Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 272 (2d Cir. 1994).

The Tenth Circuit noted in Felix v. Lucent Techs., Inc. that a claim which is remanded to state court risks being preempted in state court under § 514 of ERISA, leaving the plaintiff with no remedy.  "Although this is a valid concern, we have not found it to be a concern of the federal judiciary."  Felix v. Lucent Techs., Inc., 387 F.3d at 1162.

### 4.    ERISA Preemption and Insurance.

Pilot Life Ins. Co. v. Dedeaux presented the question whether ERISA "pre-empts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan."  481 U.S. at 43.  The plaintiff's complaint in that case contained only state-law claims for fraud, tortuous breach of contract, and breach of fiduciary duties arising out of his insurance company's failure to pay disability benefits under the terms of the policy.  See 481 U.S. at 43.  The Supreme Court noted that ERISA's purpose is to

> "protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

481 U.S. at 44 (quoting 29 U.S.C. § 1001(b)).  The Supreme Court also noted that, although a "saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance,'" under 29

U.S.C. § 1144(b)(2)(B), "a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company."  481 U.S. at 45 (alterations in original).  Because the plaintiff's common-law causes of action for tortuous breach of contract and breach of fiduciary duties were based on alleged improper processing of a claim for benefits under the plaintiff's employee benefit plan, the Supreme Court held that 29 U.S.C. § 1144 preempted the claims.  See 481 U.S. at 57.

Applying Pilot Life Ins. Co. v. Dedeaux, the Tenth Circuit has held that ERISA preempts common-law or state-law statutory claims for breach of contract, and bad faith or unfair insurance practices, because they conflict with ERISA's remedial scheme.  See Allison v. UNUM Life Ins. Co. of Am., 381 F.3d 1015, 1026 (10th Cir. 2004)(holding that ERISA preempted the plaintiff's breach-of-contract claim against her long-term-disability-benefits insurance carrier, because she sought consequential and punitive damages, which conflicted with ERISA's remedial scheme); Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d 1182, 1184-87 (10th Cir. 2003)(holding that state-law claims for bad faith and loss of consortium were preempted); Kelley v. Sears, Roebuck & Co., 882 F.2d 453, 455-56 (10th Cir. 1989)(holding that ERISA preempted state-law claims brought under Colorado's unfair-insurance-practices statute, which is virtually identical to the New Mexico statute).  Accordingly, the United States District Court for the District of New Mexico has held that ERISA preempts claims for employee health-insurance benefits brought under the Unfair Insurance Practices Act.  See Nechero v. Provident Life & Accident Ins. Co., 795 F. Supp. 374, 380-81 (D.N.M. 1992)(Mechem, J.); Wexler v. Brokerage Servs., Inc., No. 88-1487-JB, 1989 WL 379862, at *2-3 (D.N.M. Oct. 18, 1989)(Burciaga, J.)(relying on Kelley v. Sears, Roebuck & Co. to conclude that ERISA preempts claims for misrepresentation and unfair claims practices pursuant to the equivalent sections of the New Mexico unfair-insurance-practices statute).

ERISA contains a savings clause for laws that regulate insurance. See 29 U.S.C. § 1144(b)(2)(A) (§ 514(b)(2)(A) of ERISA) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."). The Supreme Court has explained how ERISA § 514(b)(2)(A) operates: "To summarize the pure mechanics of the provisions quoted above: If a state law 'relate[s] to . . . employee benefit plan[s],' it is pre-empted. The saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance.'" Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 45. The Supreme Court has recognized that a Court must consider two factors to determine whether a state law is a law that regulates insurance under ERISA § 514(b)(2)(A): (i) "the state law must be specifically directed toward entities engaged in insurance"; and (ii) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-42 (2003). The Tenth Circuit has further explained this second requirement in a case dealing with a statute that "define[d] the manner in which insurance claims should be processed":

> A law which defines the manner in which insurance claims should be processed "declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain [consequential and] punitive damages." Such a law thus does not effect a change in the risk borne by insurers and the insured, because it does not affect the substantive terms of the insurance contract. On the other hand, a law mandating that a certain disease be covered under health insurance contracts would effect a spread of risk, both from insureds to insurers, and among the insureds themselves.

Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 466 (10th Cir. 1997).

### 5.   Defeating § 502 Complete Preemption with an Independent Legal Duty.

The Supreme Court in Aetna Health Inc. v. Davila explained that, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and . . . there is no other

independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. at 210. Section 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 28 U.S.C. § 1132(a)(1)(B) (§ 502(a)(1)(B) of ERISA). "[A] claim only falls within ERISA's civil enforcement scheme when it is based solely on legal duties created by ERISA or the plan terms, rather than some other independent source." David P. Coldesina D.D.S., P.C., Emp. Profit Sharing Plan and Trust v. Estate of Simper, 407 F.3d 1126,1137 (10th Cir. 2005)(citing Aetna Health Inc. v. Davila, 542 U.S. at 210). See Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 950 (9th Cir. 2009)("Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on 'other independent legal dut[ies]' within the meaning of [Aetna Health Inc. v. ]Davila."). In David P. Coldesina D.D.S., P.C., Employee Profit Sharing Plan and Trust v. Estate of Simper, the Tenth Circuit held that the district court erred in dismissing the plaintiffs' negligent-supervision claim, which § 502 of ERISA did not completely preempt, because the plaintiffs' claim implicated an independent legal duty recognized in agency and tort law that arose out of agency relationships. See 407 F.3d at 1137.

**LAW REGARDING ERISA AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The Tenth Circuit has held that "exhaustion of administrative . . . remedies is an implicit prerequisite to seeking judicial relief" under ERISA. Held v. Mfrs. Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir.1990). The Tenth Circuit recognizes that an ERISA cause of action accrues when an application for benefits is denied, and not earlier. See Held v. Mfrs. Hanover Leasing Corp., 912 F.2d at 1205-1206. "Therefore, exhaustion of administrative (i.e., company- or

plan-provided) remedies is an implicit prerequisite to seeking judicial relief.  If the rule were otherwise, lawsuits likely would be -- and should be -- dismissed for lack of ripeness."  912 F.2d at 1206.  ERISA does not explicitly require exhaustion of administrative remedies, and the exhaustion requirement recognized by the Tenth Circuit derives, rather, from "the exhaustion doctrine permeating all judicial review of administrative agency action."  McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1263 (10th Cir.1998).  "Otherwise, premature judicial interference with the interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review."  McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1263. The Tenth Circuit has explained that, if plaintiffs were allowed to file suit in federal court without first filing a grievance in accordance with the administrative remedies provides in an insurance plan, the "plan fiduciaries [would] not [have] the opportunity to define the relevant issues or to apply the relevant plan provisions."  McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1264.  In such an instance, a district court should dismiss a plaintiff's case without prejudice, so that the plaintiff may proceed administratively before returning to federal court with his or her claims.  See McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1264 (approving of an order from the United States Court of Appeals for the Fourth Circuit to a district court to "dismiss [a lawsuit] without prejudice so that plaintiffs could proceed administratively.") (citing Makar Health Care Corp. of Mid-Atl. (CareFirst), 874 F.2d 80, 83 (4th Cir. 1989)).

Because ERISA does not specifically require the exhaustion of administrative remedies before bringing an action under its provisions, courts within the Tenth Circuit have discretion to waive the exhaustion requirement in certain circumstances.  See McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1263 ("Because ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial

discretion." (internal citation omitted)). District courts do not have free-ranging discretion to waive the exhaustion requirement; rather, the Tenth Circuit recognizes two exceptions, which, when applicable, allow a district court to waive the exhaustion requirement in its discretion. See, e.g., McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1263. A district court may use its discretion to waive the exhaustion requirement when: (i) "resort to administrative remedies would be futile;" or (ii) "when the remedy provided is inadequate." McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1263.

The futility exception is met when a plaintiff has shown that his or her claim would be denied, not only that the claim is unlikely to succeed. See Karls v. Texaco, Inc., 139 F. App'x. 29, 31-32 (10th Cir. 2005)(unpublished)[12]("In order to meet the futility exception, a plaintiff must show that her claim would be denied, not just that she thinks it is unlikely that the claim would succeed." (internal citation omitted)). For example, the Tenth Circuit has held that a plaintiff did not show that a claim would be futile by arguing only that review by a biased and disinterested party "would not result in an objective review by an unbiased finder of fact," because the individuals reviewing his appeal would be the same individuals who denied his claim initially. Rando v. Standard Ins. Co., 182 F.3d 933, 1999 WL 317497, at *3-*4 (10th Cir. 1999)(table). The Tenth Circuit explained that a plaintiff's mere doubts that his claim would be resolved on appeal do not amount to a showing of

---

[12]Karls v. Texaco, Inc. is an unpublished order and judgment, but the Court can rely on it to the extent its reasoned analysis is persuasive in the present case. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).

futility such that the exhaustion of administrative remedies requirement should be waived.  See Rando v. Standard Ins. Co., 1999 WL 317497, at *3-4.  "[P]laintiff's claim of futility is based solely on supposition . . . . [W]e align with the Seventh Circuit's rationale, and adopt its holding that 'the fact that the individual named defendants would be the people reviewing the plaintiffs' administrative appeals is not enough to relieve plan participants of the duty to exhaust remedies.'" Rando v. Standard Ins. Co., 1999 WL 317497, at *4 (quoting Ames v. Am. Nat'l Can Co., 170 F.3d 751, 756 (7th Cir. 1999).  Because the plaintiff before the Tenth Circuit had never requested further review of his claim, the Tenth Circuit found that "his bare allegations of . . . futility are unpersuasive and insufficient to establish that review would not have been fair and unbiased."  Rando v. Standard Ins. Co., 1999 WL 317497, at *4.

The inadequacy exception has been argued in circumstances where a plaintiff asserts that he or she received inadequate notice of the administrative remedies available, or how to pursue them. See McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1263 (citing Counts v. Am. Gen. Life and Acc. Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997)(holding that the inadequacy exception may apply where an insurance provider's notice does not comply with federal guidelines to put a member on notice of the administrative process to be followed)).  The Tenth Circuit has found that the inadequacy exception is not met when a "plaintiff received adequate, understandable notice of [the insurance company's] review procedures and a full copy of the plan summary containing the review procedure provisions . . . . [W]e agree with the district court that [the] notice complied with 29 C.F.R. § 2560.503-1(f), and was therefore adequate."  Rando v. Standard Ins. Co., 1999 WL 317497, at *3.  The Tenth Circuit noted that the notice sent by the insurance company advised the plaintiff of his right to seek a review and suggested what information would be helpful to submit for review. The notice also referred the plaintiff to relevant portions of his insurance plan, which provided:

You have a right to a review of any denial by STANDARD of all or any part of your claim. To obtain a review, you should send a written request for review to STANDARD within 60 days after you receive notice of the denial. No special form is required.

As a part of your request for review, you may submit issues and comments in writing and provide additional documentation in support of your claim. You may review pertinent documents related to your request for review.

Rando v. Standard Ins. Co., 1999 WL 317497, at *3.  The plaintiff contended that this notice was inadequate, in that the notice did not inform him that seeking administrative review was a prerequisite to seeking judicial relief.  The Tenth Circuit disagreed that such information must be relayed to the plaintiff for the notice to satisfy 29 C.F.R. § 2506.503-1(f), which provides:

(f) Content of notice. A plan administrator or . . . the insurance company, insurance service, or other similar organization, shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

. . .

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

1999 WL 317497, at *3 n. 2 (quoting 29 C.F.R. § 2560.503-1(f)(4)(2012)).  The Tenth Circuit found that the notice met the regulation's requirements, in that the plaintiff was "informed of his right of review and made certain suggestions regarding what information would be helpful to submit on review.  It also referred plaintiff to the review provisions of the plan."  1999 WL 317497, at *3. The Tenth Circuit thus ruled that the notice was adequate, and rejected the plaintiff's argument that he should be excused from exhausting his administrative remedies.  See 1999 WL 317497, at *3.

The Tenth Circuit has also held that a participant's knowledge of the necessary procedures for requesting an administrative review is not necessary for those procedures to be binding and applicable.  "An ERISA plan is nothing more than a contract, in which parties as a general rule are free to include whatever limitations they desire."  Salisbury v. Hartford Life & Acc. Co., 583 F.3d

-37-

1245, 1247 (10th Cir. 2009).  The Tenth Circuit has thus applied typical contract interpretation standards to determine whether the terms within an ERISA plan are reasonably understood, and thus binding on a member, even when a participant argues that she did not understand a provision and was thus unaware that her claim could be time-barred.  In <u>Salisbury v. Hartford Life & Acc. Co.</u>, the Tenth Circuit held that a limitations period described in a plan was not ambiguous, and the ordinary meaning of the provision was reasonable to a person in the position of the plan participant.  <u>See</u> 583 F.3d at 1247 (citing <u>Miller v. Monumental Life Ins. Co.</u>, 502 F.3d 1245, 1250 (10th Cir. 2007)).  The limitations period in the plan read: "Legal action cannot be taken against us: 1. sooner than 60 days after due Proof of Loss has been furnished; or 2. three years after the time written Proof of Loss is required to be furnished according to the terms of the Policy."  583 F.3d at 1248.  The Tenth Circuit looked at the "common and ordinary meaning" of the plan from the standpoint of "a reasonable person in the position of the plan participant, not the actual participant."  583 F.3d at 1248.  The Tenth Circuit determined that the limitations period provision was not ambiguous, and a "reasonable person would understand" that the plaintiff's period to seek payment had expired, as more than three years had transpired without the plaintiff requesting an administrative review.  583 F.3d at 1248. The Tenth Circuit upheld the plan's limitation, even though the limitation precluded the plaintiff from filing a federal lawsuit before the relevant statute of limitations had expired.  The Tenth Circuit noted that the plan's administrative remedies conflicted with the statute of limitations for bringing an ERISA claim in federal court, but also stated that it was not persuaded by the reasoning of other circuits that had refused to "enforce contractual limitations provision simply because the plan allowed the claimant's cause of action to accrue before the end of the administrative process."  583 F.3d at 1249 (citing <u>White v. Sun Life Assur. Co. of Can.</u>, 488 F.3d 240, 246-53 (4th Cir. 2007)). As that particular issue was not before the Tenth Circuit, however, the Tenth Circuit's language is

dicta.  See Salisbury v. Hartford Life & Acc. Co., 583 F.3d at 1249.  The Tenth Circuit, thus, will enforce contractual plan provisions, so long as the provisions would be understood by a reasonable plan participant.  See Salisbury v. Hartford Life & Acc. Co., 583 F.3d at 1249.

## ANALYSIS

Sawyer's claims survive a motion for summary judgment on one hand, but on the other hand, her cause of action in federal court has not accrued.  While BCBSKC is correct that ERISA preempts Sawyer's state-law claims, because ERISA's civil enforcement provision completely preempts her state-law claims, her claims may be re-classified as federal claims, and thus preemption does not require dismissing her claims as BCBSKC alleges.  Yet, Sawyer has not alleged or shown that she exhausted the administrative remedies, which BCBSKC related to her in an understandable form through the Policy and the Explanation of Benefits, she does not contest that she received. Accordingly, her cause of action under ERISA in federal court has not yet accrued, and the Court dismisses her claims without prejudice, recognizing that Sawyer may have missed her chance to any administrative or judicial review by failing to comply with the Policy's procedural requirements.

## I.    THE COURT WILL TREAT BCBSKC'S MOTION TO DISMISS AS A MOTION FOR SUMMARY JUDGMENT.

Rule 12(d) of the Federal Rules of Civil Procedure provides:

If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

BCBSKC argues that its MTD under rule 12(b)(6) should be treated like a motion for summary judgment, because Sawyer submitted her affidavit, which presents information outside of the pleadings.  See Reply at 1.  The Court agrees, and Sawyer has not presented an argument or other

rationale for the Court to not construe BCBSKC's motion as one for summary judgment.  As the Tenth Circuit has ruled, "conversion is proper when the non-movant appends materials to his opposition and urges the court to consider them."  Whitesal v. Sengenberger, 222 F.3d 861, 866 (10th Cir. 2000).  In this action, Sawyer, the non-moving party, submitted an affidavit outside of her pleadings, and thus the Court finds that she was on sufficient notice that BCBSKC's MTD would be converted to a motion for summary judgment.  The Tenth Circuit has found that converting a motion to dismiss to a motion for summary judgment was proper in an analogous circumstance, where a non-moving party "attached an affidavit to her response and relied upon it extensively in opposing" a motion to dismiss.  Kidneigh v. UNUM Life Ins. Co of Am., 345 F.3d at 1184.  See also Fed. R. Civ. P. 12(d).  The Court will similarly treat BCBSKC's motion as a motion for summary judgment, and the appropriate standard will be whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

It is important that Sawyer filed no written response to BCBSKC's motions and, under the rules, is deemed to have consented to the Court granting the motion.  See D.N.M.LR-Civ.7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").  The Court nonetheless carefully considered the merits of this motion and held a hearing, at which Sawyer presented no evidence. At the hearing, Sawyer conceded that ERISA preempts her claims, but argued that she had exhausted her administrative remedies.  The Court stated:

> I'd encourage you to go ahead and talk to Ms. Sawyer as soon as you can, and if you have anything further you want to say on this issue get it to me as soon as possible. If you talk to her and find out that [] she didn't exhaust and the requirements are as

> Ms. Bartell says, you might send me a letter and tell me that it's unopposed, and if you find out something differently, let me know that, as well, so that I'll make an[] informed decision when I rule on this motion.

Tr. at 13:16-24 (Court).  The Court intended Sawyer to respond to the exhaustion argument.  Rather than filing a written response, Sawyer filed an affidavit.  Under the rules she knew that would convert the motion to a summary judgment.  If there was any doubt, she was on notice when BCBSKC filed its Reply, and stated, "it is appropriate to treat this as a motion for summary judgment under Fed. R. Civ. P. 56."  Reply at 1.  Yet, in light of these comments, she did not object to the conversion.  Sawyer has received fair notice, by her actions, the applicable law, and BCBSKC's arguments, that this motion is now one for summary judgment.

## II.   ERISA PREEMPTS SAWYER'S STATE-LAW CLAIMS.

"[A]ny court forced to enter the ERISA preemption thicket sets out on a treacherous path." Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1184 (quoting Gonzales v. Prudential Ins. Co., 901 F.2d 446, 451-52 (5th Cir.1990)).  Sawyer has alleged four claims based on state law.  See FAC at 4-8.  BCBSKC asserts that ERISA preempts her state-law claims, as all of her claims "arise from an alleged denial of claimed benefits under an ERISA-regulated employee benefit plan."  MTD at 4.  Because ERISA preempts state-law claims based on an alleged denial of benefits under an ERISA plan, the Court concludes that ERISA preempts Sawyer's state-law causes or action -- all arising out of an alleged denial of coverage under her health plan.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 43 (ERISA "pre-empts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan.").

### A.   ERISA PREEMPTS SAWYER'S BREACH OF CONTRACT CLAIM AND CLAIM FOR INSURANCE BAD FAITH.

Sawyer's first claim for relief is for breach of contract: she alleges that USAA and BCBSKC

breached a "valid and effective contract of insurance" by not paying "damages caused by underinsured and uninsured drivers."  FAC ¶¶ 16-22, at 4.  Sawyer argues, as her second claim for relief, that all the Defendants acted "willfully, recklessly, and without regard for []Sawyer's rights, breached the duty of good faith and fair dealing owed to []Sawyer."  FAC ¶¶ 23-31, at 4-5.

"The Tenth Circuit has held that ERISA preempts common-law or state-law statutory claims for breach of contract, bad faith or unfair insurance practices, because they conflict with ERISA's remedial scheme."  Schoen v. Presbyterian Health Plan, Inc., Nos Civ. 08-0687 JOB/WDS, 08-0970 JOB/WDS, 2009 WL 1299680, at *4 (D.N.M. 2009)(Browning, J.)(citing Allison v. UNUM Life Ins. Co. of Am., 381 F.3d at1026).  Section 502(a)(1) provides a cause of action to any plan beneficiary or participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the Policy, or to clarify rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).  Because both Sawyer's state-law breach of contract and insurance bad-faith claim seek as relief the recovery of benefits allegedly owed to Sawyer by the terms of her employer-provided plan, these claims against BCBSKC conflict with ERISA's remedial scheme and are preempted by ERISA.  See Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1184-87(holding that ERISA preempts state-law claims for bad faith were preempted by ERISA, because the terms of the expressly preempt them statute, and because they provide a remedy beyond those contained in ERISA); Allison v. UNUM Life Ins. Co. of Am., 381 F.3d at 1026 ("[W]e hold that Ms. Allison's breach of contract claim, which seeks consequential and punitive damages, conflicts with ERISA's remedial scheme, and is thus preempted.").

## B.    ERISA PREEMPTS SAWYER'S CLAIM FOR A VIOLATION OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT.

Sawyer alleges, for her third claim for relief, that USAA and BCBSKC "committed unfair

insurance trade practices, as prohibited by" the "New Mexico Unfair Insurance Practices Act." FAC ¶ 34, at 5. The Tenth Circuit has held that ERISA preempts claims brought under state unfair insurance acts. See Kelley v. Sears, Roebuck & Co., 882 F.2d at 455-56 (holding that ERISA preempted state-law claims brought under Colorado's unfair-insurance-practices statute, which for ERISA purposes is identical to the New Mexico statute). Accordingly, district courts within the Tenth Circuit have held that ERISA preempts claims brought under the New Mexico Unfair Insurance Practices Act, because the claims relate to employee benefits plans. See Nechero v. Provident Life & Acc. Ins. Co., 795 F. Supp. at 380-81; Wexler v. Brokerage Servs., Inc., 1989 WL 379862 (relying on Kelley v. Sears, Roebuck & Co. to conclude that ERISA preempts claims for misrepresentation and unfair claims practices pursuant to the equivalent sections of the New Mexico unfair-insurance-practices statute). ERISA thus preempts Sawyer's third claim for relief against BCBSKC, for violations of the New Mexico Unfair Insurance Practices Act.

### C.   ERISA PREEMPTS SAWYER'S CLAIM FOR MISREPRESENTATION.

Sawyer's fifth claim for relief does not state a specific legal theory under which the Defendants are liable to Sawyer. See FAC ¶¶ 43-48, at 7-8. Sawyer alleges that "Defendants Nueterra Healthcare and CobraGuard . . . represented to Ms. Sawyer that she was entitled to COBRA continuation coverage, that she had properly elected such continuation coverage, and that she made premium payments necessary for her continuation coverage." FAC ¶ 46, at 7-8. Sawyer also alleges that she "reasonably relied on the conduct of Defendants Nueterra Healthcare and CobraGuard as to the status of her continuation coverage . . . [and as a result] of Defendants' conduct, Ms. Sawyer has suffered damages for which she is entitled to recover." FAC ¶ 48, at 8. When ruling on a motion for summary judgment, the Court must construe all "justifiable inferences" in favor of the non-moving party. Hunt v. Cromartie, 526 U.S. at 552. Sawyer's fifth claim for

-43-

relief satisfies the elements of a cause of action for negligent misrepresentation under New Mexico law.

For a claimant to state a cause of action for negligent misrepresentation, he or she must establish five elements: (i) an untrue statement, see N.M.R.A. Civ UJI 13-1632 ("A material misrepresentation is an untrue statement . . . ."); (ii) made by one who has no reasonable ground for believing the statement was true, see N.M.R.A. Civ UJI 13-1632 ("A negligent misrepresentation is one where the speaker has no reasonable grounds for believing that the statement was true."); (iii) on which the speaker intends the listener to rely, see N.M.R.A. Civ UJI 13-1632 ("A material misrepresentation is an untrue statement which a party intends the other party to rely on . . . ."); (iv) and on which the listener relied, see N.M.R.A. Civ UJI 13-1632 (" . . . . and upon which the other party did in fact rely."); and (v) such reliance caused harm to the listener, see N.M.R.A. UJI 13-1632, at 230 ("A party is liable for damages caused by . . . .").[13] See Carroll v. Los Alamos Nat. Sec., LLC, 704 F. Supp. 2d 1200, 1213-1214 (D.N.M. 2010)(Browning, J.)(citing to N.M.R.A. Civ UJI 13-632 for the elements of a cause of action for negligent misrepresentation).

Sawyer alleges that she was told that she had properly elected COBRA coverage and that she had made the premiums necessary for her coverage to continue, yet her coverage did not continue because, as Sawyer alleges, BCBSKC was not notified of her election and did not receive her premiums.  As such, CobraGuard and Nueterra Healthcare's statements would be untrue, and, in the light most favorable to Sawyer, they would have had no reason to believe that Sawyer's

---

[13]"The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law."  Todd v. Montoya, No. CIV 10-0106 JB/KBM, 2012 WL 2574809, at *42 n. 61 (D.N.M. 2012)(Browning, J.)(citing State v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994)("[T]his Court's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law.")).

coverage had continued, because CobraGuard and Nueterra Healthcare failed to communicate the necessary information to BCBSKC that Sawyer had elected to continue her coverage.  Additionally, Sawyer represents that she relied on CobraGuard and Nueterra Healthcare's statements. Whether CobraGuard and Nueterra Healthcare intended for Sawyer to rely on their statements is not specifically alleged, but the Court will infer that Sawyer's reliance was intended, as there is no reason presented why an insurance company and an employer's statements regarding coverage would not be intended for a plan participant to use.  Sawyer has alleged that she relied on CobraGuard and Nueterra Healthcare's statements, and that her reliance caused her harm.  These allegations satisfy the elements of negligent misrepresentation under New Mexico law.

"The scope of ERISA preemption . . . is very broad." Straub v. W. Union Tel. Co., 851 F.2d at 1263.  The Tenth Circuit has ruled that ERISA preempted a plaintiff's claim for his insurance company's misrepresentation, where the insurance company informed the plaintiff that his wife "was eligible for coverage under its policies by accepting payment of premiums from [the plaintiff's wife's employer] on her behalf" and caused the plaintiff to "not exercise his right to continued insurance coverage under [COBRA]." Kelso v. Gen. Am. Life Ins. Co., 967 F.2d 388, 389 (10th Cir. 1992).  Similarly, the Tenth Circuit has held that ERISA preempted a plaintiff's claim for negligent misrepresentation, where an insurance company failed to inform the plaintiff "that his pension benefits might be affected by his transfer of employment" to a different employer.  Straub v. W. Union Tel. Co., 851 F.2d at 1263-64.  The Tenth Circuit ruled that the plaintiff's claim, regarding an "employee benefit plan," related to the employee benefit plan and was thus preempted by ERISA.  851 F.2d at 1264.

Sawyer alleges that CobraGuard and Nueterra Healthcare negligently misrepresented to her that the premiums she paid were sufficient to allow her health coverage to continue with BCBSKC,

and that her coverage had continued.  This claim relates to an employee benefit plan, as Sawyer relied on the representations of these Defendants regarding her continued coverage with BCBSKC. Just as ERISA preempted the plaintiffs' claims in Straub v. W. Union Tel. Co. and Kelso v. Gen. Am. Life Ins. Co., which alleged negligent misrepresentation regarding the participant's coverage under a plan, ERISA preempts Sawyer's claim of negligent misrepresentation, to the extent it is alleged against BCBSKC.

## III.    THE COURT NEED NOT DISMISS SAWYER'S STATE-LAW CLAIMS BECAUSE THEY ARE COMPLETELY PREEMPTED BY ERISA.

BCBSKC argues that the Court should dismiss all of Sawyer's state-law claims with prejudice, because ERISA preempts them.  See Reply at 7.  Complete preemption, however, is such a powerful doctrine that it may serve to convert state-law claims into federal claims if the claim is within the scope of ERISA's civil enforcement provisions.  See Carland v. Metro. Life Ins. Co., 935 F.2d at 1118-19.

ERISA's civil enforcement provision provides, in relevant part:

a) Persons empowered to bring a civil action

A civil action may be brought–

(1) by a participant or beneficiary–

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C.A. § 1132(a)(1).

-46-

The Court has previously addressed the question whether a plaintiff's claims that are completely preempted by ERISA should be dismissed, or the plaintiff should be given leave to amend his complaint so as to allege his state-law claims under ERISA.  See Ruby v. Sandia Corp., 699 F. Supp. 2d at 1283.  In Ruby v. Sandia Corp., the Court noted that the plaintiff's sole injury was "deprivation of his retirement benefits and the sole intent he asserts in this cause of action is to prevent Ruby from obtaining his benefits."  699 F. Supp. 2d at 1282.  The defendant, Sandia Corporation, moved to dismiss the plaintiff Ruby's complaint on the grounds that ERISA preempts his claims for recovery of retirement benefits.  See 699 F. Supp. 2d at 1282-83.  The Court found that Ruby's sole injury was within § 502's ambit, and thus ERISA completely preempted his tort claim.  The Court ruled that ERISA completely preempted his wrongful termination claim and retaliation claim, and thus the claims were converted to federal ERISA claims and a presented proper basis for removal to federal court.  See 699 F. Supp. 2d at 1281.  The Court quoted from the Tenth Circuit's decision in Schmeling v. NORDAM, 97 F.3d 1336, 1342 (10th Cir. 1996), in its ruling that removal was proper, because "complete preemption is 'a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.'"  Ruby v. Sandia Corp., 699 F. Supp. 2d at 1281.  The Court noted, however, that dismissal of Ruby's claims, now classified as ERISA claims, would not be proper.

> Having removed the case to this Court, however, Defendant . . . cannot have its cake and eat it too.  This Court has subject matter jurisdiction because the civil enforcement provisions of § 502(a) of ERISA convert state claims into federal causes of action.  Aetna Health Inc., 124 S. Ct. at 2496. It would be anomalous indeed to permit a defendant to both remove a case to federal court because the state law cause of action has been converted into a federal claim and then have it dismissed because the area of law into which the plaintiff's claims fall have been preempted by federal law.  One or the other result is perfectly reasonable, and in fact required by the precedent.  Both at once, however, would defy both logic and equity.

699 F. Supp. 2d at 1283 (quoting Lafayette v. Cobb, 385 F. Supp. 2d 1152, 1160 (D.N.M. 2004) (Hansen, J.)).  The Court thus gave Ruby leave to amend his complaint and to frame his state-law claims as causes of action under § 502(a) of ERISA.  See 699 F. Supp. 2d at 1283-84.

ERISA does not, however, provide for all the remedies that a common-law or state-law cause of action may.  To the extent that a remedy is available under common law or state law, but not under ERISA, the remedy is in conflict with the congressional scheme set forth in ERISA, and not allowed.  See Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1185.  See also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 54 ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strong for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.").  The Tenth Circuit has thus ruled that damages which are not provided under ERISA, such as consequential or punitive damages, may not be sought by in an ERISA action, even if the common-law or state-law cause of action which ERISA has preempted would allow for such damages.  See Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d at 1185 (holding that, where consequential or punitive damages "for breach of good faith and fair dealing by an insurer . . . are available, they provide a cause of action excluded from ERISA's civil enforcement scheme and . . . pose an obstacle to the purposes and objectives of Congress." (internal alterations and quotations omitted)).

ERISA does not leave litigants with a paltry remedy.  As the Supreme Court has noted, Congress provided the following remedies to a plaintiff bringing a claim under ERISA:

> Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits.  Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.  A participant or beneficiary may also bring a cause of action for breach of fiduciary

duty, and under this cause of action may seek removal of the fiduciary[,] §§ 502(a)(2).  In an action under these civil enforcement provisions, the court in its discretion may allow an award of attorney's fees to either party[,] § 502(g).

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 53-54.  ERISA does not, however, provide for an award of punitive damages to a beneficiary, either expressly or through an implied cause of action.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. at 53-54.

Similar to Ruby, Sawyer has brought a cause of action seeking to recover her benefits under an employee benefit plan, and thus she seeks a remedy that ERISA's civil enforcement provision provides.  Sawyer seeks to recover the benefits owed to her under the plan in the form of payment for her outstanding medical bills.  See 29 U.S.C. § 1132(a)(1)(B)("ERISA § 502(a)(1)(B)"). Sawyer's state-law claims are thus completely preempted and are converted into federal ERISA claims.  See Felix v. Lucent Techs., Inc., 387 F.3d at 1156 ("[T]he preemptive force of § 502(a) of ERISA is so 'extraordinary' that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule.").  As the Court explained in Ruby v. Sandia Corp., dismissal of Sawyer's claims on this basis would be improper.  See 699 F. Supp. 2d at 1283 ("Defendant cannot have its cake and eat it too.").  The Court would, thus, allow Sawyer leave to amend her FAC to frame her state claims under ERISA, seeking remedies available under that statute alone, were this the end of the issues before the Court.

## IV.   THE COURT WILL DISMISS SAWYER'S FAC WITHOUT PREJUDICE, BECAUSE SHE HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

BCBSKC argues that the Court should dismiss Sawyer's FAC should be dismissed because she has not alleged, or shown, that she exhausted her administrative remedies provided in the Policy before bringing her civil suit.  See Reply at 5. Sawyer admits that she possessed a copy of the Policy, and she admits that she did not file a written grievance.  See Sawyer Aff. ¶ 16, at 3; Requests for

Admission ¶ 13, at 5.  Because Sawyer has not alleged that she filed a written Grievance with BCBSKC before bringing her suit in state court, the Court will dismiss her FAC without prejudice, so that she may pursue her administrative remedies first.

"[E]xhaustion of administrative . . . remedies is an implicit prerequisite to seeking judicial relief" under ERISA.  Held v. Mfrs. Hanover Leasing Corp., 912 F.2d at 1206.  Because administrative exhaustion is a judicial requirement, rather than an express provision of ERISA, courts may waive the exhaustion of remedies where a plaintiff has shown that pursuing administrative review would be futile or the notice of required administrative procedures was inadequate.  See McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1263.  Sawyer has not shown that BCBSKC's administrative review would be futile, nor has she alleged that the notice of administrative remedies provided to her was inadequate, and her cause of action under ERISA has thus not yet accrued.  See Held v. Mfs. Hanover Leasing Corp., 912 F.2d at 1206.

The Policy, which Sawyer admits that she possesses, requires a participant to file a first level Grievance before commencing a civil suit if ERISA covers the participant's plan.  See Policy ¶ 3, at 4.  The same requirement is expressed in the Explanations of Benefits, which were sent to Sawyer on or about December 10, 2007, although the time frame delineated in the Explanations of Benefits is different from that listed in Section L of the Policy.  See Explanation of Benefits at 8, 10, 12, 14, 16 (requiring that a written review be requested within 180 days of receipt of the documents); Policy ¶ 4, at 4 (requiring that a Grievance be filed within three-hundred-and-sixty-five days of receipt of an Explanation of Benefits that denies coverage).  Sawyer alleges, and BCBSKC does not deny, that ERISA covers her plan.  See FAC ¶ 8, at 2.  Sawyer has also alleged that the only attempt she made to attain review by BCBSKC of its denial of her coverage were three telephone calls, and she does not allege that she requested a review in writing of the denial of her coverage.  See Sawyer Aff. ¶¶

2, 7, 14, at 1-2.  Sawyer also admits that she did not exhaust the Grievance rights that Section L of the Policy requires.  See Requests for Admission ¶ 13, at 5.  Because BCBSKC did "not [have] the opportunity to define the relevant issues or to apply the relevant plan provisions," the Court cannot properly allow Sawyer to seek judicial review of her denials.  McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1264.

Neither of the exceptions to the exhaustion requirement are met here.  Not only has Sawyer not alleged that her claim would have been denied if she had sought review, but BCBSKC asserted at the hearing that the issues with her coverage would have been remedied if she had filed a first level Grievance.  Cf. FAC ¶¶ 13-15, at 3, Sawyer Aff. ¶ 4, at 1(not alleging that her claim would have been denied on appeal); with Tr. at 8:20-25 (Bartell)(stating that "had she availed herself or anybody on her behalf to bring this to the company's attention pursuant to their grievance procedures I believe that in fact this would have been worked out and these claims probably would have been paid").  Even though Sawyer called regarding the denial of her coverage at least three times and BCBSKC did not follow-up on her requests, because she did not pursue the administrative review proscribed in the Policy, Tenth Circuit law precludes her from arguing that the review would be futile.  Without attempting a review of her denials, in the form that the Policy describes, any argument on her part that administrative review would be futile is a "based solely on supposition," and she was not exempt from the exhaustion requirement as set forth in this circuit.  Rando v. Standard Ins. Co., 1999 WL 317497, at *4.

Although Sawyer asserts that she exhausted "every effort known to me at the time" by telephoning BCBSKC three times regarding the denial of her coverage, she had adequate notice of the required administrative procedures to be followed.  Sawyer Aff. ¶ 18, at 3.  Both Sawyer's Policy, and the Explanations of Benefits informed her that she must file for a review, in writing,

within a specified time frame, before she may bring a civil suit under ERISA.  As the notice that the plaintiff received in Rando v. Standard Ins. Co. was adequate, in that it informed him of his right to seek an administrative review within a certain time period, but did not inform him that such a review was a prerequisite to seeking judicial relief, Sawyer's documents are all the more adequate, in that the Policy informed her that she must file a Grievance or send a written request within a time frame, before she may commence a civil suit.  See 1999 WL 317497, at *3.  Sawyer's notice is within the requirements that the Tenth Circuit has used to weigh the adequacy of an employee benefits notice, in an understandable fashion, of her right to seek a review.  See 1999 WL 317497, at *3; 29 C.F.R. § 2560.503-1(f)(4)(providing that notice must be set "forth in a manner calculated to be understood by the claimant . . . [and provide] [a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.").  Sawyer's Policy documents are reasonably understandable by a participant in her position, and the Explanation of Benefits refers Sawyer to the Policy for "detailed information about the appeal process."  Explanation of Benefits at 8, 10, 12, 14, 16.  See Rando v. Standard Ins. Co., 1999 WL 317497, at *3 (finding that a denial of coverage provided adequate notice because it referred a participant to the portions of this plan documents where he could find more thorough explanations of the necessary review procedures).  Although the Explanation of Benefits provides that a written request for review must be sent within 180 days, and the Policy allows participants 365 days to submit a written request for review, this discrepancy does not constitute an inadequate notice, at least in the circumstances of this case.  First of all, the shorter period of 180 days is within Congress' requirements for mandated claim procedures in ERISA-regulated plans:

> (3) Group health plans. The claims procedures of a group health plan will not
> be deemed to provide a claimant with a reasonable opportunity for a full and fair
> review of a claim and adverse benefit determination unless, in addition to complying

with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures --

> (i) Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination; . . . .

29 C.F.R. § 2560.503-1(3)(i).  The shorter deadline defined in the Explanation of Benefits, of 180 days, is thus adequate under Congressional regulations.  Additionally, Sawyer could only reasonably argue that this notice was inadequate as to her if she had filed a written request for review after 180 days of receiving her Explanation of Benefits, at which point she could argue that the notice in the Explanation of Benefits was inadequate because of its inconsistencies with the Policy.  Because Sawyer has failed to request a review in writing within the time line proscribed in either document, she cannot solely make the argument that her notice of the deadlines was inadequate.  Neither document is ambiguous with respect to the requirement that a written request for review must be filed within a certain time frame, or that the participant must exhaust administrative remedies before initiating an ERISA lawsuit.  See Policy ¶ 3, at 4 ("For Employee Welfare Benefit Plans subject to [ERISA] You must file a first level Grievance before You can bring a civil action under ERISA Section 502(a)."); Explanation of Benefits at 8, 10, 12, 14 ("[Y]ou may file a lawsuit under Section 502(a) of ERISA, if you have used all of the appeal rights required by your plan.").  While a reasonable person might have been confused about the time, a "reasonable person would understand" that he or she must file for an administrative review in writing before initiating a civil ERISA lawsuit.  Salisbury v. Hartford Life & Acc. Co., 583 F.3d at 1248.  The timing is not at issue here, because no request for administrative review was filed at any time.  Sawyer's notice was, thus, not inadequate.

Although the Court recognizes that Sawyer may not be able to pursue an administrative

action at this point, because the 365 day limitation period has passed, the Tenth Circuit expresses favor for upholding limitations periods in ERISA plans, even where the limitation may preclude seeking relief in another forum. See Salisbury v. Hartford Life & Acc. Co., 583 F.3d at 1249 (noting that the Tenth Circuit does not approve of circuits that refuse to "enforce contractual limitations provision simply because the plan allowed the claimant's cause of action to accrue before the end of the administrative process." ); Felix v. Lucent Techs. Inc., 387 F.3d at 1162 (noting that remanding a plaintiff's case to state court may result in the case being dismissed as preempted under § 514 of ERISA, but stating, "[a]lthough this is a valid concern, we have not found it to be a concern of the federal judiciary.").

Sawyer has thus not shown that a genuine issue of material fact exists, and BCBSKC is therefore entitled to judgment as a matter of law.  Although her state-law claims, are completely preempted by ERISA, and thus they could be reframed as causes of action under that statute to avoid dismissal, she has not pled or otherwise attempted to show that she exhausted her administrative remedies explained in the Policy.  Sawyer admits that she possesses a copy of the Policy, and she admits that she did not file for a written Grievance, as both the Policy and the Explanations of Benefits inform her she should.  Nor has she shown how an administrative review would have been futile.  The Policy documents and the Explanations of Benefits she possesses are reasonably understood by a participant in her position, and the Court cannot thus conclude that she had inadequate notice.  The Court will, thus, dismiss her claims without prejudice.  Her cause of action will have accrued for federal court when she has exhausted her administrative remedies.

**IT IS ORDERED** that Defendant Blue Cross and Blue Shield of Kansas City's Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice, filed April 19, 2012 (Doc. 56), is granted in part and denied in part.  The Court will deny Blue Cross and Blue Shield of Kansas City's

request to dismiss with prejudice Sawyer's First Amended Complaint, filed March 30, 2012 (Doc.

51).  The Court will dismiss Sawyer's claims against Blue Cross and Blue Shield of Kansas City,

without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniel R. Lindsey
Daniel R. Lindsey, P.C.
Clovis, New Mexico

     *Attorney for the Plaintiff*

Andrew G. Schultz
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant United Services Automobile Association*

Randy S. Bartell
Montgomery & Andrews, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendants Blue Cross Blue Shield of Kansas City*

Teresa L. Shulda
Foulston Siefkin, LLP
Wichita, Kansas

     *Attorneys for Defendant Nueterra Healthcare Healthcare*